# IN THE UNTIED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **LIBERTARIAN PARTY OF OHIO, et al.,** | |
| Plaintiffs, | |
| | Case No. 2:13-cv-00953 |
| v. | |
| | Judge Watson |
| **JON HUSTED,** | |
| | Preliminary Injunction Action |
| Defendant. | |

## INTERVENOR-DEFENDANT THE STATE OF OHIO'S MEMORANDUM CONTRA PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (Doc. 3)

## INTRODUCTION

Plaintiffs, the Libertarian Party of Ohio, Kevin Knedler, Aaron Harris, and Charlie Earl, have moved for a preliminary injunction against Ohio's requirement that election petition signatures be witnessed and submitted by Ohio residents. As explained below, Plaintiffs do not meet the requirements for preliminary injunctive relief to issue.

Plaintiffs cannot establish a likelihood of success on the merits because Ohio's residency requirement for petition circulators satisfies the interest-balancing *Burdick* analysis that this Court must apply to equal protection claims on election restriction: the statute places a minimal burden upon petition committees while satisfying a legitimate state interest in protecting the election process. Moreover, while strict scrutiny is not appropriate, the challenged statute would satisfy it. Additionally, Plaintiffs cannot show irreparable harm, and a preliminary injunction would not serve the public interest because the statute protects the public interest by ensuring the integrity of the referendum process for Ohioans.

Accordingly, the State of Ohio respectfully asks that this Court deny Plaintiffs' motion for a preliminary injunction.

**STATEMENT OF THE FACTS**

On March 30, 2013, the Ohio General Assembly passed Sub. S.B. 47, which included provisions governing the petition process. The law went into effect on June 21, 2013, nearly three months after it was passed and over seven months before the February 5, 2014 deadline for submitting nominating petitions for the May 6, 2014 primary.

On September 20, 2013, nearly six months after S.B. 47 passed and three months after it became effective, Plaintiffs filed a Complaint (Doc. 1) and Motion for Preliminary Injunction against Ohio Secretary of State Jon Husted (Doc. 3). In this lawsuit, Plaintiffs challenge O.R.C. § 3503.06(C)(1)(a)—Ohio's residency requirement for circulators—which requires that referendum petition signature "circulators" be residents of Ohio.

On September 25, 2013, this Court set a scheduling hearing for Plaintiffs and the plaintiffs in *Citizens in Charge, Inc. v. Husted*, Case No. 2:13-cv-935, a separate case in which the plaintiffs also challenge Ohio's residency requirement for circulators.[1] (*See* Doc. 4). On October 3, 2013, prior to the scheduling hearing, the State of Ohio filed a Motion to Intervene to defend the constitutionality of Ohio's residency requirement for petition circulators and the ten-day rule. (Doc. 5). At the scheduling hearing, this Court granted the State's motion. The State submits this brief addressing the Plaintiffs' Motion for Preliminary Injunction.

---

[1] This Court has not consolidated these cases.

# LEGAL ARGUMENT

**I.     Standard of Review**

"Injunctive relief is an extraordinary remedy and is issued cautiously and sparingly." *TOA Techs., Inc. v. Guzzetti*, No. 1:12CV667, 2012 WL 1096114, at *2 (N.D. Ohio Mar. 29, 2012) (citation omitted).  A preliminary injunction is granted only if the movant can show that: (1) the movant has a strong likelihood of success on the merits; (2) the movant would suffer irreparable injury absent the injunction; (3) issuance of a preliminary injunction would not cause substantial harm to others; and (4) the public interest would be served by issuance of a preliminary injunction. *See Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).

Plaintiffs bear the burden of establishing their claim to a preliminary injunction, which "should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (citations omitted).  The proof required to obtain an injunction is "much more stringent than the proof required to survive a summary judgment motion." *Leary*, 228 F.3d at 739.

The party seeking a preliminary injunction must establish its case by clear and convincing evidence. *Damon's Rests., Inc. v. Eileen K Inc.*, 461 F. Supp.2d 607, 621 (S.D. Ohio Nov. 13, 2006).  To meet its burden, the movant's evidence "must more than outweigh the [opposing] evidence," but must also "persuade the court that its claims are highly probable." *Id.* Plaintiffs have not met this high burden of proof.

Additionally, courts must apply a presumption in favor of a statute's constitutionality. *See National Federation of Independent Businesses v. Sebelius*, ___ U.S. ___, 132 S.Ct. 2566, 2594 (2012) (citation omitted) (stating "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality").

Plaintiffs seek to enjoin the application of O.R.C. § 3503.06(C)(1)(a), which requires circulators of petitions other than those for presidential electors to be residents of Ohio. However, Plaintiffs cannot show a strong likelihood of success in their attempt to argue the statute is unconstitutional, nor can they show legitimate irreparable harm or a balance of harms that requires a preliminary injunction. No injunctive relief is appropriate in this case.

**II.     No preliminary injunction should issue with respect to R.C. § 3503.06(C)(1)(a).**

    **A.     Plaintiffs cannot show a likelihood of ultimate success on the merits.**

        **1.     *Nader v. Blackwell* is distinguishable and does not compel a result in this case.**

Plaintiffs' assertion that this case is controlled by the Sixth Circuit's decision in *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008), is incorrect. As an initial matter, the *Nader* case dealt with a statute that restricted the use of petition circulators who were not themselves *registered* Ohio voters, and it dealt with the application of that statute to the petitions of a candidate for *President of the United States*. *Id.* at 462. Neither of those factors is present here: the statute at issue here does *not* require petition circulators to be registered voters, and it expressly excludes the petitions of presidential candidates from its application. R.C. 3503.06(C)(1)(a).

As the Judge Boggs emphasized in *Nader*, "the distinction between legitimate ballot access regulations and improper restrictions on interactive political speech is not subject to a 'litmus-paper test.' Instead, a particularized assessment of the restriction and the burden it imposes is required." 545 F.3d at 475 (citing *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983)). Plaintiffs appear to argue that R.C. § 3505.06(C)(1)(a) and its predecessor, which was at issue in *Nader*, provide the same restriction. (*See* Doc. 3, PAGEID# 6-8). However, the statutes differ in scope. (*See also* Doc. 3, PAGEID# 7). By arguing that *Nader* necessarily governs the outcome of this case, Plaintiffs are asking the Court

4

to engage in precisely the sort of litmus-test approach that *Nader* commands against. Given the distinction noted above, this Court must engage in an independent, particularized assessment of this case.

*Nader*'s application here is limited in any event because, as Judge Boggs made clear in his opinion, the issue of whether the statute in *Nader* was narrowly tailored to achieve a compelling state interest was not actually litigated in that case. *Nader* was an appeal of the grant of a Rule 12(b)(6) motion on the grounds of qualified immunity in a Section 1983 case seeking money damages, not a declaratory judgment action like this one. *Id*. at 462. As Judge Boggs explained:

> Because of the unusual posture of this case, the record and briefs do not contain the usual evidence and arguments about whether Ohio's law is narrowly tailored to achieve a compelling interest.
>
> . . . .
>
> No case has been put forward in this litigation as to a compelling state interest in permitting unregistered Ohioans to circulate petitions but not unregistered citizens of other states. *Thus*, we hold that the enforcement of the residence requirement as well violated Nader's constitutional rights.

*Id*. at 475-76 (emphasis added). Unlike *Nader*, here, facts and arguments in favor of the State on the issues of compelling state interests and narrow tailoring exist. They must be independently considered; this case should not be controlled by *Nader*, where those arguments had no opportunity to sway the result.

> **2.  Even if *Nader* applied, the pending petition seeking a writ of certiorari in *Judd v. Libertarian Party of Virginia* would militate against the issuance of preliminary injunction and in favor of a stay.**

While this Court must consider R.C. 3503.06(C)(1)(a) independently, as explained above, even if *Nader* were applicable, Plaintiffs would be unable to establish an ultimate likelihood of success, because there is a reasonable chance that *Nader* will be overtaken by the U.S. Supreme

5

Court in the case of *Judd v. Libertarian Party of Virginia*, Case No. 13-231, in which a petition for certiorari is currently pending. Petitioners here are asking the U.S. Supreme Court to overrule the Fourth Circuit's opinion in *Judd* and adopt the reasoning of the Eighth Circuit in *Initiative & Referendum Institute v. Jaeger*, 241 F.2d 614 (8th Cir. 2001) (hereinafter, "*IRI*"), which held that a North Dakota statute limiting petition circulation to residents of North Dakota was fully constitutional. The uncertain nature of the law in light of the pending cert petition militates in favor of staying this case pending the resolution of *Judd*.

> 3. **O.R.C. § 3503.06(C)(1)(a) imposes only a minimal, non-discriminatory restriction on the referendum process, and is therefore constitutional under *Doe v. Reed* and *Burdick v. Takushi*.**

As explained recently by the United States Supreme Court in *Doe v. Reed*, 561 U.S. \_\_\_\_, 130 S.Ct. 2811 (2010), a State's regulation of the petition referendum process is reviewed under the flexible, interest-balancing test set forth in *Burdick v. Takushi*, 504 U.S. 428 (1992). In *Doe v. Reed*, the Court considered whether the disclosure of referendum petitions under the State of Washington's Public Records Act violated the First Amendment rights of the sponsor and signers of a petition seeking to refer a state law extending benefits to same-sex couples. In defining the scope of the challenge, the Court held that the signing of a referendum petition is "the expression of a political view" – either the view that the referred law should be overturned, or at the very least, that "the question should be considered by the whole electorate." 130 S.Ct. at 2817. Thus, the compelled disclosure of signatory information on referendum petitions "implicates a First Amendment right." *Id*.

Despite its finding that the act of signing a referendum petition implicates a protected right, the Court did *not* apply strict scrutiny. Citing *Burdick v. Takushi,* 504 U.S. at 433-434, the Court acknowledged that States have "significant flexibility in implementing their voting

6

systems." *Doe v. Reed*, 130 S.Ct. at 2818. While petition signing retains an "expressive component," it also has a "legal effect in the electoral process" that the government can enforce with "substantial latitude." *Id.* Thus, the *Doe v. Reed* Court signaled that the appropriate analytical framework for reviewing state regulation of the referendum process is the interest-balancing test set forth in *Burdick* and its progeny.

Under that test, the Court first looks at the "character and magnitude of the asserted injury" to a plaintiff's constitutional rights. *Burdick*, 504 U.S. at 434 (citing *Anderson* v. *Celebreze*, 460 U.S. 780, 789 (1983)). The Court must then "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id.* If Plaintiffs' rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). But if the state law imposes only "reasonable, nondiscriminatory restrictions" upon a protected right, then the State's important regulatory interests are "generally sufficient to justify" the restrictions. *Id.*

Under the first prong of the *Burdick* test, the Court must conclude that O.R.C. § 3503.06(C)(1)(a)'s requirement that petition "circulators" be Ohio residents imposes a minimal, nondiscriminatory restriction on the referendum process, and not a severe burden on Plaintiffs' right to assemble and gather signatures. The Supreme Court's holding in *Doe v. Reed* makes it clear that strict scrutiny does not apply and that State regulation of referendum petition signatures is afforded "substantial latitude." *Doe v. Reed*, 130 S.Ct. at 2818.

Under Ohio law, the role of petition "circulators" is to witness signatures and attest that the signatories were qualified to sign the petition. O.R.C. § 3501.38(E)(1). When read in conjunction with Section 3501.35(E), as it must be, Section 3503.06(C)(1)(a)'s requirement that

7

"circulators" be Ohioans does *not* preclude non-Ohioans from speaking to voters about the proposed issue or from soliciting their signatures—merely from being the witness of record for their signatures.

In upholding a restriction on non-resident circulators in *IRI*, the Eight Circuit noted that "[n]on-residents are still free to speak to voters regarding particular measures; they certainly may train residents on the issues involved and may instruct them on the best way to collect signatures; and *they may even accompany circulators*." 241 F.3d at 617 (emphasis added). The court continued, "[t]he one restriction is that out-of-state residents cannot personally collect and verify the signatures, and that restriction is justified by the State's interest in preventing fraud." *Id*. As in *IRI*, Ohio's restriction on who can *witnesses* the signature in no way limits Plaintiffs' rights to speak through and in association with the *advocates* of its choice. Non-residents may approach voters, discuss the initiative with them, and solicit their signatures. Those signatures will be valid as long as the non-resident is accompanied by an Ohio resident who verifies the signature.

Plaintiffs citations to authority that the solicitation of signatures is "core political speech" misses the point that R.C. § 3503.06(C)(1)(a) does not restrict or burden the solicitation of signatures. It merely regulates who may be the witness of record for the signatures. Anyone—residents and non-residents alike—may engage in the "core political speech" that constitutes the *protected* element of the petition circulation process. The statute does not govern who engages in the interactive conversation about the issue; it governs who undertakes the important but ministerial acts of verifying signatures and completing the forms. This is a minimal, non-discriminatory restriction justified by the State's regulatory interest in preventing fraud and ensuring that witnesses to signatures are subject to the state's subpoena power and may be

compelled to appear and testify on short notice. Under the *Burdick* analysis, Plaintiffs are unlikely to succeed on the merits of their claims.

Moreover, *Plaintiffs' motion fails to make any allegation of anticipated harm to them resulting from the residency requirement.* Instead, Plaintiffs acknowledge the wide support they enjoy and expect to continue to enjoy in Ohio (Doc. 3, PAGEID# 3) and assert only that, because of the residency requirement, LPO statewide candidates are limited to in-state circulators and that many LPO candidates may "seek to use non-residents to circulate the petitions required by Ohio law." (*Id.*, PAGEID# 5). Plaintiffs fill the remainder of their argument discussing the residency requirement's general constitutionality in terms of the *Nader* case and the previous Secretary's handling of the predecessor statute. (*Id.*, PAGEID# 4-5).

*Importantly, for statewide offices, LPO candidates, as a minor party, must only gather 500 valid signatures and can submit no more than 1500.* R.C. § 5313.05. Again, the residency requirement passed the General Assembly on March 30, 2013—over ten months before Plaintiffs' primary deadline—and went into effect on June 21, 2013—over seven months before Plaintiffs' primary deadline. As of the filings of their motion, Plaintiffs still had over four months to gather their signatures. With the wide support in Ohio that Plaintiffs themselves have argued that they have (Doc. 3, PAGEID# 3), gathering 500 valid signatures by February 5, 2014 using Ohio residents as circulators is a minimal burden. A preliminary injunction would be wholly unwarranted.

    **4.    Even under strict scrutiny, R.C. § 3503.06(C)(1)(a) is constitutional.**

        **a.    Compelling state interests underlie the resident circulator requirement.**

While the lack of a burden on protected speech means that strict scrutiny is not appropriate, Plaintiffs cannot show that R.C. § 3503.06(C)(1)(a) would be unlikely to survive

9

strict scrutiny. The statute is supported by compelling state interests and is narrowly tailored to achieve them. In *IRI*, the court found that North Dakota's resident-circulator statute was supported by the compelling state interests of preventing fraud and ensuring that witnesses to petition signatures are subject to the state's subpoena power. 241 F.3d at 616. The latter interest is particularly important given the short time-frame the State has to verify signatures. That fact fully distinguishes this circumstance from *Nader*. *Purcell v. Gonzalez*, 549 U.S. 1, 4, 127 S.Ct 5 (2006) (recognizing a state's "compelling interest in preserving the integrity of its election process").

In addition, the *IRI* court noted the compelling state interest of ensuring "that a provision has grass-roots support in North Dakota and that the initiative process is not completely taken over by moneyed, out-of-state special interest groups." *Id*. at 617. As in *IRI*, Ohio has a similarly strong interest in ensuring that candidates for office in this state are substantially supported by Ohioans—those whose lives those candidates would affect—and not solely supported by well-funded, out-of-state interests. As in *IRI*, requiring that circulators of petitions be Ohioans helps ensure that there is grass roots support in Ohio for the issue or candidate seeking ballot access.

### b. Plaintiffs cannot show a strong likelihood that the resident circulator requirement is not narrowly tailored.

As the Eighth Circuit noted in IRI, "[i]n *Buckley*, the Supreme Court, while striking down a voter registration requirement for petition circulators, assumed without deciding that state residency requirements for petition circulators were permissible." *IRI*, 241 F.3d at 616. The Court went on to find North Dakota's residency requirement was narrowly tailored to achieve compelling state interests. *Id*. at 617.

Here, as in *IRI*, Ohio's requirement that petition circulators be Ohio residents is narrowly tailored to achieve the undisputed compelling state interests. To be narrowly tailored, a restriction must not burden substantially more speech than is necessary to achieve the compelling state interest. *See Ward v. Rock Against Racism*, 491 U.S. 781, 800, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989). Plaintiffs argue that the State has a burden to demonstrate the reality of the claimed harms and the narrow tailoring of the restriction. Even if that were true at the ultimate determination of the merits of this case at trial or on dispositive motions, at the *preliminary injunction stage*, it is still *Plaintiffs'* burden to show a likelihood of success on the merits. *See Jones v. Caruso*, 569 F.3d at 265.

Plaintiffs make no argument that the restriction is not narrowly tailored, but rather just cite to *Nader* in arguing that the statute is unconstitutional. (Doc. 3, PAGEID# 4-5). Plaintiffs have therefore failed to carry their burden to show a likelihood of success on the merits of the issue of whether R.C. 3503.06(C)(1)(a) is narrowly tailored. As the Eighth Circuit found in *IRI*—and as the Sixth Circuit lacked the opportunity to consider in *Nader*, *see* 545 F.3d at 475-76—restricting witnesses of petition signatures to Ohio residents is narrowly tailored to the state's compelling interests of preventing fraud, ensuring that witnesses will be available to testify, and ensuring that candidates are supported, at least in part, by Ohioans. As Plaintiffs have not established a likelihood that they will succeed on their argument to the contrary, their motion for a preliminary injunction must fail.

### B. Plaintiffs cannot establish irreparable harm.

Plaintiffs do not argue any harm, but even if they had, any harm to Plaintiffs would be speculative at this point because Plaintiffs can still use the speakers they want to use to convey their message and may still get their candidates on the ballot. Plaintiffs have over four months to

11

gather the requisite 500 valid signatures they need. Plaintiffs have the burden of showing irreparable harm, and have presented no evidence that they will not be able to qualify for the ballot. In fact, Plaintiffs have not even *alleged* that they cannot get their candidates on the ballot, merely that they would like to have non-resident circulators. (Doc. 3, PAGEID# 5). Again, Plaintiffs *may* use non-residents to engage in all of the components of "circulating" that constitute protected political speech, so they have no constitutional injury with respect to speech or association. Any allegation that Plaintiffs will struggle to obtain the 500 valid signatures they need to reach the ballot is too speculative at this time to merit injunctive relief. Even so, the claimed harm is insubstantial: Ohio's rule under the current statute is that circulators be, in the words of the U.S. Supreme Court, "merely voter eligible," not that they be registered voters themselves. *See Buckley v. American Constitutional Law Assoc.*, 525 U.S. 182, 194, 119 S. Ct. 636, 142 L. Ed. 2d 599 (1999); *see also id*. at 197 (assuming without deciding that a residency requirement would be "upheld as a needful integrity-policing measure").

      **C.    The balance of the harms and the public interest are against a preliminary injunction.**

Issuing a preliminary injunction while the state of the law is in flux due to the pending cert petition in *Judd* would cause harm to the state and would not be in the public interest. If the petition is granted and the Supreme Court upholds the challenged restrictions there the preliminary injunction here would have taken away the legislature's legitimate prerogative to regulate petition circulation, and may require the state to figure out how to deal with signatures gathered in contravention of state law and that are illegal under the Supreme Court's decision but that were gathered in accordance with an order from this court. The public interest favors preserving the status quo. The traditional purpose of a preliminary injunction is to preserve the status quo. *PBV, Inc. v. Rossotti*, No. 98-3504, 1999 WL 220123, at *1 (6th Cir. 1999) ("The

purpose of a preliminary injunction is to preserve the status quo until a trial on the merits can be held."). Plaintiffs seek exactly the opposite: the invalidation of a duly passed state law that is presumed constitutional, while the very principles Plaintiff claims render it invalid are on petition for review before the U.S. Supreme Court. In this uncertain landscape, a preliminary injunction would be especially inappropriate.

## CONCLUSION

For the reasons set forth above, the State of Ohio respectfully submits that Plaintiffs have not met their burden of showing by clear and convincing evidence that a preliminary injunction should issue, and the State of Ohio asks the Court to deny the Motion.

Respectfully submitted,

MICHAEL DEWINE
Ohio Attorney General


*/s/ Kristopher J. Armstrong*
KRISTOPHER J. ARMSTRONG (0077799)
  *Trial Attorney*
ERIN BUTCHER-LYDEN (0087278)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
(614) 466-2872
(614) 728-7592 (fax)
kristopher.armstrong@ohioattorneygeneral.gov
erin.butcher-lyden@ohioattorneygeneral.gov

*Counsel for Intervenor-Defendant*
*State of Ohio*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of October, 2013, the foregoing *State of Ohio's Memorandum Contra Plaintiffs' Motion for Preliminary Injunction* was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by e-mail or facsimile upon all parties for whom counsel has not yet entered an appearance and upon all counsel who have not entered their appearance via the electronic system.

>  */s/ Kristopher J. Armstrong*
>  Kristopher J. Armstrong
>  Assistant Attorney General