**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Libertarian Party of Ohio,** *et al.*,

  **Plaintiffs,**

  **v.**           **Case No. 2:13–cv–953**

**Jon A. Husted,**        **Judge Michael H. Watson**
**Ohio Secretary of State,**

  **Defendant.**

<u>**OPINION AND ORDER**</u>
<u>**AND PRELIMINARY INJUNCTION**</u>

  Plaintiffs assert claims under 42 U.S.C. § 1983, challenging a recently enacted Ohio law, S.B. 193, which affects minor political parties' access to the ballot for the Ohio primary and general elections in 2014.  Plaintiffs move the Court to preliminarily enjoin Defendant State of Ohio and Defendant Ohio Secretary of State (collectively, "Defendants") from retroactively enforcing S.B. 193 and to order Defendants to provide them ballot access in 2014 consistent with prior federal court rulings and Directives issued by the Ohio Secretary of State.  For the following reasons, the Court grants Plaintiffs' motions to the extent it enjoins Defendants from applying S.B. 193 to the 2014 election cycle, and orders them to provide Plaintiffs access to the primary and general ballots in 2014 in accordance with the requirements of the Secretary of State's Directive 2013-02.

# I. BACKGROUND

## A. The Parties

Four Plaintiffs filed the original complaint in this case: the Libertarian Party of Ohio ("LPO"); Kevin Knedler; Aaron Harris; and Charlie Earl. LPO has previously been a ballot-qualified political party in Ohio. LPO candidates have run for local, statewide, and federal offices since 2008. Keven Knedler is the Chair of the LPO Executive Committee. Aaron Harris is the Chair of the LPO Central Committee. Both Knedler and Harris are registered voters and intend to vote for LPO candidates in the May 2014 primary election. Charlie Earl seeks to run as the LPO candidate for Governor of Ohio in 2014. The Court will refer to the original Plaintiffs in this action as the "LPO Plaintiffs."

During a conference held on December 4, 2013, the Court orally granted the following parties leave to intervene as Plaintiffs in this action: Robert M. Hart, individually, Robert Fitrakis, on behalf of the Ohio Green Party ("OGP"), Max Russell Erwin, individually, and Don Shrader, on behalf of the Constitution Party ("CPO"). The Intervener Plaintiffs filed their complaint on December 23, 2013. The Court will refer to the Intervener Plaintiffs as the "OGP/CPO Plaintiffs."

Defendant Jon Husted is the Ohio Secretary of State ("Secretary"). As Secretary, he is also Ohio's chief elections officer under Ohio Revised Code § 3501.04 and therefore is charged with the duty to enforce Ohio's election laws, including the new restrictions on minor political parties. Plaintiffs sue the

Secretary in his official capacity only.

## B. Ohio Law on Qualification of Minor Political Parties

To set the stage for the present case, the Court will briefly review the recent history of Ohio laws affecting minor parties' access to the ballot and litigation challenging those laws.

Significant to the present case, the LPO has successfully challenged Ohio laws concerning its access to the ballot in three prior lawsuits. First, in 2004, Ohio law provided that if a party did not receive 5% of the votes for its presidential or gubernatorial candidate, the party was required to gather signatures of voters equal to 1% of the votes cast for governor in the previous general election and to file its registration petition 120 days in advance of the primary election, which equated to one year in advance of the general election in presidential election years. The LPO and its members filed an action in this Court challenging the requirements on the ground that, in combination, the requirements severely burdened their First Amendment and Fourteenth Amendment rights of free association. Another branch of this Court granted the Secretary's motion for summary judgment, and the LPO appealed. The Sixth Circuit reversed. *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 582 (6th Cir. 2006). The appellate court in *Blackwell* found that the Ohio law placed severe burdens on the First Amendment rights to free speech and association of the LPO, its members, and potential voters-supporters, was not narrowly tailored, and did not serve a

compelling state interest. *Id.*

The Ohio Legislature did not enact new legislation in response to the *Blackwell* decision despite requests by the Secretary to do so. The Secretary then issued Directive 2007-09 in an attempt to bring Ohio law into compliance with *Blackwell*. That directive purported to alter Ohio law by reducing the signature requirement to a number equal to .5% of the votes cast for governor in the prior general election and changing the filing deadline to 100 days before the primary election.

The LPO filed another lawsuit in this Court seeking a preliminary injunction enjoining the Secretary from enforcing Directive 2007-09. Another branch of this Court held that the Secretary lacked authority to issue the directive, and that the directive was in any event unconstitutional because it still placed severe burdens on First Amendment rights of the LPO and its supporters. *Libertarian Party of Ohio v. Brunner*, 567 F. Supp. 2d 1006, 1012–13, 1014 (S.D. Ohio 2008). Notably, the Court found that the LPO had the requisite community support and accordingly issued a preliminary injunction ordering the Secretary of State to place the LPO candidates on the ballot for the 2008 election. *Id.* at 1015–16 (citing *McCarthy v. Briscoe*, 429 U.S. 1317, 1323 (1976)).

Afterwards, the Secretary entered into a consent decree in which she agreed not to enforce Directive 2007-09. She then issued Directive 2009-21 which recognized the LPO as well as the OGP, the CPO, and the Socialist Party

as qualified to appear on the primary and general election ballots.  In January

2011, the Secretary issued Directive 2011-01 which reinstated Directive 2009-21

and provided the LPO and the other minor parties ballot access for 2011.

On July 1, 2011, the Ohio Governor signed H.B. 194.  H.B. 194 differed

from the law that the Sixth Circuit struck down in *Blackwell* only insofar as it

changed the deadline for filing signatures from 120 days before the May primary

to ninety days before the primary.  The LPO then filed another federal lawsuit

seeking a preliminary injunction blocking enforcement of H.B. 194.  Suggesting

the burdens of H.B. 194 were more severe than the burdens addressed in

*Brunner*, another branch of this Court found that H.B. 194 violated the LPO's First

Amendment rights.  *Libertarian Party of Ohio v. Husted*, No. 2:11–cv–722, 2011

WL 3957259, at *6 (S.D. Ohio Sept. 7, 2011), *vacated as moot*, 497 F. App'x 581

(6th Cir. 2012).[1]

On January 31, 2013, the Secretary issued Directive 2013-02.  Directive

2013-02 continued the practice of recognizing minor political parties and granting

them access to the ballot for both the primary and general elections.  In

accordance with Directive 2013-02, a number of minor party candidates have

already collected signatures, filed their nominating petitions, and paid the

required fees to participate in Ohio's 2014 primary election.  The following LPO

candidates have already filed their paperwork to run for local offices in Ohio:

---

[1]H.B. 194 was repealed after it was challenged in a voter referendum.

Nelson Roe (October 25, 2013); Martin Elsass (October 1, 2013); Gregg Norris (October 15, 2013); Robert Sherwin (November 1, 2013); and Mark Noble (October 16, 2013).  In addition, OGP candidate Robert Hart filed for federal office on October 2, 2013.  Other minor party candidates are presently circulating their petitions consistent with Directive 2013-02 and are expected to file their paperwork before the February 5, 2014 deadline.

On November 6, 2013, the Ohio Legislature passed, and the Governor signed, S.B. 193.  It becomes effective on February 5, 2014, which happens to also be the deadline for submitting petition signatures under the existing scheme. To begin with, S.B. 193 expressly voids the Secretary's previous directives that recognized minor parties as ballot qualified for both primary and general elections.  S.B. 193 § 3 ("Directives 2009-21, 2011-01, and 2013-02 issued by the Secretary of State are hereafter void and shall not be enforced or have effect on or after the effective date of this act.").  The upshot of that provision, along with other provisions in the bill, is that minor parties must start from scratch to qualify for ballot access.  Moreover, S.B. 193 completely eliminates minor parties' access to the primary ballot.  *See* S.B. 193 § 1.  Hence, if S.B. 193 goes into effect, the nominating petitions already filed by minor party candidates to appear on the 2014 primary election ballot in reliance on Directive 2013-02 would be nullified, and the time and resources expended on those petitions will have been wasted.

S.B. 193 sets forth two methods by which a minor party can qualify for ballot access.  First, a minor party can qualify for ballot access if its candidate for governor or president received 3% of the votes cast in the previous election.  S.B. 193 § 1.  For 2014, however, the minor party's gubernatorial candidate need only receive at least 2% of the vote in the general election for the minor party to qualify. S.B. 193 §§ 4(B), 1.  If achieved, party recognition under the first method remains in effect for four years.

Second, if it cannot fulfill the first method, a minor party may qualify by petition.  For 2014, that method requires a minor party to submit a party formation petition which must be signed by Ohio voters equal in number to at least .5% of the total vote for nominees for presidential electors at the 2012 general election (about 28,166 signatures).  S.B. 193 § 4 (A).  After 2014, the number of required signatures changes to at least 1% of the total vote for governor or for presidential electors in the most recent election.  S.B. 193 § 1.  The formation petition must also contain signatures of at least 500 voters from each of at least one half of the congressional districts in Ohio.  S.B. 193 § 1.  The petition must be submitted no later than 126 days before the general election.  *Id*.

## C.  Procedural History

LPO, Knedler, Harris, and Earl filed their complaint on September 25, 2013 followed by their first motion for a preliminary injunction.  They then filed a motion for preliminary injunction, asking the Court to enjoin Defendants from enforcing

the residency requirement for petition circulaters set forth in Ohio Revised Code § 3503.06(C)(1)(a).  The Court granted Plaintiffs' first motion for a preliminary injunction on November 11, 2013.  ECF No. 18.

Plaintiffs filed an amended complaint on November 8, 2013, challenging Ohio's newly enacted S.B. 193 which places various restrictions on minor parties' access to the ballot.  Plaintiffs filed their second motion for a preliminary injunction on November 10, 2013, asking the Court to enjoin Defendants from enforcing S.B. 193.

Pursuant to Southern District of Ohio Civil Rule 65.1(a), the Court conducted an informal conference on December 4, 2013.  Counsel for all parties in both cases were present and participated in the conference.  Although the Court scheduled the matter for oral argument, it finds parties' briefs more than adequately address all of the issues, and it will therefore decide Plaintiffs' motions for preliminary injunction on the basis of the papers filed to date.

## II. STANDARD OF REVIEW

The Court considers and balances four factors when considering a motion for a preliminary injunction: "'(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'"  *Williamson v. Recovery Ltd. Partnership*, 731 F.3d

608, 627 (6th Cir. 2013) (quoting *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004)). The factors are not prerequisites to injunctive relief; rather, the Court must balance them to determine whether they weigh in favor of granting an injunction. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). The moving party bears the burden of justifying the issuance of an injunction, including showing likelihood of success and irreparable harm. *Id*.

## III. DISCUSSION

### A. Likelihood of Success

The two groups of Plaintiffs advance somewhat different grounds for injunctive relief. The LPO Plaintiffs challenge the retroactive application of S.B. 193. They argue that "even if S.B. 193 would be valid if applied prospectively in 2015 and beyond, it cannot constitutionally be applied retroactively to preclude or disadvantage LPO candidates in 2014." Reply 2, n.1, ECF No. 33. The GPO/CPO Plaintiffs agree that retroactive application of S.B. 193 offends the U.S. Constitution but additionally argue that S.B. 193 places severe, unconstitutional burdens on minor political parties regardless of retroactivity. The Court first will address the issue of retroactivity.

### 1. Retroactive Application of S.B. 193

Both groups of Plaintiffs assert the retroactive application of S.B. 193 would cause them significant harm and violate their right to due process under the

Fourteenth Amendment. Plaintiffs argue S.B. 193 effectively strips them of their status as minor political parties for purposes of the 2014 elections and would place them at a substantial disadvantage. They contend they have already expended significant time and resources collecting signatures on nominating petitions, and several candidates have already filed the required paperwork and paid fees to participate in Ohio's 2014 primary in accordance with the Secretary's prior directives.

Defendants argue Plaintiffs' retroactivity argument fails because S.B. 193 has no retroactive effect. Indeed, Defendants contend that without S.B. 193, Plaintiffs had *no* access to the ballot whatsoever for 2014. Defendants maintain that is so because the Secretary's Directive 2013-02 applied only to 2013 by its own terms and not beyond.

Plaintiffs offer two responses to Defendants' argument. First, they note that § 3 of S.B. 193 expressly voids Directive 2013-02 as well as two earlier directives that recognized minor parties were ballot qualified. *See* S.B. 193, § 3. Plaintiffs argue that § 3 would be meaningless if the directives had no continuing effect.

Second, Plaintiffs assert that their access to the ballot does not depend on the Secretary's directives. Rather, the First and Fourteenth Amendments to the U.S. Constitution guarantee Plaintiffs ballot access, as recognized by this Court in *Brunner*:

> The Constitution gives the Ohio legislature significant discretion to
> establish election procedures. After the state statute was held to fall
> outside "the boundaries established by the Constitution," the legislature
> failed to act. *Blackwell*, 462 F.3d at 595. The Court will not prescribe
> Constitutional election procedures for the state, but in the absence of
> constitutional, ballot access standards, when the "available evidence"
> establishes that the party has "the requisite community support," this
> Court is required to order that the candidates be placed on the ballot.
> *McCarthy*, 429 U.S. at 1323. As set out above, the Court finds that the
> Libertarian Party has the requisite community support to be placed on
> the ballot in the state of Ohio.

*Brunner*, 567 F. Supp. 2d at 1015.

The Court finds both of Plaintiffs' arguments persuasive. The Ohio

Legislature took the trouble to include a provision in S.B. 193 that expressly voids

three directives of the Secretary that had recognized several minor parties and

provided them access to both the primary and general ballots. If the directives

had no continuing effect, then the provision voiding them would be mere

surplusage. The cannons of statutory construction do not permit the Court to

interpret a statutory provision in a manner that renders it meaningless. Thus, the

Court is constrained to conclude that the Ohio Legislature understood the

directives had continuing effect.

Plaintiffs' constitutional argument is even more compelling. As this Court

recognized in *Brunner*, where a state legislature fails to pass constitutional laws

governing the ballot access of minor parties, a federal court must order such

access where the evidence shows a minor party has the requisite modicum of

support to warrant ballot access. 567 F. Supp 2d at 1015. The salient

circumstances in Ohio have not changed since *Brunner*. That is, Ohio has not had a constitutionally valid statute governing minor party access to the ballot since it enacted the law struck down in *Blackwell* in 2006. Even today, Ohio does not have a law in effect governing the access of minor parties to the ballot because S.B. 193 does not take effect until February 5, 2014. As a result, as in *Brunner*, there is an absence of a constitutional Ohio law setting forth ballot access standards for minor parties.

Notably, in 2008, this Court found that the LPO had the requisite degree of community support to warrant compelling the Secretary to place it on the ballot. *Brunner*, 567 F. Supp. 2d at 1015. There is no reason to believe that the LPO has less community support now than it did when the Court issued its decision in *Brunner*. In fact, Defendants acknowledge that LPO candidates received more than one million votes in the 2010 general election. In addition, in response to the *Brunner* decision, the Secretary has issued three directives recognizing the right to ballot access for the primary and general elections of not only the LPO, but also the OGP, CPO, and the Socialist Party. That recognition suggests the Secretary recognizes that all of the Plaintiff minor parties have sufficient community support to warrant placement on the ballot. As a result, the present record supports a finding that the LPO, as well as the OGP, CPO, and Socialist Parties, possess significant community support. Because Plaintiffs have the requisite modicum of community support, they presently have the right to ballot

access by virtue of the First and Fourteenth Amendments in the absence of a valid Ohio law governing their access to the ballot. *Brunner*, 567 F. Supp. 2d at 1015.

Defendants also appear to suggest that similar to the directives, the earlier federal court decisions, which would include *Brunner*, do not provide Plaintiffs a continuing right to ballot access. That argument fails. Regardless of whether *Brunner*, or any other federal court decision, directly requires ballot access for minor parties in 2014, *Brunner* remains good law. The sound legal principles upon which the *Brunner* Court relied apply with equal force to the present case. What was true when *Brunner* was decided remains the *status quo*: there currently is no constitutionally valid Ohio law in effect regulating ballot access for minor parties, and the evidence tends to show the LPO, OPG, and CPO have the requisite modicum of community support to warrant placement on the ballot as a matter of right under the First and Fourteenth Amendments. *See Brunner*, 567 F. Supp. 2d at 1015–16 (citing *McCarthy v. Briscoe*, 429 U.S. 1317, 1323 (1976)). In light of the above, the *status quo* in Ohio was, and remains, that Plaintiffs have ballot access both under the U.S. Constitution and the Secretary's directives. Since S.B. 193 significantly alters the *status quo*, the Court rejects Defendants' argument that the bill has no retroactive effect. The Court will therefore proceed to determine whether the retroactive effect of S.B. 193 violates Plaintiffs' constitutional rights.

Plaintiffs argue that the retroactive application of S.B. 193 violates their

right to due process guaranteed by the Fourteenth Amendment.

> Retroactivity is generally disfavored in the law, *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 469–470, 102 L.Ed.2d 493 (1988), in accordance with "fundamental notions of justice" that have been recognized throughout history, *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 855, 110 S.Ct. 1570, 1586–1587, 108 L.Ed.2d 842 (1990) (SCALIA, J., concurring). *See also, e.g., Dash v. Van Kleeck*, 7 Johns. 477, 503 (N.Y. 1811) ("It is a principle in the English common law, as ancient as the law itself, that a statute, even of its omnipotent parliament, is not to have a retrospective effect"); H. Broom, *Legal Maxims* 24 (8th ed. 1911) ("Retrospective laws are, as a rule, of questionable policy, and contrary to the general principle that legislation by which the conduct of mankind is to be regulated ought to deal with future acts, and ought not to change the character of past transactions carried on upon the faith of the then existing law"). In his Commentaries on the Constitution, Justice Story reasoned: "Retrospective laws are, indeed, generally unjust; and, as has been forcibly said, neither accord with sound legislation nor with the fundamental principles of the social compact." 2 J. Story, *Commentaries on the Constitution* § 1398 (5th ed. 1891). A similar principle abounds in the laws of other nations. *See, e.g., Gustavson Drilling (1964) Ltd. v. Minister of National Revenue*, 66 D.L.R.3d 449, 462 (Can. 1975) (discussing rule that statutes should not be construed in a manner that would impair existing property rights); The French Civil Code, Preliminary Title, Art. 2, p. 2 ("Legislation only provides for the future; it has no retroactive effect") (J. Crabb transl., rev. ed. 1995); Aarnio, *Statutory Interpretation in Finland* 151, in Interpreting Statutes: A Comparative Study (D. MacCormick & R. Summers eds. 1991) (discussing prohibition against retroactive legislation). "Retroactive legislation," we have explained, "presents problems of unfairness that are more serious than those posed by prospective legislation, because it can deprive citizens of legitimate expectations and upset settled transactions." *General Motors Corp. v. Romein*, 503 U.S. 181, 191, 112 S.Ct. 1105, 1112, 117 L.Ed.2d 328 (1992).

*Ea. Enters. v. Apfel*, 524 U.S. 498, 532–33 (1998). If a retroactive law affects

only economic concerns, the law must constitute a rational means to serve a

legitimate legislative purpose. *See Pension Benefit Guaranty Corporation v. R.A. Gray & Co.*, 467 U.S. 717, 730 (1984). Where, however, the retroactive application of a law implicates First Amendment rights, "rigorous adherence" to due process is required lest exercise of those rights be chilled. *See FCC v. Fox Television Stations, Inc.*, 132 S.Ct. 2307, 2317–18 (2012).

Plaintiffs assert that the retroactive application of S.B. 193 harms them in several concrete ways. First, Plaintiffs argue that by removing their access to the primary ballot in 2014, S.B. 193 places them at a political disadvantage *vis á vis* the major parties. The LPO Plaintiffs explain:

> Ohio attempts to minimize the practical, if not the legal, disparities imposed by S.B. 193. It points to the million-plus votes LPO candidates won in 2010 and states "it cannot be that the lack of a 2014 Libertarian Party primary will render Plaintiffs unable to locate 50 qualifying signatories who will support a state-wide candidate petition." Ohio's Response, Doc. No. 32, at 9. This argument ignores the fact that none of the one million-plus people who voted for LPO candidates in the 2010 general election will be LPO members in 2014 if S.B. 193 takes effect. The majority will become major-party members, because those are the only parties that will have primaries. Plaintiffs' point is not that they cannot or will not find support in 2014, it is that S.B. 193 will make it more difficult by discriminatorily facilitating the major parties' harvesting of LPO's supporters and members.

LPO Pls.' Reply 4 n. 2, ECF No. 33.

Defendants urge the Court to reject Plaintiffs' argument that retroactive application of S.B. 193 puts them at a political disadvantage. They note the U.S. Supreme Court expressly declined to recognize an equal protection right of minor parties to appear on primary ballots:

Neither can we take seriously the suggestion made here that the State has invidiously discriminated against the smaller parties by insisting that their nominations be by convention, rather than by primary election. We have considered the arguments presented, but we are wholly unpersuaded by the record before us that the convention process is invidiously more burdensome than the primary election, followed by a runoff election where necessary, particularly where the major party, in addition to the elections, must also hold its precinct, county, and state conventions to adopt and promulgate party platforms and to conduct other business. If claiming an equal protection violation, the appellants' burden was to demonstrate in the first instance a discrimination against them of some substance. 'Statutes create many classifications which do not deny equal protection; it is only 'invidious discrimination' which offends the Constitution. *Ferguson v. Skrupa*, 372 U.S. 726, 732 (1963) (footnote omitted). Appellants' burden is not satisfied by mere assertions that small parties must proceed by convention when major parties are permitted to choose their candidates by primary election. The procedures are different, but the Equal Protection Clause does not necessarily forbid the one in preference to the other.

*Am. Party of Texas v. White*, 415 U.S. 767, 781–82 (1974). Defendants also point out that LPO's own expert, Richard Winger, acknowledges that the rationale for requiring major parties to participate in primaries does not apply to minor parties.

Defendants' arguments go to the merits of whether S.B. 193 imposes severe burdens on ballot access *prospectively*. That a law may be valid when it is applied prospectively does not mean its retroactive application satisfies due process. *Apfel*, 524 U.S. at 547–48. The issue is not whether Plaintiffs have a specific constitutional right to appear on the primary ballot. Rather, it is whether due process fairness requires them to be placed on the 2014 primary ballot in these circumstances. The circumstances here include the Secretary's directives

which indicated Plaintiffs could qualify for the primary ballot, Plaintiffs'
expenditure of significant time and resources to qualify, and Plaintiffs' legitimate
expectation that, having complied with the process that was (and remains) in
place, they would have the opportunity to reap the political benefits of
participating in the primary. The Ohio Legislature moved the proverbial goalpost
in the midst of the game. Stripping Plaintiffs of the opportunity to participate in
the 2014 primary in these circumstances would be patently unfair.

Plaintiffs also maintain that under Ohio law, ballot qualifying papers are
deemed effective the date they are filed. In support of that proposition Plaintiffs
rely on *State ex rel. Brown v. Summit County Bd. of Elections*, 46 Ohio St. 3d
166, 168 (1989) ("[The] duty of the board of elections to place the name of the
[candidate] on the ballot will relate back to the time [the candidate] filed his
nominating petition."). Plaintiffs argue that even though election officials certify
the papers at a later date, the time of qualification relates back to the filing date.
They assert that candidates who have already filed their papers are currently
qualified to appear on the 2014 primary ballot (assuming their papers meet the
requirements), and the same applies to other candidates who file their papers
before the effective date of S.B. 193. Plaintiffs argue S.B. 193 would eliminate
them from the primary and general ballots for which they will already have
qualified under Ohio law. In that sense, Plaintiffs appear to argue they have a
protected liberty interest, or at least a legitimate expectation, that they could

participate in the 2014 primary and general elections by complying with the process currently in place.

Defendants assert *Brown* did not establish a relation back doctrine applicable to the filing of ballot qualifying papers. The Court shares Defendants' scepticism about the import of *Brown*. In *Brown*, the petitioner sought to be placed on the ballot as a candidate for the Stow, Ohio city council. The local board of elections refused to place him on the ballot because he had not been a resident of Stow for two years as required by the city charter. In ruling that the remedy of mandamus was potentially available to the petitioner, the court stated that if it ruled the two-year requirement was unconstitutional, it would order the petitioner to be placed on the ballot and the duty of the board to do so would relate back to the date he filed his nominating petition. *Brown*, 46 Ohio St. 3d at 168. Ultimately, however, the court held the two-year requirement did not offend the Fourteenth Amendment or the Ohio Constitution. *Id*. at 169. It is far from obvious that *Brown* established a relation back doctrine beyond the confines of a mandamus petition asserting a constitutional claim. *Brown* is too slim a reed upon which to support a constitutionally protected liberty interest based upon a relation back theory.

That is not to say Plaintiffs did not have a legitimate expectation they could qualify to appear on the 2014 primary ballot. Directives issued by the Secretary since 2009 amply support such an expectation. That is especially true given that

under the existing scheme, Plaintiffs understandably began their efforts to qualify for the 2014 primary *during 2013*, when even Defendants concede Directive 2013-02 was in effect. And Directive 2013-02 remains in effect despite Defendants' argument to the contrary.

Plaintiffs also point out that they have expended considerable time and resources to obtain signatures and file their petition papers to appear on the 2014 primary and general ballots in accordance with procedures that were in place as set forth in Directive 2013-02. Plaintiffs maintain that retroactive application of S.B. 193 would render all of their efforts to date wasted, and that they would then have to incur the additional expenditure of time and money to qualify for the 2014 general election under the new law. Defendants do not cogently respond to Plaintiffs' argument.

Plaintiffs submit the declaration of Richard Wagner, who has testified as an expert on minor party ballot access in other cases, including *Blackwell*. Wagner decl. ¶ 1, ECF No. 22. Wagner indicates that states have historically refrained from retroactively applying new ballot access laws to avoid unfairness. *Id*. ¶ 4. He provides eleven examples where retroactive application was avoided because the law expressly stated it was not retroactive, the law was successfully challenged in court, or the state's election authority declined to apply the new law retroactively. *Id*. ¶¶ 5.A to 5.K. While far from determinative, Wagner's declaration indicates that in some cases, state legislatures have intentionally

acted to avoid the pitfalls of retroactivity, and when they have failed to do so, election officials and courts have stepped in to prevent retroactive application of new election laws.

In addition, Plaintiffs rely on a decision by a three-judge court in an election case which they maintain is factually similar, *Hudler v. Austin*, 419 F. Supp. 1002 (E.D. Mich. 1976). The minor party plaintiffs in *Hudler* challenged a Michigan statute that imposed additional requirements for ballot access. Two of the three judges agreed the law passed constitutional muster. *Hudler*, 419 F. Supp. at 1013. Nonetheless, all three judges agreed that retroactive application of the new requirements to the upcoming election would violate due process. *Id*. at 1014. The court opined:

> The passage of Act 94 late in April caught plaintiffs at a particularly prejudicial and inopportune time to begin attempting to comply with the new requirements. Their petition drives were either completed or nearly completed and the form of petition which had been used, pursuant to former M.C.L.A. § 168.685, indicated to signers that their signatures constituted the only action necessary to place the party on the ballot. Further, the opportunity for soliciting petition signatures and proselytizing for primary support at the same time was rendered impossible since petition gathering had all but drawn to a close when plaintiffs were first apprised of the primary performance requirement. In tandem then, these problems presented plaintiffs with an obligation substantially more difficult to satisfy than that which new parties will face in the future under Act 94 and deprived them of due process of law.
>
> In a different vein, but contributing to the deprivation of due process, is the legislature's failure to take earlier action although fully apprised of the problem. Defendant director of elections Apol testified that he had advised the legislature after the 1972 election and again in the fall of

1975 that overcrowding problems were likely to arise in the next election. Apol testified before an ad hoc legislative committee involved with the proposed legislation in January or February of 1976, and the legislature was aware of the number of parties soliciting petition signatures and the potential consequences as to the 1976 election.

Depriving plaintiffs of adequate time and notice saddled them with an additional burden beyond that considered in the court's earlier assessment of the likelihood of compliance if reasonably diligent efforts are made. The short time limits, extra expense and duplicative effort required to regenerate the support of plaintiffs' constituencies falls outside *Storer*'s "reasonably diligent efforts" standard and imposes an unnecessarily prejudicial burden on the plaintiff new parties seeking 1976 ballot status.

*Id*. The court in *Hudler* upheld the Michigan statute, but it ordered the defendants to provide ballot access for the upcoming election "to all parties who would have been eligible based upon compliance with the pre-existing petition requirement." *Id*.

As Plaintiffs suggest, the facts of *Hudler* bear some resemblance to those of the instant case.  Here, similar to *Hudler*, the Ohio Legislature has had since September 6, 2006—the date the Sixth Circuit issued *Blackwell*—to formulate ballot access standards that meet the requirements of the U.S. Constitution. Moreover, the Ohio Legislature has operated without a valid ballot access law governing minor parties since this Court issued its decision in *Husted* in September 2011.  Yet, it waited until November 6, 2013 to pass S.B. 193. Consequently, the Ohio Legislature's delay in passing S.B. 193 could, along with

other factors, give rise to unfairness. The delay also tends to undercut any argument that Ohio's need to apply the law retroactively is urgent or compelling.

As indicated above, several minor party candidates had already collected signatures, filed the required paperwork, and paid fees in order to appear on the 2014 primary ballot before the Ohio Legislature passed S.B. 193, and more are expected to do so before the effective date of S.B. 193. Retroactive application of S.B. 193 would nullify all of the work done to date and would require Plaintiffs to begin an entirely new process to qualify to appear on the general ballot in 2014. The instant case therefore also entails the "extra expense and duplicative effort" present in *Hudler*.

Although *Hudler* was decided almost forty years ago, its reasoning remains persuasive. The decision represents a common sense consideration of the factors contributing to the unfairness arising from the retroactive application of the Michigan statute. Two of the same factors are present here. Namely, the Ohio Legislature delayed passing a valid ballot access law for years, and retroactive application of S.B. 193 will cause Plaintiffs to incur extra expense and duplicative efforts to comply with the new law. Those two factors alone amount to substantial unfairness. In particular, given that the resources of minor parties are minuscule compared to those of the major parties, requiring minor parties to start from scratch and commit the additional time, resources, and money to qualify under the new law is far from trivial. It amounts to a substantial burden on

Plaintiffs' First and Fourteenth Amendment right of association, which includes ballot access. As such, the unfairness rises to the level of violating Plaintiffs' due process rights guaranteed by the Fourteenth Amendment. *Hudler*, 419 F. Supp. at 1014.

In addition, the elimination of Plaintiffs from the 2014 primary ballot by retroactive application of S.B.193 places Plaintiffs at a political disadvantage compared to the major parties regardless of whether Plaintiffs have a constitutional right to participate in primary elections. Furthermore, Plaintiffs had a legitimate expectation that they could qualify for the access to primary and general ballots in 2014 based on the Secretary's directives, and they formulated their political strategies accordingly. These additional factors, while perhaps not dispositive by themselves, compound the unfairness of the retroactive application of S.B. 193.

The Court is mindful of Ohio's interests in regulating ballot access. Ohio has a legitimate interest in avoiding overcrowded ballots, voter confusion, and frivolous candidates who lack significant support from Ohio voters. *See Hudler*, 419 F. Supp. at 1008. Those interests may conceivably support a ruling upholding S.B. 193 as it applies prospectively. Nonetheless, those interests are diminished with respect to retroactive application of S.B. 193 to Plaintiffs. Notably, the Plaintiff parties have been qualified to participate in primary and general elections in recent years, and the Ohio Legislature appeared content with

that arrangement until it passed S.B. 193 last November.  Moreover, Defendants expressly acknowledge the significant support the LPO has achieved and even suggest the LPO should have no trouble qualifying under the new law.  The Secretary has also extended recognition to the OGP and CPO, as well as the Socialist Party, since 2009.  Hence, Plaintiffs are not the kind of frivolous parties or candidates that implicate Ohio's interests.  Nor can it seriously be argued that Plaintiffs' presence on the 2014 primary and general ballots would result in ballot overcrowding or voter confusion since Ohio has managed to accommodate them on the ballot thus far.  Given these circumstances, there is little reason to believe Plaintiffs' participation in the 2014 primary and general elections would harm Ohio's interests to a degree that would warrant retroactive application of S.B. 193 in light of the unfairness it visits upon Plaintiffs.  Stated otherwise, retroactivity does not serve Ohio's legitimate interests to any significant extent.

In sum, the Court finds that retroactive application of S.B. 193 would result in substantial unfairness to Plaintiffs.  Moreover, Ohio's legitimate interests are not significantly served by retroactive application of the law.  Accordingly, the Court holds that Plaintiffs have demonstrated a substantial likelihood of success on their claim that retroactive application of S.B. 193 violates due process.

### 2.  Prospective Application of S.B. 193

The OGP/CPO parties argue that the Court should grant an injunction for the additional reason that S.B. 193 is unconstitutional on the merits.  Specifically,

they assert that S.B. 193 violates their rights under the First and Fourteenth Amendments because it places severe burdens on their access to the ballot, and the law is not narrowly tailored to advance a compelling state interest.

Defendants argue that S.B. 193 does not place an unconstitutional burden on minor parties. They assert that S.B. 193 is less burdensome than ballot access laws of other states that have been upheld by the U.S. Supreme Court and appellate courts in other circuits.

Since the Court has found Plaintiffs have demonstrated a substantial likelihood of success on the retroactive application due process claim, the Court need not at this time address whether S.B. 193 is unconstitutional when applied prospectively.

### 3. The Ohio Constitution

Plaintiffs assert S.B. 193 violates the Ohio Constitution because it strips them of their right to participate in the 2014 primary, and as a result, they have no mechanism to qualify for the ballot for the general election. Plaintiffs maintain Ohio Constitution Art. 5 § 7 requires participation in the primary election as a prerequisite to appearing on the general ballot.

Defendants argue that Eleventh Amendment immunity bars the Court from exercising jurisdiction over Plaintiffs' state law claim under the Ohio Constitution. Plaintiffs contend Ohio waived Eleventh Amendment immunity when it moved to intervene in this lawsuit, and that Ohio's waiver applies equally to the Secretary.

On the merits, Defendants argue that the Ohio Constitution does not mandate participation in primary elections. They contend that by its own terms, Art. 5 § 7 creates an alternative avenue for ballot access "by petition as provided by law, . . ." Ohio Const. Art. 5 § 7. Defendants assert S.B. 193 creates precisely such a petition process for minor parties.

Given the Court has determined Plaintiffs are likely to succeed on the merits of their due process claim, the Court need not at this juncture determine issues of sovereign immunity, the waiver thereof, or the merits of Plaintiffs' claims under the Ohio Constitution.

### 4. Failure to Serve as Required Under Ohio Rev. Code § 2721.12

Defendants also argue the Court lacks jurisdiction to hear Plaintiffs' claim under the Ohio Constitution because Plaintiffs failed to serve the Ohio Attorney General in the manner specified by Ohio Revised Code § 2721.12. Once again, since the Court does not reach Plaintiffs' claim under the Ohio Constitution, there is no need to address the issue of proper service at this time.

### B. Irreparable Harm

Plaintiffs assert that this case implicates their First Amendment rights, and violation of those rights constitutes irreparable harm.

It is well established that even a temporary violation of First Amendment rights constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). While the Court holds that Plaintiffs are likely to succeed on the merits of their

due process claim, that claim in turn implicates Plaintiffs' First Amendment rights. Consequently, the Court finds Plaintiffs would suffer irreparable harm in the absence of a preliminary injunction.

## C. Harm to Others

Plaintiffs argue an injunction would not harm others. Defendants argue they will suffer harm if the Court takes away the Ohio General Assembly's prerogative to regulate ballot access.

As discussed above, the Court acknowledges Ohio's interests in regulating ballot access so as to prevent ballot overcrowding, voter confusion, and frivolous candidacies. Preventing retroactive application of S.B. 193, however, does not harm those interests. Moreover, the Court notes that enjoining retroactive application of S.B. 193 does no more than maintain the *status quo*.

## D. Public Interest

Plaintiffs contend the protection of their constitutional rights serves the interests of the public. The Court agrees.

## E. Balancing the Factors

All of the factors weigh in favor of granting injunctive relief. Accordingly, the Court will issue a preliminary injunction.

## IV. DISPOSITION

Based on the above, the Court **GRANTS** Plaintiffs' motions for a preliminary injunction. Accordingly, the Court **PRELIMINARILY ENJOINS**

Defendants from retroactively applying S.B. 193 to Ohio's 2014 primary and general elections and **ORDERS** Defendants to provide Plaintiffs and their candidates access to the 2014 primary and general elections in accordance with the requirements set forth in the Secretary's Directive 2013-02.

Plaintiffs ask the Court to waive security.  The Court finds that this case is appropriate for such a waiver and **GRANTS** Plaintiffs' motions to waive security.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**