# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Libertarian Party of Ohio, *et al.*,

      **Plaintiffs,**

    **v.**                            **Case No. 2:13–cv–953**

**Jon A. Husted,**                     **Judge Michael H. Watson**
**Ohio Secretary of State,**

      **Defendant.**

## OPINION AND ORDER

Plaintiffs bring claims under 42 U.S.C. § 1983, asserting Defendant Ohio Secretary of State Jon Husted ("Secretary Husted") violated their First Amendment rights when he disqualified their nominating petitions to appear on the May 2014 Ohio primary ballot. Secretary Husted disqualified the petitions because paid circulators who obtained signatures for Plaintiffs' nominating petitions failed to disclose the name and address of the entity that paid them in the "employer information box" on the petitions as required by Ohio Revised Code § 3501.38(E)(1). In their third motion for a preliminarily injunction, Plaintiffs ask the Court to enjoin Secretary Husted from enforcing § 3501.38(E)(1) and order him to include them as candidates for statewide office for the Libertarian Party of Ohio on the May 2014 primary ballot. The Court **DENIES** Plaintiffs' third motion for a preliminary injunction because § 3501.38(E)(1) places only a minimal burden on political speech and the disclosures it requires are substantially related

Ohio's significant interest in deterring and detecting fraud in the candidate petition process.

## I. BACKGROUND

### A. The Parties

Four Plaintiffs filed the original complaint in this case: the Libertarian Party of Ohio ("LPO"); Kevin Knedler; Aaron Harris; and Charlie Earl. The LPO has previously been a ballot-qualified political party in Ohio. LPO candidates have run for local, statewide, and federal offices since 2008. Keven Knedler is the Chair of the LPO Executive Committee. Aaron Harris is the Chair of the LPO Central Committee. Both Knedler and Harris are registered voters and intend to vote for LPO candidates in the May 2014 primary election. Charlie Earl seeks to run as the LPO candidate for Governor of Ohio in the 2014 primary and general elections.

Defendant Jon Husted is the Ohio Secretary of State. As Secretary, he is also Ohio's chief elections officer under Ohio Revised Code § 3501.04 and therefore is charged with the duty to enforce Ohio's election laws, including the disclosure requirements of Ohio Revised Code § 3501.38(E)(1). Plaintiffs sue Secretary Husted in his official capacity only.

Intervener Gregory Felsoci's role in this case merits a more detailed explanation. Felsoci resides in Akron, Ohio and works as a carpenter. He considers himself a member of the LPO. Felsoci filed one of the successful

protests with Secretary Husted that resulted in the removal of Plaintiff Earl and other LPO candidates from the Ohio May 2014 primary ballot.

Felsoci testified at the evidentiary hearing before this Court on March 13, 2014. His testimony demonstrates that he lacks even a basic understanding of the nature of the protest he agreed to sign. For example, the guileless dupe Felsoci repeatedly referred to the misdeed that motivated him to protest Plaintiffs' petitions as the LPO's gathering of "*votes*" without disclosing those who gathered them were being paid to do so. His decision to act as a protester came about after a Republican friend, John Musca, showed him an unidentified document which Musca claimed to have found at a local coffee shop. Felsoci could not as much as accurately describe the nature of the document Musca showed him and was at an utter loss to explain why he believed the truth of the assertions the document contained. He said he believed it because he read it.

Felsoci's Republican friend Musca then asked Felsoci whether he would be willing to stand by his apparently strong conviction that wrongdoing had occurred and agree to be contacted by someone to discuss pursuing the matter further. Soon thereafter, the Zeiger, Tigges & Little law firm contacted Felsoci, and the protest process at issue was afoot. Felsoci is not paying for the representation of the Zeiger law firm and does not know who is paying for it.

To state the obvious, Felsoci's testimony, as well as other evidence in the record, supports an inference that operatives or supporters of the Ohio

Republican Party orchestrated the protest that Felsoci signed. That inference, while serving as color commentary. Instead, the Court is called upon to determine the constitutionality of Ohio Revised Code § 3901.38(E)(1) on its face and as applied. Nonetheless, it seems fair to acknowledge the inference, especially in light of the fact that Felsoci's attorneys elicited evidence demonstrating that the Ohio Democratic Party, or its operatives or supporters, provided assistance to Plaintiffs in their efforts to gather petition signatures to qualify for the Ohio May 2014 primary ballot.

## B. Ohio Revised Code § 3501.38(E)(1)

The statute at issue states as follows:

On each petition paper, the circulator shall indicate the number of signatures contained on it, and shall sign a statement made under penalty of election falsification that the circulator witnessed the affixing of every signature, that all signers were to the best of the circulator's knowledge and belief qualified to sign, and that every signature is to the best of the circulator's knowledge and belief the signature of the person whose signature it purports to be or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code. On the circulator's statement for a declaration of candidacy or nominating petition for a person seeking to become a statewide candidate or for a statewide initiative or a statewide referendum petition, the circulator shall identify the circulator's name, the address of the circulator's permanent residence, *and the name and address of the person employing the circulator to circulate the petition, if any*.

Ohio Rev. Code § 3501.38(E)(1) (emphasis added). As a practical matter, the statute requires paid circulators of candidate petitions to provide the name and address of the person or entity who paid them in the "employer information box"

that appears on the bottom of each part petition form. The circulator does not fill out the employer information box until after all of the signatures are obtained, and hence, the people whose signatures the circulator solicits never see the payor information. Rather, that information is provided to the Ohio Secretary of State when the petition is filed.

The Ohio General Assembly enacted this statute, in part, in response to fraud committed by petition circulators who were hired to gather signatures for Green Party candidate Ralph Nader when he sought to appear as a candidate for President of the United States in the November 2004 Ohio general election. The Court will not recount those circumstances of fraud in detail as they are discussed at length in at least three decisions: *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008); *Blankenship v. Blackwell*, 341 F. Supp. 2d 911 (S.D. Ohio 2004); *In re Protest of Evans*, No. 06AP-544–48, 2006 WL 2590613 (Ohio App. 10th Dist. Sept. 11, 2006). In a nutshell, the petition circulators that Ralph Nader hired gathered 14,473 signatures for his candidate petition. The local boards of elections found only 6,464 of those to be valid. After conducting a thorough hearing on the protest, then Ohio Secretary of State Kenneth Blackwell invalidated 2,756 of the those 6,464 signatures. *See Nader*, 545 F.3d at 462–67. Although signatures were invalidated for a variety of reasons, 1,956 were disqualified on this basis of actual fraud. *See id*.

Felsoci and Secretary Husted adduced additional evidence of more recent

fraud by paid petition circulators at the evidentiary hearing the Court conducted in this matter. The Court discusses that evidence in detail below in its analysis of Plaintiffs' facial challenge to the statute.

## C. Plaintiff's Petitions and Intervener's Protest

In November 2013, Oscar Hatchet contacted Robert Bridges, who serves as the LPO's Political Director and Vice Chair of the LPO's Executive Committee. Hatchet offered the LPO his services as a professional circulator under the name Easy Access Petitions ("Easy Access"). Bridges hired Easy Access to collect signatures for LPO Candidates for Governor and Lieutenant Governor (Plaintiff Earl and Sherry L. Clark, respectively) and Ohio Attorney General (Steven R. Linnabary). In the role of petition circulator, Hatchet acted as an independent contractor and was not an employee of the LPO.

Hatchet collected 636 signatures for Earl and Clark and 743 for Linnabary. The LPO paid Easy Access $1,785 for the signatures Hatchet obtained for Earl and Clark and about $500 for the signatures Hatchet obtained for Linnabary. Hatchet shipped the petitions to Bridges with the employer information blocks left blank. At the protest hearing, Hatchet averred he did so after he had a conversation with Bridges about the need to complete the employer information blocks, during which Hatchet asked Bridges whether he wanted that portion of the part petitions filled out. Protest Hr'g Tr. 94–97, ECF No. 63-1. At the hearing in the instant case, Bridges indicated he did not give Hatchet any instructions as to

whether to fill out the employee information box, although Bridges believed it was not necessary to do so because Hatchet was an independent contractor.

The LPO also paid another circulator, Sara Hart, to obtain signatures for its candidates' petitions. It is unclear whether Hart worked for Easy Access, but in the protest proceeding before Secretary Husted, the parties stipulated that the LPO compensated her in some manner for acquiring signatures. Hart also left the employee information box blank on the part petitions she submitted to the LPO.

Earl and Clark filed their nominating petition to appear as the LPO candidates for Governor and Lieutenant Governor with Secretary Husted on February 4, 2013. The petition consisted of 191 part petitions with 1,478 signatures. The part petitions were then transmitted to local boards of elections to verify the validity of the signatures. The local boards determined that 830 of the signatures were valid. Because the number of signatures exceeded the 500 required by Ohio election law, Secretary Husted certified Earl, Clark, and Linnabary as LPO candidates for the May 2014 Ohio primary election.

Felsoci and two other individuals then filed protests with Secretary Husted on February 21, 2014. The protesters argued that the LPO candidates failed to comply with the employer disclosure requirement of Ohio Revised Code § 3501.38(E)(1). They also asserted the circulators were not members of the

LPO as required by Ohio revised Code § 3513.05.

Secretary Husted referred the protests to Professor Bradley A. Smith to conduct a hearing and issue a report and recommendation as to disposition of the protests. Professor Smith conducted the hearing on March 4, 2014 and issued his report and recommendation on March 7, 2014. *See* Report and Recommendation, ECF No. 57-3.

Professor Smith found that the signatures Hatchet and Hart gathered violated Ohio Revised Code § 3501.38(E)(1) because they failed to provide the name and address of the person or entity who paid them in the employer information box on the part petitions. *Id.*, PAGEID # 1100. Professor Smith therefore recommended that the part petitions containing those signatures be ruled invalid. *Id.* He rejected the protesters' contention that the circulators were not members of the LPO for the purpose of gathering signatures. *Id.*, PAGEID # 1095.

Secretary Husted adopted Professor Smith's report and recommendation the same day. ECF No. 57-4. As a result of the invalidation of the signatures gathered by Hatchet and Hart, the LPO candidates no longer had the requisite 500 valid signatures to appear on the May 2014 Ohio primary ballot. Having failed to qualify for the primary ballot, Earl, Clark, and Linnabary cannot appear on the ballot for the November 2014 Ohio general election.

Plaintiffs filed their third motion for a preliminary injunction the same day.

Mot. Prelim. Inj., ECF No. 57.

## D. Procedural History

From the outset, this case has entailed Plaintiffs' efforts to appear on

Ohio's May 2014 primary ballot and, having done so, the Ohio ballot for the

November 2014 general election. Plaintiffs' claims involve Ohio's requirements

for submitting petitions containing signatures of Ohio voters as a condition to

appearing on the ballot. Thus far, Plaintiffs have successfully overcome two

significant hurdles placed in their paths. First, Plaintiffs successfully moved for a

preliminary injunction asking the Court to enjoin enforcement of Ohio's prohibition

against using petition circulators who reside in states other than Ohio. Mot.

Prelim. Inj., ECF No. 3; Prelim. Inj., ECF No. 18. Second, Plaintiffs sought and

obtained another preliminary injunction enjoining retroactive application of S.B.

193, which stripped Plaintiffs of the opportunity to appear on Ohio's May 2014

primary ballot. Second Mot. Prelim. Inj., ECF No. 17; Prelim. Inj., ECF. No. 47.

Plaintiffs filed their amended complaint and third motion for preliminary

injunction on March 7, 2014. Am. Compl., ECF No. 56; Third Mot. Prelim. Inj.,

ECF No. 57. Felsoci moved to intervene on March 10, 2014. Mot. Intervene,

ECF No. 58.

The Court conducted the informal preliminary conference on Plaintiffs' third

motion for a preliminary injunction on March 11, 2014 pursuant to Southern

District of Ohio Civil Rule 65.1(a). Counsel for all parties were present and

participated in the conference. As a result of the conference, the Court scheduled the matter for an evidentiary hearing to take place on March 13, 2014. Also on March 11, 2014, Felsoci and Secretary Husted filed their memoranda in opposition to Plaintiffs' third motion for a preliminary injunction. Mem. Op., ECF Nos. 58, 60.

At the March 13, 2014 evidentiary hearing, the Court heard the testimony of live witnesses, subject to cross examination. The Court heard additional testimony on March 14 and 17, 2014. The parties filed closing briefs on March 18, 2014.

## II. STANDARD OF REVIEW

The Court considers and balances four factors when considering a motion for a preliminary injunction: "'(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'" *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 627 (6th Cir. 2013) (quoting *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004)). The factors are not prerequisites to injunctive relief; rather, the Court must balance them to determine whether they weigh in favor of granting an injunction. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). The moving party bears the burden of justifying the

issuance of an injunction, including showing likelihood of success and irreparable harm. *Id*.

## III. DISCUSSION

### A. Likelihood of Success

Plaintiffs advance three grounds for their third motion for preliminary injunction. First, they assert Ohio Revised Code § 3501.39(E)(1) is unconstitutional on its face. Second, Plaintiffs maintain the same statutory provision is unconstitutional as applied to them. Third, Plaintiffs argue Secretary Husted changed relevant Ohio law and those changes cannot be applied to Plaintiffs retroactively. The Court will address these arguments *seriatim*.

#### 1. Facial Challenge to Ohio Revised Code § 3501.38(E)(1)

Plaintiffs assert that the employer identification requirement of Ohio Revised Code § 3501.38(E)(1) is unconstitutional on its face because it impermissibly burdens their First Amendment right to engage in political speech. They contend the statute cannot survive the exacting scrutiny standard as that standard is applied to such disclosure requirements. That is, Plaintiffs argue the employer identification requirement in the Ohio statute chills political speech and is not substantially related to a significant state interest. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 366–67 (2010). Secretary Husted and Felsoci contend that Plaintiffs' facial challenge fails because the employer identification requirement places only a minimal burden on Plaintiffs' First

Amendment rights, and the requirement serves Ohio's significant interest in

detecting and deterring fraud in the signature gathering process.

The Sixth Circuit Court of Appeals recently explained the difference

between facial and as applied challenges:

> A facial challenge to a law's constitutionality is an effort "to invalidate the law in each of its applications, to take the law off the books completely." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc); *see also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ("a 'facial' challenge . . . means a claim that the law is 'invalid in toto—and therefore incapable of any valid application.'" (quoting *Steffel v. Thompson*, 415 U.S. 452, 474, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974))). In contrast to an as-applied challenge, which argues that a law is unconstitutional as enforced against the plaintiffs before the court, a facial challenge "is not an attempt to invalidate the law in a discrete setting but an effort 'to leave nothing standing[.]'" *Connection Distrib. Co.*, 557 F.3d at 335 (en banc) (quoting *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) (en banc)). Sustaining a facial attack to the constitutionality of a state law, as the district court did, is momentous and consequential. It is an "exceptional remedy." *Carey v. Wolnitzek*, 614 F.3d 189, 201 (6th Cir. 2010).

*Speet v. Schuette*, 726 F.3d 867, 871–72 (6th Cir. 2013). "'Facial challenges are

disfavored.'" *Citizens United*, 588 U.S. at 398 (quoting *Wa. State Grange v. Wa.

State Republican Party*, 552 U.S. 442, 450 (2008)).


In support of their contention that Ohio Revised Code § 3501.38(E)(1) is

unconstitutional on its face, Plaintiffs rely primarily on three decisions: *Buckley v.

Am. Constitutional Law Found.*, 525 U.S. 182 (1999); *Citizens in Charge v.

Brunner*, 689 F. Supp.2d 992 (S.D. Ohio 2010) (Sargus, J.); and *(WIN) Wa.*

*Initiatives Now v. Rippie*, 213 F.3d 1132 (9th Cir. 2000).

Plaintiffs assert two rulings in *Buckley* suggest § 3501.38(E)(1) fails exacting scrutiny. First, *Buckley* struck down a provision of a Colorado statute that required petition circulators to wear badges with their names prominently displayed. 525 U.S. at 198. Second, the Supreme Court invalidated a Colorado law that required ballot initiative proponents to submit "detailed monthly disclosures" of the names and addresses of each paid circulator and the amount paid to them. *Id.*

Next, Plaintiffs note that in *Citizens in Charge*, this Court relied on *Buckley* to invalidate an Ohio law that required ballot committees to report the names and addresses of paid circulators, and the amounts paid to them, ruling the law failed exacting scrutiny. *Citizens in Charge*, 689 F. Supp. 2d at 993. The Court observed that past petition fraud in Ohio did not serve as a valid basis to distinguish *Buckley*. *Id.* In addition, the Court concluded that Ohio's interest in deterring election fraud was sufficiently served by a separate requirement that all circulators—paid and unpaid—disclose their names and addresses. *Id.*

Plaintiffs also rely on the Ninth Circuit's decision in *WIN*. In that case, the court struck down a Washington law that required the disclosure of persons who collect signatures for initiative petitions and the amounts paid to them. *Win*, 213 F.3d at 1134. The court opined: "We conclude these requirements chill political

speech protected by the First Amendment, and do not advance any substantial state interest." *Id*.

Secretary Husted and Felsoci maintain that none of the three decisions support Plaintiffs' facial attack. First, they note that all of the cases upon which Plaintiffs rely entail disclosure requirements for circulators of *initiative* petitions as opposed to *candidate* petition circulators which are at issue in the present case. They correctly point out that these decisions expressly acknowledged the significance of that distinction.

The Court in *Citizens in Charge* explained: "In *Buckley*, the Supreme Court emphasized the difference between payments made on behalf of a candidate compared to those made in support of a referendum. The Court noted that 'ballot initiatives do not involve the risk of 'quid pro quo' corruption present when money is paid to, or for, candidates.'" *Citizens in Charge*, 689 F. Supp 2d at 993–94 (quoting *Buckley*, 525 U.S. at 203). The court in *WIN* made the same observation, quoting the same language from *Buckley*. *WIN*, 213 F.3d at 1139.

Second, Secretary Husted and Felsoci note that the state laws at issue in *Buckley*, *Citizens in Charge*, and *WIN* all required disclosure of the *amount* of money paid to *each* circulator. In *Buckley*, the Supreme Court upheld the Tenth Circuit's decision to strike down a Colorado provision that required "detailed monthly reports" disclosing the amount of money paid to each circulator. *Buckley*, 525 U.S. at 201–03. Ohio Revised Code § 3501.38(E)(1) contains no

such requirement. At the same time, *Buckley* recognized that the state had a substantial interest in requiring disclosure of the identities of those who paid circulators and the total amounts they spent to obtain signatures. *Id.* at 202, 205. Moreover, the Court approved of the provision of the Colorado statute that, like the Ohio statute at issue, required disclosure of the identities of *all* circulators. *Id.* at 198–99.

Similarly, the Ohio statute at issue in *Citizens in Charge* required disclosure of the *amount* paid to each circulator. In distinguishing the Supreme Court's decision in *Citizens United*, the Court in *Citizens in Charge* acknowledged a state may legitimately require disclosure of the *sources* of money spent to support *candidates*. *Citizens in Charge*, 689 F. Supp. 2d at 993.

The Washington statute examined in *WIN* required disclosure of the identities of *only* paid petition circulators as well as amounts each of them were paid. In striking down the law, the court in *WIN* observed the law targeted paid circulators for special enforcement but did not require the same disclosure of the identities of volunteer circulators. *Id.* at 1139. In contrast to the law at issue in *WIN*, Ohio Revised Code § 3501.39(E)(1) treats paid and volunteer circulators in precisely the same manner: both must disclose their identities.

Ohio Revised Code § 3501.38(E)(1) does not offend any of the constitutional principles set forth in *Buckley*, *Citizens in Charge*, or *WIN*. To the contrary, those decisions all recognize that a state may legitimately require

disclosure of the identities of candidate petition circulators provided paid circulators are not singled out for such disclosure. In addition, all three decisions acknowledge the states' substantial interest in requiring disclosure of the identity of those who pay petition circulators. Here, the challenged statute goes no farther than requiring those two items of information after the signatures have been gathered and before the part petitions are submitted to the Secretary of State.

The Court also considers the evidence and testimony submitted during the evidentiary hearing in this matter as it bears on the degree of the burden Ohio Revised Code § 3501.38(E)(1) places on candidates' and petition circulators' speech, as well as Ohio's interest in requiring disclosure. Secretary Husted and Felsoci adduced testimony at the hearing to support their contentions that the disclosure of the identities of those who pay circulators does not chill political speech and serves the important state interest of deterring and detecting fraud. The evidence they presented also shows that instances of fraud by paid circulators have been significant and continue to occur.

The Court heard the testimony of Matthew Damshroder, Deputy Assistant Secretary of State, who has worked as the Director of Elections for Secretary Husted since 2011. He began working for Secretary Husted after serving as a Director, and later Deputy Director, for the Franklin County, Ohio Board of Elections, a position he held since 2003. Damshroder explained that the

employer information box disclosure serves in both the deterrence and detection of fraud. With regard to the former, he suggested the disclosure provides motivation to the person or entity paying the individual circulator to ensure that the circulator is properly educated and informed of the applicable law because a circulator's improper conduct might reflect negatively on the one who provided compensation. Damshroder also indicated that payor information is helpful to anyone reviewing a petition for fraud because individual circulators are sometimes difficult to locate, and payors might have more accurate contact information.

Damshroder also stated that the employer information on the part petitions provides information in a form that can be cross-checked with another required disclosure, Form 14, by which campaigns disclose expenditures for petition drives. Notably, while there is no evidence of actual fraud in this case, the cross checking made possible by the employer information box on the part petitions, coupled with the Form 14 disclosure, led to the discovery that Plaintiffs failed to comply with Ohio Revised Code § 3501.38(E)(1). Damschroder indicated that local boards of elections and the Secretary do not, on their own initiative, examine part petitions to determine whether they meet the requirements of Ohio Revised Code § 3501.38(E)(1). Rather, due to the limited resources of the Secretary of State's office, Ohio relies on protesters to uncover noncompliance.

Dana Walch also testified at the hearing. Walch served in three different

election-related positions with former Secretary of State Blackwell from January 1999 to January 2005. In September 2004, Walch became the Director of Legislative Affairs for the Secretary. In that role, he was familiar with discussions that led to the passage of Ohio Revised Code § 3501.38(E)(1). Walch confirmed that the fraud committed by Ralph Nader's paid circulators was a major part of the reason for including the payor disclosure provision in the challenged statute.

The Court also heard the testimony of Brandon Lyndagh, who is a co-owner of the public affairs firm Strategic Public Partners ("SPP"). SPP has run nine statewide issue campaigns and has coordinated efforts to collect signatures for campaign petitions in Ohio. SPP has participated in the collection of more than one million signatures.

Lynaugh described some of the cheating by paid circulators he has encountered in the course of his work at SPP. For example, he recalled a 2006 effort during which local law enforcement officers caught several paid circulators committing fraud. Lynaugh also indicated that fraud by paid circulators occurred in a 2009 voter registration effort.

In addition, Lynaugh explained that a circulator may commit fraud simply by obtaining names and addresses from a telephone book rather than spending an afternoon on a street corner gathering legitimate signatures. He stated he was aware of a paid circulator who was caught doing just that within the past year.

Lynaugh also testified that, in the industry, there is no ambiguity as to

whether a paid circulator was required to complete the employer information box on part petitions. He was not aware of any instance of a paid petition circulator refusing to provide the information and stated that the disclosure requirement did not prevent him from obtaining the circulators he needed for his petition efforts. Further, Lynaugh indicated he had never heard of harassment of the companies he hired to circulate petitions as a result of the disclosures. Similarly, no commercial petition-circulating firms ever expressed to him that the disclosure requirement impaired their ability to hire individual petition circulators.

In addition, Lynaugh testified that in his experience, commercial petition-circulating firms are not concerned about which side of an issue they work on and opined the ability to obtain signatures for a variety of issues is an indication of talent. He gave an example. Specifically, during one petition drive, one half of SPP worked for one candidate and the other half worked for his opponent. Lynaugh also expressed that transparency as to who is paying for petition circulation is advantageous because both the press and public expect it in this day and age.

Lynaugh also has experience with volunteer petition circulators. He stated that he has never encountered a single instance of a volunteer circulator committing fraud. Lynaugh described the difference in the degree of risk of a paid circulator committing fraud compared to a volunteer circulator doing the same as "night and day."

The Court will now make factual findings based on the evidence before it and determine the significance of the evidence to Plaintiffs' facial challenge to Ohio Revised Code § 3501.38(E)(1). The record supports Secretary Husted's assertion that Ohio Revised Code § 3501.38(E)(1) was passed in response to significant fraud on the part of paid candidate circulators. In the 2004 protest of Ralph Nader's campaign petition, paid circulators gathered more than 14,000 signatures. The local boards of elections found only 6,464 of those to be valid. Former Ohio Secretary of State Kenneth Blackwell invalidated 2,756 of the those signatures. *See Nader*, 545 F.3d at 462–67. A total of 1,956 were disqualified on the basis of actual fraud.

The testimony of Brandon Lynaugh tends to show that the problem of fraud by paid circulators continues to exist, and he was specifically aware of an incident that occurred within the past year in which a paid circulator was caught copying names and addresses from a telephone book. Lynaugh further stated that, in his experience, the rate of fraud by paid circulators exceeds that of volunteer circulators.

Lynaugh's testimony also tends to dispel Plaintiffs' assertion that Ohio Revised Code § 3501.38(E)(1) chills political speech. He was unaware of any instances of the disclosure requirement resulting in harassment or otherwise acting to chill or burden paid petition circulators or those who pay them. Indeed, Lynaugh opined that in today's political climate, disclosure and transparency are

valued over anonymity.

Although Lynaugh's testimony is anecdotal, he is part owner of a public relations firm that has gathered more than one million signatures in Ohio, and he has worked with both paid and volunteer circulators in the course of his career. The Court finds that Lynaugh's testimony was credible, and, given the depth and breadth of his experience, deserves some weight.

The testimony of Walch confirms that, in large measure, Ohio Revised Code § 3501.38(E)(1) was enacted in response to the actual fraud committed in 2004 by Ralph Nader's paid circulators. Matthew Damshroder's testimony explains the role the statute plays in deterring and detecting fraud.

Based on the evidence presented at the hearing in this matter, as well as other evidence submitted in this case, the Court finds by a preponderance of the evidence that the disclosure requirements of Ohio Revised Code § 3501.38(E)(1) do not significantly chill political speech. Furthermore, the Court finds by a preponderance of the evidence that the challenged statute is substantially related to Ohio's significant interest in deterring and preventing fraud in the candidate petition process.

In sum, applicable law permits states to require disclosure of identities of candidate petition circulators (provided paid circulators are not singled out for such disclosure) as well as the identities of those who pay them. Moreover, the evidence adduced at the evidentiary hearing shows that the disclosure

requirements at issue do not significantly burden political speech, and the requirements are substantially related to a significant state interest. In the alternative, even if Ohio Revised Code § 3501.38(E)(1) is not substantially related to a significant state interest, the Court would still reject Plaintiffs' facial challenge because the statute's disclosure requirements only minimally burden political speech and the state's interest is sufficient to warrant that slight burden. Accordingly, the Court holds that Plaintiffs have failed to demonstrate that they are likely to succeed on the merits of their claim that Ohio Revised Code § 3501.38(E)(1) is unconstitutional on its face.

### 2. As-Applied Challenge to Ohio Revised Code § 3501.38(E)(1)

Plaintiffs contend that even if Ohio Revised Code § 3501.38(E)(1) is not unconstitutional on its face, the provision is nevertheless unconstitutional as applied to them because it placed a significant burden on the exercise of their First Amendment right to engage in political speech. Secretary Husted and Felsoci maintain that Plaintiffs' as-applied challenge fails because the evidence in the record shows that the disclosure requirement at issue had no chilling effect on Plaintiffs' political speech.

Secretary Husted and Felsoci are correct. The record contains no evidence to support Plaintiffs' contention that the payor disclosure requirement chilled their First Amendment freedoms. Rather, the evidence before the Court demonstrates that the disclosure requirement at issue did not burden Plaintiffs'

political speech in any meaningful way.

Notably, at the protest hearing, the circulator LPO hired, Oscar Hatchet, expressed no reservations about completing the employee information box. Regardless of whether he ever discussed the matter with Bridges, Hatchet indicated he was willing to provide the information because he "wanted [his] signatures to count." *Id*. at 97. The disclosure requirement apparently had no chilling effect on Hatchet.

Plaintiffs also offer the testimony of LPO officer Kevin Knedler and LPO gubernatorial candidate Charles Earl, both of whom suggest that Ohio Revised Code § 3501.38(E)(1) severely burdens their First Amendment rights because application of the statute resulted in the disqualification of LPO candidates from the May 2014 primary ballot. Plaintiffs' argument misses the mark. The relevant inquiry is whether *compliance* with the disclosure requirement of Ohio Revised Code § 3501.38(E)(1) severely burdens rights secured by the First Amendment. In other words, the *disclosure requirement* itself did not curtail Plaintiffs' rights; rather, the harm they suffered occurred because Plaintiffs *violated* the statute even though it would have been relatively simple to comply with it. In that regard, Plaintiffs do not articulate how requiring the petition circulators they hired to disclose their identities and the identities of those who paid them burdened Plaintiffs' First Amendment right to engage in political speech.

Aside from that, Plaintiffs rely on colorful hypothetical scenarios to

demonstrate a chilling effect, such as a devout Catholic who wants to fund petition circulation in support of same sex marriage, or a son paid by his father to circulate a petition for his political party's candidate, thereby risking the ire of his mother, who is a member of a different party. Their efforts fall short, as the facts of Plaintiffs' hypothetical questions shed no light on the impact of Ohio Revised Code § 3501.38(E)(1) on Plaintiffs or the circulators they hired.

Evidence of harassment of petition circulators is also absent. The only example Plaintiffs provide is the conduct of Felsoci's counsel toward adverse witnesses at the protest hearing. That example does not suffice.

For the above reasons, the Court holds that Plaintiffs have failed to demonstrate a likelihood of success on their as-applied challenge to Ohio Revised Code § 3501.38(E)(1).

### 3. Retroactive Change in Ohio Law

Lastly, in their third motion for a preliminary injunction, Plaintiffs argue the Court should grant relief because Secretary Husted impermissibly changed Ohio law and applied that change retroactively, suggesting he "moved the goal post" because previously independent contractors were not required to fill in the employer information box on part petitions. Secretary Husted and Felsoci maintain that prior to the events giving rise to this case, Ohio law was, and remains, that all paid circulators must complete the employer box on part petitions. They also assert that Ohio law requires the Ohio Secretary of State to

invalidate any petition or part petition that fails to comply with the mandatory provisions of the Ohio Revised Code. Plaintiffs fail to respond to these arguments or discuss their retroactive application theory in their reply memorandum. The Court therefore deems Plaintiffs to have abandoned their third ground for injunctive relief.

In any event, Plaintiffs' third ground lacks merit. Ohio law has never contained such an exception for independent contractors, and prior to the events that gave rise to this matter, Ohio courts and Secretary Husted indicated paid circulators were required to fill in the employer information box on part petitions with the name and address of the payor regardless of whether the circulator was an employee or independent contractor. *See Rothenberg v. Husted*, 129 Ohio St. 3d 447 (2011) (accepting as reasonable Secretary Husted's assertion that Ohio Revised Code § 3501.38(E)(1) requires paid circulators to disclose the payor in the employer information box); *In re Protest of Evans*, No. 06AP-544–48, 2006 WL 2590613 (Ohio App. 10th Dist. Sept. 11, 2006) (finding Ohio Revised Code § 3501.38(E)(1) requires the circulator to disclose the identity of the entity that directly paid the circulator, and finding the employer/independent contractor distinction irrelevant).

The notion that independent contractors are exempt from the disclosure requirement appears to be little more than urban legend based on a misreading of *Rothenberg*. Further, the earlier Directives of the Ohio Secretary of State to

which Plaintiffs refer have no bearing on the issue. Those Directives constitute instructions to the local boards of elections and do not purport to be the law of Ohio as it pertains to protest proceedings before the Secretary of State. Moreover, both Directives expired long before the events giving rise to this case took place.

To reiterate, Plaintiffs waived their retroactive application argument, and the argument lacks merit. For these reasons, the Court holds that Plaintiffs are not likely to succeed on their assertion that Secretary Husted improperly applied a novel interpretation of Ohio Revised Code § 3501.38(E)(1) to them retroactively.

In sum, Plaintiffs have failed to show they are likely to succeed on the merits of any of the grounds they advance in their third motion for a preliminary injunction.

## B. Irreparable Harm

Plaintiffs assert that this case implicates their First Amendment rights, and violation of those rights constitutes irreparable harm.

It is well established that even a temporary violation of First Amendment rights constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Here, however, no violation of the First Amendment has occurred. And while Plaintiffs will suffer the harm of being excluded from the Ohio May 2014 primary ballot, as well as the November 2014 general ballot, that harm was self-inflicted.

Consequently, the Court finds Plaintiffs will not suffer the requisite irreparable harm in the absence of a preliminary injunction.

## C. Harm to Others

Plaintiffs argue an injunction would not harm others. Secretary Husted argues Ohio's interests will suffer if the Court takes away the Ohio General Assembly's prerogative to deter and detect fraud in the candidate petition process through the challenged disclosure requirements. The Court does not intrude upon the Ohio legislature's prerogative lightly and finds that this factor weighs against granting an injunction.

## D. Public Interest

The Court finds that in this instance, the public interest is best served by allowing Ohio to acquire the identities of petition circulators and those who pay them in order to detect and deter fraud in the election process.

## E. Balancing the Factors

All of the factors weigh against granting injunctive relief. Accordingly, the Court declines to issue a preliminary injunction.

## IV. DISPOSITION

Based on the above, the Court **DENIES** Plaintiffs' third motion for a preliminary injunction. ECF No. 57.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**