UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LIBERTARIAN PARTY OF OHIO, et al., | : | Case No. 2:13-cv-00953 |
| Plaintiffs, | : | Judge Watson |
| -vs- | : | Magistrate Judge Kemp |
| JON HUSTED, in his Official Capacity as Ohio Secretary of State, | : | |
| Defendant, | : | |
| -and- | : | |
| STATE OF OHIO, et al., | : | |
| Intervenor-Defendants. | : | |

**MEMORANDUM OF INTERVENING DEFENDANT GREGORY FELSOCI
IN OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

**I.     Introduction**

Plaintiffs served five document requests on Intervening Defendant Felsoci. With respect to Requests Nos. 3, 4 and 5, Felsoci answered that he does not believe he has any responsive documents. [Doc. No. 130-2 at pgs. 2-3] That leaves Requests Nos. 1 and 2, but Judge Watson has already ruled that this information is not relevant to the pending operative complaint, the Second Amended Complaint.

Requests Nos. 1 and 2 seek discovery regarding who hired and paid Felsoci's counsel to represent him in his protest against Plaintiff Earl and the subsequent litigation. [Doc. No. 130-1 at pgs. 2-3] During the preliminary injunction hearing on March 17, 2014, Plaintiffs sought to elicit this same information when they tried to call John Zeiger as a witness, but Judge Watson ruled that it is irrelevant to the issues raised by the Second Amended Complaint; he further ruled

that Plaintiffs could revisit this discovery if their proposed Third Amended Complaint is allowed by the Court:

> MR. BROWN: I call Mr. John Zeiger.
>
> THE COURT: And what would you ask Mr. Zeiger?
>
> MR. BROWN: I'd ask Mr. Zeiger who is paying him to represent Mr. Felsoci; whether he is coordinating his activities with anyone in the Ohio Republican Party.
>
> \* \* \*
>
> MR. BROWN: And I think that Mr. Zeiger's testimony disclosure of the source of his funding could very well path back right to the Republican Party of Ohio.
>
> THE COURT: **Even if it does, how does that go to a dispositive issue here?**
>
> \* \* \*
>
> MR. BROWN: [R]elevance, Your Honor. State action. **When we proffered a Third Amended Complaint** to conform to the evidence that has come out in the last two days … and in anticipation of the evidence that will be presented this morning, the [Third] Amended Complaint includes an added party. The added party is the Ohio Republican Party.
>
> **Of course, it's not been granted, Your Honor. I understand that.** But our proof is designed to show that the Ohio Republican Party is involved.
>
> \* \* \*
>
> THE COURT: So this is what I'm thinking. **I don't think Mr. Zeiger's testimony is going to be relevant. We have discrete issues before the Court presently. I'll rule on the motion for leave to amend in due course.** But I'd like to get this issue taken care of first…. [W]e'll put off for another day whether or not Mr. Zeiger can be called to testify depending upon whether the case expands or contracts or it goes to the Court of Appeals.
>
> [3/17/14 Hrg. Tr. (Doc. No. 132) at pgs. 3, 6, 9-10 (emphasis added)]

2

Nothing has changed since March 17. The Court has not yet ruled on Plaintiffs' motion to amend the complaint, so the Second Amended Complaint remains the operative pleading in this case. And, as Judge Watson already ruled (and as Plaintiffs' counsel implicitly if not explicitly admitted), the information sought by these discovery requests may be relevant to the proposed Third Amended Complaint, but not to the operative Second Amended Complaint.

## II. Plaintiffs' Inaccurate Statement Regarding The Date Of Felsoci's Response To Plaintiffs' Document Request

Plaintiffs' motion to compel production of documents from Felsoci states:

> "Felsoci responded [to Plaintiffs' document request] by United States postal service **on July 3, 2014**, three days after production was due…."

[Doc. No. 130 at pg. 1 (emphasis added)]

This statement is not accurate. Felsoci responded **on June 30**, not July 3. The certificate of service on Felsoci's response states: "I hereby certify that the foregoing document was served **this 30th day of June, 2014**…." [Doc. No. 130-2 at pg. 4 (emphasis added)] And, the cover letter for his response, reprinted below, also plainly shows the June 30 service date:

> Case: 2:13-cv-00953-MHW-TPK Doc #: 130-2 Filed: 07/08/14 Page: 1 of 7 PAGEID #: 2896
>
> **ZEIGER, TIGGES & LITTLE LLP**
> ATTORNEYS AT LAW
>
> TELEPHONE: (614) 365-9900
> FACSIMILE: (614) 365-7900
> 3500 HUNTINGTON CENTER
> 41 SOUTH HIGH STREET
> COLUMBUS, OHIO 43215
>
> WRITER'S DIRECT NUMBER:
> (614) 365-4101
>
> June 30, 2014
>
> Mark R. Brown, Esq.
> Professor of Law
> Capital University Law School
> 303 E. Broad Street
> Columbus, Ohio 43215
>
> Re: Libertarian Party of Ohio, et al., v. Jon Husted, et al.,
> U.S. District Court for the Southern District of Ohio
> Case No. 2:13-cv-00953
>
> Dear Mr. Brown:
>
> Enclosed please find Intervening Defendant Gregory A. Felsoci's Responses to Plaintiffs' Request for Production of Documents in connection with the above-referenced matter.
>
> Very truly yours,
>
> John W. Zeiger
>
> JWZ/kmm
> Enclosures
> cc: All Counsel of Record (w/enc)
> 499933_1

[Doc. No. 130-2 at pg. 1]

**III.    Felsoci's Response To Plaintiffs' Document Request Was Properly Served Pursuant to Fed. R. Civ. P. 5(b)(2)(C)**

Plaintiffs apparently believe that Felsoci was not permitted to serve his response to the document request by mail, and instead was required to serve it through the Court's ECF system.[1] Plaintiffs are wrong for three reasons.

---

[1] See, for example, Plaintiffs' complaints about the method of service used by Felsoci at page 4 of Doc. No. 130.

First, mail service is one of the six expressly authorized methods of service under Fed. R. Civ. P. 5(b)(2): "A paper is served under this rule by … (C) mailing it to the person's last known address – in which event service is complete upon mailing…." No one method trumps the others; each is an alternative, permissible method of service. *Patterson v. McCormick*, 2014 WL 2039966 at *6 (E.D.Va. 2014) ("Federal Rule of Civil Procedure 5(b) allows for several alternative methods of serving a paper").

Second, the mere fact that an attorney consents to electronic service by registering with the ECF system clearly does not abrogate the five other alternative methods of service authorized by Fed. R. Civ. P. 5(b)(2). *Patterson, supra* at *6 ("[i]mportantly, the Rule does not *require* service by electronic means when the person being served consents") (emphasis in original).To the contrary, Fed. R. Civ. P. 5(b)(3) expressly states: "If a local rule so authorizes, a party **may** use the Court's transmission facilities to make service under Rule 5(b)(2)(E)" (emphasis added). But simply because a party "may" use the ECF system does not mean that he must do so.

Third, Plaintiffs' contention that Felsoci was required to use the ECF system to serve his response to the document request is refuted by Fed. R. Civ. P. 5(d)(1), which expressly states: "[T]he following discovery requests **and responses must <u>not</u> be filed** until they are used in the proceeding or the court orders filing: … **requests for documents**…." (emphasis added). *See also Podkulski v. Doe*, 2012 WL 1587063 at *1 (D.N.H. 2012) ("[the] federal rules of procedure generally prohibit parties from filing discovery … responses without the court's leave, unless accompanied by a discovery motion"). So, Felsoci could not have filed his response on the ECF system even if he wanted to.

## IV.     Plaintiffs' Impatience

Plaintiffs' motion "certifies" that Plaintiffs "have in good faith attempted to confer with Felsoci in an effort to obtain the requested discovery without court action." [Doc. No. 130 at pg. 2] The actual facts suggest otherwise.

Plaintiffs' counsel, Mark Brown, initially contacted Felsoci's counsel regarding Felsoci's response to the document request by email on July 3 at 4:30 p.m. [Exhibit 1] By that time, all downtown offices were already closed because of "Red, White & Boom."[2] Mr. Brown's July 3 email requested a privilege log and asked: "Can you put together a log sometime next week?" [Id.]

Inasmuch as Plaintiffs' counsel asked for a response "sometime next week," there seemed to be no reason to interrupt the holiday weekend for an immediate reply. Nevertheless, on Saturday, July 5, at 12:30 p.m., Mr. Brown sent another email to Mr. Zeiger: "I am not trying to invade your weekend, but want to get this to you in time for your consideration on Monday…. [I]f we cannot quickly come to some sort of agreement about documents, Plaintiffs will have no choice but to initiate a conference with Judge Kemp early next week about compelling compliance." [Exhibit 1]

On Monday, July 7, Felsoci's counsel began preparing a response to Mr. Brown's weekend emails. While this was in process, Mr. Brown sent another email on Monday afternoon:

> Having not heard back from you, can I assume that you are not willing to discuss this further?  I am not trying to be impatient, but time is critical in this case.  We need to finish discovery in a timely fashion.

---

[2]     Also, Felsoci's counsel, John Zeiger, had already left for an extended holiday weekend with his children and grandchildren.

If I do not hear back from you **by the end of the day tomorrow**, I will assume that we have concluded our good faith conversation about this discovery dispute and proceed accordingly.

[Exhibit 1 (emphasis added)]

Although Plaintiffs' counsel said he wanted a response "by the end of the day tomorrow" – i.e., by close of business on Tuesday, July 8 – he inexplicably filed the motion to compel on Tuesday morning, July 8, at 11:00 a.m. [Doc. No. 130][3]

Such impatience is hardly indicative of a bona fide attempt to resolve this matter.

## V.   The Discovery Sought By Document Requests Nos. 1 And 2 Is Irrelevant To The Pending Operative Complaint And Cannot Lead To Discovery Of Admissible Evidence

The discovery sought by Document Requests Nos. 1 and 2 is precisely the same information that Plaintiffs attempted to elicit by calling Mr. Zeiger as a witness, but Judge Watson has already ruled that it is irrelevant to the pending operative complaint, the Second Amended Complaint. As Judge Watson stated, he will "rule on the motion for leave to amend in due course," but, until then, "we'll put off for another day" whether this information can be elicited by Plaintiffs. [3/17/14 Hrg. Tr. (Doc No. 132) at pgs. 9-10] Nothing has changed since then; Judge Watson has not yet ruled on Plaintiffs' motion to amend the complaint, so the Second Amended Complaint remains the operative pleading in this case. And, as to that pleading, the Court has already determined that this discovery is irrelevant.

Nor would this discovery lead to any evidence that would be admissible with respect to the Second Amended Complaint. As Plaintiffs' counsel admitted to Judge Watson on June 5, 2014, Counts Six and Eight of the Second Amended Complaint are "off the table," "[w]hich

---

[3]   At that point, Felsoci's counsel stopped preparing the response we were intending to send to Mr. Brown later that day. A copy of the draft response as it stood when Plaintiffs filed the motion to compel is attached as Exhibit 2.

leaves us, in summary, with Count Five, which is our Ohio constitutional challenge going forward to S.B. 193, and Count Seven, which is our First Amendment as – applied challenge to the … [statute's] application to Plaintiff Earl in this case." [Doc. No. 118 at pg. 2652-53] Plaintiffs agree that Count Five has nothing to do with Felsoci [Doc. No. 116-2 at pg. 1], so, as to him, the only pending operative claim is Count Seven of the Second Amended Complaint, which Plaintiffs themselves describe as follows:

> Prior to the Defendant-Secretary's rejection of Plaintiff Earl's candidacy … § 3501.38(E)(1)'s disclosure requirement was limited to actual employees, and even then Ohio did not require that mistakes be enforced by throwing out all valid signatures…. But now the Defendant-Secretary has decided that all paid circulators must disclose their sources, and that all mistakes require invalidation of all otherwise valid signatures collected by the mistaken circulators.
>
> [Doc. No. 57 at pg. 1053-54]

Who hired and paid Felsoci's lawyers obviously has nothing to do with this claim, nor could it lead to any evidence that would be relevant. In fact, when Judge Watson asked, "[H]ow does … [this] go to a dispositive issue here," Plaintiffs' counsel admitted that it does not have anything to do with the Second Amended Complaint, and only has relevance with respect to the proposed (but not allowed) Third Amended Complaint:

> MR. BROWN: **When we proferred a Third Amended Complaint** to conform to the evidence that has come out in the last two days … and in anticipation of the evidence that will be presented this morning, the [Third] Amended Complaint includes an added party. The added party is the Ohio Republican Party. **Of course, it's not been granted, Your Honor. I understand that.** But our proof is designed to show that the Ohio Republican Party is involved.
>
> [3/17/14 Hrg. Tr. (Doc. No. 132) at pg. 6 (emphasis added)]

8

As this Court already recognized, it would be inappropriate for Plaintiffs to take discovery solely on claims presented by their proposed but not yet allowed Third Amended Complaint. [Doc. No. 133 at pg. 2933-34] *Accord: Ray v. BlueHippo Fund LLC*, 2008 WL 4830747 at *2 (N.D. CA 2008) ("Plaintiffs will not be permitted to use or exploit this deposition simply as a ruse to obtain evidence to support their motion to amend the complaint.") By Plaintiffs' own admission, evidence regarding who hired and paid Felsoci's lawyers may relate to the proposed Third Amended Complaint. But leave to file that pleading has not been granted, so it would be premature to allow this otherwise irrelevant discovery to go forward at this juncture.

## VI. <u>Privilege, Work Product, Client Confidentiality</u>

Plaintiffs' Requests Nos. 1 and 2 plainly seek communications between Felsoci's trial counsel and their clients. Thus, in addition to the irrelevance of this information to the pending complaint, it also implicates considerations of attorney-client privilege, work-product and obligations of client confidentiality. See, e.g., Ohio Pro. Cond. R. 1.6, Official Comment 2 ("[a] fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation").

Plaintiffs contend that Felsoci must submit a privilege log in order to raise these privilege and confidentiality concerns. Plaintiffs are wrong for two reasons.

First, under Fed.R.Civ.P. 26(b)(5), a privilege log is only appropriate for documents that are "otherwise discoverable" – i.e., where the only basis for objection to the document request is privilege. *See, e.g.*, *S.E.C. v. Merkin*, 2012 WL 3203037 (S.D. Fla. 2012) ("a document is not 'otherwise discoverable' if it is irrelevant, immaterial, overbroad or never requested in the

9

document request"). As explained by one court, "if a broad discovery request includes an allegedly privileged document, and there is an objection to the scope of the request, the court should first decide whether the objection covers the document. If the court finds that the document is within the scope of the objection, and the court overrules the objection, it must then give the party an opportunity to list the document on a privilege log." *U.S. v. Philip Morris, Inc.*, 347 F.3d 951 (D.C. Cir. 2003). So too here, as explained above, the information sought by Document Requests Nos. 1 and 2 is wholly irrelevant to the pending operative complaint, the Second Amended Complaint. So there is no reason to address the issue of a privilege log unless and until the Court grants Plaintiffs' motion to amend and determines that this discovery would be relevant to the Third Amended Complaint.

Second, a privilege log is not required where the request seeks communications between **trial** counsel and their clients regarding the pending case. *McCarter v. Retirement Plan for Dist. Managers of American Family Ins. Group*, 2008 WL 3852159 (W.D. Wis. 2008) ("[a]s a starting point, I accept plaintiffs' assertion that all of their litigation counsel's files were generated in anticipation of litigation and that preparing a privilege log therefore would be pointless"); *Ryan Investment Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077 (N.D. Cal. 2009) ("counsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log"); *Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119 (3d Cir. 2009) ("[w]e underscore that a privilege log may not be required for communications with counsel that take place after the filing of a lawsuit"). Here, it is obvious from the face of Document Requests Nos. 1 and 2 that Plaintiffs are seeking discovery of communications between Felsoci's trial counsel and their

clients regarding this litigation. As in the foregoing cases, a privilege log is not required for such communications.

For all of the foregoing reasons, Intervening Defendant Felsoci respectfully requests the Court to DENY Plaintiffs' motion to compel production of documents from him.

/s/ Steven W. Tigges
John W. Zeiger (0010707)
Steven W. Tigges (0019288)
Stuart G. Parsell (0063510)
Daniel P. Mead (0083854)
ZEIGER, TIGGES & LITTLE LLP
41 South High Street, Suite 3500
Columbus, Ohio 43215
(614) 365-9900
(614) 365-7900 Facsimile
zeiger@litohio.com
tigges@litohio.com
parsell@litohio.com
mead@litohio.com

Attorneys for Intervening Defendant Gregory Felsoci

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of July, 2014, the foregoing document was filed electronically with the Clerk of Court using CM/ECF system, and notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

/s/ Steven W. Tigges
Steven W. Tigges (0019288)

500861_1