```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Libertarian Party of Ohio,
     et al.,                      :

        Plaintiffs,               :

     v.                           :     Case No. 2:13-cv-953

Jon Husted, et al.,               :     JUDGE MICHAEL H. WATSON
                                        Magistrate Judge Kemp
        Defendants.               :
```

OPINION AND ORDER

This ballot access case, brought by the Libertarian Party of Ohio and three individuals, is now before the Court to consider two separate motions to compel production of documents filed by the Plaintiffs. One is directed to Secretary of State John Husted, and the other to intervening defendant Gregory Felsoci. The Court addresses each in turn.

I.   A Brief Factual Background

As the Court of Appeals' recitation of the facts shows, the current issue before the Court relates to the invalidation of certain nomination petitions circulated on behalf of Charlie Earl, the Libertarian Party's gubernatorial hopeful, and two other Libertarian Party candidates. After local boards of election verified signatures on those petitions, intervenor Gregory Felsoci filed a protest. The protest was initially referred to Bradley Smith, a law professor who was designated as a hearing officer and who conducted a hearing on the issue of whether the protest had merit. Professor Smith issued a report on March 7, 2014, recommending that certain petitions and the signatures on them be invalidated because the "employed by" information required by Ohio Rev. Code §3501.38(E)(1) had not

been included on the petitions.  Secretary Husted adopted that report, resulting in the disqualification of the Libertarian Party candidates for governor, lieutenant governor, and attorney general.  Of those three candidates, only Charlie Earl is involved in this case.  Plaintiffs' motion for preliminary injunctive relief has been denied by this Court and affirmed on appeal.

On May 21, 2014, Plaintiffs served document requests on the Secretary of State.  Six days later, they served requests on Mr. Felsoci.  Both requests were met with objections.  However, the Secretary of State has since produced numerous documents plus a privilege log.  Mr. Felsoci produced neither documents nor a privilege log as part of his original response, but he has now served and filed a privilege log.  See Doc. 155.  All of the motions are fully briefed, including a sur-reply on the motion relating to the Secretary of State.  Plaintiffs have moved to strike it, and they are correct that leave to file should have been requested.  However, the sur-reply does add focus to the issues raised in the motion, so the Court will deny the motion to strike.  Because the issues relating to each set of documents requests differ, the Court will analyze each separately.

II.  <u>Analysis</u>

A.  <u>Documents Requested from the Secretary of State</u>

Plaintiffs served a five-part document request on the Secretary.  In their reply, they agree with the Secretary that the first two parts are no longer at issue.  That leaves parts three, four, and five.

These three document requests describe different broad categories of documents: first, communications of any kind related to the 2014 re-election campaigns of Governor Kasich, Attorney General DeWine, or Secretary of State Husted (Request No. 3); second, communications related to Ohio's "minor parties"

-2-

(Request No. 4); and third, communications concerning a host of organizations and individuals, most significantly Mr. Felsoci and his attorneys, the Ohio Republican and Democratic Parties, and the Libertarian Party and candidates associated with it (Request No. 5).  They all specify the same time frame: September 1, 2013 to the present.  See Doc. 129.

    The Secretary responded to each of these requests by suggesting that they required clarification.  However, the Secretary produced every non-privileged document in his possession relating to the protests involving both Charlie Earl and Steven Linnabary (the Libertarian Party candidate for Attorney General).  Otherwise, after having asked for but not receiving more clarity, the Secretary concluded that, in essence, these requests would require production of virtually every election-related document maintained by the Secretary of State's office from September 1, 2013 forward, which would include a huge volume of irrelevant information.  Further, the documents could not be produced for inspection in any reasonable fashion since these kinds of documents are not organized by date.

    The Court agrees with the Secretary that the requests are impermissibly overbroad.  It is not easy to find a precise definition of what makes a discovery request so broad that an answer need not be provided.  Certainly, one component of that is that the request "seeks both relevant and irrelevant information."  See Corrigan v. Methodist Hosp., 158 F.R.D. 54, 57 (E.D. Pa. 1994).  Another is that the request is so "nebulous" as to prevent a court from "craft[ing] an order to compel production of specific or identifiable documents," see Woods v. Kraft Foods, Inc., 2006 WL 2724096, *11 (E.D. Cal. Sept. 22, 2006).  And a request may be deemed overbroad "if it is couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within its scope."

-3-

<u>Audiotext Communications Network, Inc. v. US Telecom, Inc.</u>, 1995 WL 625962, *6 (D. Kan. Oct. 5, 1995).

Request 3 is clearly not limited to matters relating to the exclusion of Plaintiff Earl from the ballot due to the Felsoci protest.  It is not hard to imagine that the universe of documents having some relationship to the 2014 candidacy of Messrs. Kasich, DeWine and Husted includes many, many documents that are completely irrelevant to this case even under a broad theory of intentional misapplication of the governing statute.  Even if there were some small amount of relevant documentation covered by this request, it should not be the task of either the Secretary of State or the Court to define it, especially given the unsuccessful efforts made by the Secretary's counsel to obtain some clarification about what relevant information is being sought.

Request 4 suffers from the same defect, calling for production of any communication of any nature - again not limited to specific subjects or issues - between the Secretary of State's office and any recipient which mentions, for any reason, any of Ohio's "minor" political parties and their candidates.  The same is true of Request 5, which, although it mentions some relevant matters such as communications with Mr. Felsoci and his lawyers - which presumably have been produced, at least as they relate to his protest - also sweeps up any communications from any Secretary of State office employee to any other person which mentions the Libertarian Party, the Ohio Republican Party, and the Ohio Democratic Party from September 1, 2013 onward, without limiting such communications to a subject that has something to do with the claims made in the Second Amended Complaint.

These are the type of nebulous requests calling for the production of both relevant and irrelevant information that have led courts to declare them impermissibly overbroad.  The Court

-4-

could not begin to fashion an order which would require the Secretary to locate and produce whatever relevant documents might exist within these three broad categories. It will therefore deny the motion to compel directed to the Secretary of State.

There is one other issue raised by the parties' briefing on the motion. The Secretary has produced a privilege log. Plaintiffs ask the Court to conduct an *in camera* review of every document for which privilege is claimed. The Secretary does not object, but correctly points out that without at least some facial showing that a claim of privilege was improperly made, Courts do not routinely inspect such documents. Nor could they, given the number of discovery documents that, at any one time, have been designated as privileged on privilege logs created in cases pending before the Court. Absent some reason to believe that the Secretary's claim of privilege as to any specific document or group of documents on the privilege log is not well-founded, the Court declines the invitation to examine them all *in camera*. See, e.g., United States ex rel. Burns v. Family Practice Associates of San Diego, 162 F.R.D. 624, 627 (S.D. Cal. 1995)("Prior to an in camera review there must first be a sufficient evidentiary showing of a legitimate issue as to application of a privilege or other protection").

### B. Documents Requested from Mr. Felsoci

The documents requests served on Mr. Felsoci present some different issues. The last three document requests served on him appear to be identical to Requests 3, 4, and 5 served on Secretary Husted, but they are not at issue here because Mr. Felsoci has responded that he has no responsive documents, so the breadth of those requests is not pertinent to the motion to compel. The first two (which differ from Requests 1 and 2 served on Secretary of State Husted) are clearly not overbroad (although Mr. Felsoci interposed the boilerplate objection of "overbroad,

unduly burdensome and harassing" to each of them); rather, each is specific, calling for the production of documents which would show who retained and is paying Mr. Felsoci's attorneys.

In his opposing memorandum, Mr. Felsoci advances two arguments in support of his refusal to produce such documents. First, he asserts that they are not relevant to any claim or defense in this case and are therefore not discoverable. Second, he claims that the requests seek "communications between Felsoci's trial counsel and their clients" and that these communications are protected by "attorney-client privilege, work-product and ... client confidentiality." Memorandum of Intervening Defendant Gregory Felsoci in Opposition to Plaintiffs' Motion to Compel Production of Documents, Doc. 147, at 9. Apart from a brief citation to Ohio Rule of Professional Conduct 1.6, Mr. Felsoci does not provide any support for this argument, but spends the balance of his response explaining why he was not required to create a privilege log for these documents - mainly based on his view that if the documents in his possession are not relevant and are being withheld on those grounds, a privilege log is unnecessary. As noted above, despite this argument, he has now created such a log.

Plaintiffs argue that Mr. Felsoci's failure to provide a privilege log is a waiver of any privilege which might be asserted. However, the Advisory Committee notes to Rule 26(b)(5), part of the 1993 amendments to the Civil Rules, describe a situation where a party withholds documents on grounds of undue burden, without providing a privilege log, and is then entitled to create a privilege log if the court disagrees and orders the documents to be produced. That reasoning may apply here, although there is certainly the potential for improper gamesmanship to occur when a party unilaterally declares documents to be irrelevant and then asserts privilege if the

-6-

court disagrees.  If a party has done so without an arguable basis, a court could find a waiver.  Rather than delve more deeply into that issue, however, the Court assumes without deciding that the privilege log now provided by Mr. Felsoci is timely, and it turns to the merits of the issues raised by his response.

    The relevance objection is based primarily upon Judge Watson's comments at the preliminary injunction hearing, which are quoted at length in Mr. Felsoci's memorandum.  The Court addressed this issue in the Opinion and Order concerning Mr. Felsoci's deposition (Doc. 133), concluding that Judge Watson's comments were not made in the context of what might be relevant for discovery purposes, and that information about who was behind Mr. Felsoci's protest and litigation activity might be relevant either as admissible evidence or as a gateway to such evidence.  Judge Watson's order affirming that ruling confirms this interpretation of his remarks; as he said, "[t]he Court did not intend anything it expressed at the preliminary injunction hearing to limit discovery."  (Doc. 150, at 2).  Given how broad the standard is for discovery, and the potential relevance of this information to Plaintiffs' as-applied challenge, the Court does not find Mr. Felsoci's relevance argument to be persuasive.

    That leaves the issue of privilege.  As the Court has observed, Mr. Felsoci's memorandum raises, but does not argue, either the work product doctrine or the attorney-client privilege, although both are claimed on the privilege log.  His memorandum does refer briefly to Rule 1.6 of the Ohio Rules of Professional Conduct, but that rule, which governs the conduct of attorneys, has no application to a document request served on the client.  Mr. Felsoci himself can choose to reveal "confidential information," assuming he possesses it, without running afoul of that rule.  That leaves the privilege issues to be resolved.

Plaintiffs argued both in their motion to compel Mr. Felsoci's deposition and their motion to compel production of documents that the attorney-client privilege does not shield from discovery information about who is financing Mr. Felsoci's protest and litigation activity.  In the reply filed in support of the latter motion, they submitted a lengthy declaration from Patrick E. Longan, a law professor at Mercer University, explaining why the information is not privileged under either of two scenarios: the persons paying for Mr. Felsoci's activities are not clients of Mr. Felsoci's attorneys, or they are.  The former situation presents no great conceptual difficulty, because communications between an attorney and a non-client are not covered by the attorney-client privilege.  The latter situation, according to Professor Longan, also does not implicate the privilege because simply revealing the name of that person (whom Professor Longan refers to as the "Benefactor") would not typically reveal the substance of any attorney-client communication, but only the identity of the client, unless unusual circumstances exist which make information about the client's identity inseparable from the substance of a privileged communication.

As the Court of Appeals for the Second Circuit observed in Cotton v. United States, 306 F.2d 633, 636-37 (2d Cir. 1962), "[i]t cannot be seriously argued that this policy [i.e. the attorney-client privilege] justifies any member of the bar from refusing to testify as to all transactions he may have had with any person whom he chooses to designate a 'client.'" Rather, "the privilege extends essentially only to the substance of matters communicated to an attorney in professional confidence." Id. at 638.  The name of the attorney's client is generally not regarded as a matter communicated in confidence; "ordinarily the identity of a client does not come within the scope of the privilege."

-8-

United States v. BDO Seidman, 337 F.3d 802, 811 (7th Cir. 2003). That court recognized (consistent with Professor Longan's declaration) that there is a "narrow exception" to that rule, but it applies only "when so much of an actual confidential communication has been disclosed already that merely identifying the client will effectively disclose that communication." Id. There is no evidence in this record to support the application of that exception, and Mr. Felsoci does not argue otherwise. It is useful to note that, when Mr. Felsoci was asked at the preliminary injunction hearing about who was paying his attorneys, no objection was made. See Transcript of Proceedings of March 13, 2014, Doc. 86, at 21 l. 2. That is a strong indication that neither Mr. Felsoci nor his counsel believe that the answer to that question is privileged information.

That does not end the inquiry, however. In the discovery requests which are the subject of the motion to compel, Plaintiffs have not asked, by way of a direct question such as an interrogatory, who is paying Mr. Felsoci's lawyers. Rather, they have asked for documents containing *communications* relating to that issue. Although the information itself may be discoverable, communications about the information, if made between an attorney and the client during the course of the representation and for purposes of giving or receiving legal advice, may still be privileged. Thus, while it is true that "the attorney-client privilege does not permit the client to husband facts just because they are communicated to counsel," see Eagle-Picher Industries v. United States, 11 Ct. Cl. 452, 462 (1987), the privilege still "protects the substance of attorney-client communications ...." Oasis International Waters, Inc. v. United States, 110 Fed. Cl. 87, 99 (2013). As one of the seminal cases in this area points out, while the attorney-client privilege cannot be used to "protect disclosure of the underlying facts by

those who communicated with the attorney," it does "protect[] disclosure of communications" between the attorney and the client. Upjohn Co. v. United States, 449 U.S. 383, 395 (1981). In Upjohn, the Supreme Court quoted with approval this language from Philadelphia v. Westinghouse Electric Corp., 205 F.Supp. 830, 831 (E.D. Pa. 1962): "A fact is one thing and a communication concerning that fact is an entirely different thing.  The client cannot be compelled to answer the question, 'What did you say or write to the attorney?'"  Similarly, when the attorney's communication to the client would necessarily reveal the substance of the client's communication to the attorney, it, too, is privileged.  See Rehling v. City of Chicago, 207 F.3d 1009, 1019 (7th Cir. 2000)("statements made by the lawyer to the client will be protected in circumstances where those communications rest on confidential information obtained from the client ... or where those communications would reveal the substance of a confidential communication by the client...")(internal citations omitted).

 Consequently, even though Mr. Felsoci may not be able to claim that the fact of who is paying his attorneys is itself privileged, to the extent that the two document requests at issue call for the production of *communications* between Mr. Felsoci and his attorneys, such communications would likely have been made for the purpose of giving or receiving legal advice - perhaps including legal advice on the subject of when it is ethically appropriate to have someone else pay a client's legal fees, when that might present a conflict of interest, and what matters Mr. Felsoci might legitimately want to consider before consenting to the arrangement.

 Even this conclusion, however, does not definitively resolve the motion to compel.  The Court has reviewed the privilege log and cannot find a single document which is described as a

communication about who is paying Mr. Felsoci's legal fees. Most appear to be routine communications about the litigation itself, such as letters transmitting copies of court decisions, which would typically not be responsive to a request about documents dealing with the issue of who is paying the fees. Perhaps the first document transmitting the retention agreement would be responsive, although it predates the preliminary injunction hearing (as do the remainder of the first six documents listed), and Mr. Felsoci testified under oath at the hearing that as of that date, he did not know who was paying his attorneys. Thus, the Court infers that none of the documents listed on the privilege log are actually responsive to the requests, which might make the entire discussion about privilege simply advisory.

There is a category of documents missing from the log, however, for which a claim of privilege might be more problematic. Are there documents containing communications between Mr. Felsoci's lawyers and the person or persons actually paying the fees? No such documents appear on the privilege log. And while Mr. Felsoci may not possess any such documents, his attorneys should have them (assuming they exist). As Plaintiffs note, documents that are in the possession of an attorney are not necessarily outside the client's control for purposes of responding to a Rule 34 request. "[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand." In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995). This rule applies to documents in the hands of attorneys so long as the client has the right to ask for them and the attorney has a legal obligation to provide them. See, e.g., Chevron Corp. v. Donziger, 296 F.R.D. 168, 190 (S.D.N.Y. 2013)("'Documents in the possession of a

-11-

party's attorney may be considered to be within the control of the party,'" quoting 7 Moore's Federal Practice §34.14[2][c], at 34-80 (3d Ed. 2013)).

So at least these questions remain: (1) Do Mr. Felsoci's attorneys have documents reflecting communications with someone other than Mr. Felsoci about the fee arrangements at issue?  (2) If so, is the other party to that communication also a client of Mr. Felsoci's attorneys? (which may well be the case, since Mr. Felsoci's memorandum in opposition (Doc. 147, at 9) describes the document requests as asking for communications "between Felsoci's trial counsel and their *clients*" - but Mr. Felsoci is not a plural entity) (3) Should such documents have been listed on the privilege log if, in fact, the other party to the communications is a client of Mr. Felsoci's attorneys? and, perhaps the most difficult question, (4) If these documents exist, does Mr. Felsoci have the legal right to demand them based upon the fact that they relate to the matter on which the attorneys are representing him and to the requirement that he give informed consent to the fee arrangement in question?  There may also be a question about whether, if Mr. Felsoci has the legal right to see the documents, they nonetheless retain any privileged status they might have, and a subsidiary question about whether communications made solely for the purpose of making financial arrangements for an attorney to represent someone else are communications relating to the giving or receiving of legal advice and are therefore privileged at all even if the sender and recipient have an attorney-client relationship.

It is the Court's preference not to confront such difficult questions without adequate briefing and without knowing whether there are any documents which actually exist and are responsive to the documents requests at issue here.  Consequently, the Court will direct the parties to confer on this issue and, if

responsive documents do indeed exist which are possessed by Mr. Felsoci's attorneys and which might arguably be privileged, to brief the remaining issues so that the Court can determine whether it can and should compel Mr. Felsoci to produce them. Given that time is still of the essence in this case, the parties shall complete the meet-and-confer process by the close of business on August 4, 2014, and, if the issues are not resolved and require further briefing, shall file simultaneous briefs by the close of business on August 6, 2014.  As part of the process, counsel for Mr. Felsoci are directed to disclose whether they possess documents which are responsive to either Document Request 1 or 2, but they need not disclose at this time the identity of any other parties to the communications contained in those documents.  This disclosure will insure that any briefing on the question of whether Mr. Felsoci would have the right to demand the documents - and thus whether they are in his "control" for purposes of Rule 34 - as well as the other associated issues raised in this order, will not be an act of futility.

### III.  Conclusion and Order

For the foregoing reasons, the motion to compel concerning Secretary of State Husted (Doc. 129) is denied.  Action on the motion to compel concerning Defendant-Intervenor Gregory Felsoci (Doc. 130) is deferred pending further proceedings in accordance with this order.

### IV.  Motion for Reconsideration

Any party may, within five days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a).  The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due five days after objections are

filed and replies by the objecting party are due three days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

>/s/ Terence P. Kemp
>United States Magistrate Judge