UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LIBERTARIAN PARTY OF OHIO, et al., | : | Case No. 2:13-cv-00953 |
| | : | |
| Plaintiffs, | : | Judge Watson |
| | : | |
| -vs- | : | Magistrate Judge Kemp |
| | : | |
| JON HUSTED, in his Official Capacity as Ohio Secretary of State, | : | |
| | : | |
| Defendant, | : | |
| -and- | : | |
| | : | |
| STATE OF OHIO, et al., | : | |
| | : | |
| Intervenor-Defendants. | : | |

**BRIEF OF INTERVENING DEFENDANT GREGORY FELSOCI
RESPONDING TO MAGISTRATE JUDGE KEMP'S
JULY 31, 2014 OPINION AND ORDER**

**I.     Introduction**

>       *"It is inconceivable that [an attorney] should be compelled to produce the document belonging to another client because the adversary of one of his clients demands it."*

>       [*Poppino v. Jones Store Co.*, 1 F.R.D. 215, 219 (W.D. Mo. 1940) (emphasis added)]

The LPO Plaintiffs served a document request upon Intervening Defendant Felsoci. Rule 34 only requires production of documents in **his** possession, custody or control.

Mr. Felsoci's counsel ("ZTL") separately represents another, confidential client (the "Confidential Client") in connection with this matter who has requested and is receiving legal advice from ZTL and who has agreed to pay for Mr. Felsoci's representation in addition to the Confidential Client's own representation. The Confidential Client is not a party to this litigation

and is not before the Court.  While ZTL possesses documents from its representation of the Confidential Client that would be responsive to Requests No. 1 and 2 of Plaintiffs' Document Request if within the control of Mr. Felsoci, Mr. Felsoci does not have possession, custody or control of them and, as such, they are not discoverable.

Equally fundamental, ZTL cannot produce documents of the Confidential Client that identify the Confidential Client without violating the attorney-client privilege because responses to Requests No. 1 and 2 would reveal not only the Confidential Client's identity but also would be tantamount to revealing privileged communications and the Confidential Client's motive for seeking legal advice.  To hold otherwise would eviscerate the privilege of a client who is not subject to the jurisdiction of the Court.

## II. Background

On February 21, 2014, ZTL undertook representation of Mr. Felsoci in connection with a statutory protest challenging the certification of Charles R. Earl and Sherry L. Clark as candidates of the Libertarian Party for the offices of Governor and Lieutenant Governor of Ohio. [Zeiger Declaration, at ¶ 2 (attached as Exhibit A)]  Following receipt of Mr. Felsoci's authorization to act as his counsel, a protest was filed with the Secretary of State asserting such a challenge.  [*Id.*]  On March 7, 2014, the Ohio Secretary of State upheld Mr. Felsoci's protest and ruled Earl and Clark off the ballot.  [*Id.*]

On February 14, 2014, a week prior to undertaking representation of Mr. Felsoci, ZTL was engaged by the Confidential Client relating to the same matter.  [*Id.* at ¶¶ 3-4]  This Confidential Client had numerous privileged communications with ZTL prior to ZTL accepting representation of Mr. Felsoci in which the Confidential Client sought and received legal advice. [*Id.* at ¶ 4]  ZTL understood from initial conversations with the Confidential Client that the

2

identity of the Confidential Client, and our representation of the Confidential Client, was intended to be maintained as confidential and privileged. [*Id*. at ¶ 3] This understanding was subsequently specifically confirmed by the Confidential Client. [*Id.*] ZTL has therefore treated the identity of the Confidential Client, and the legal advice sought by that client, as confidential. [*Id.*]

The Confidential Client has agreed to pay the fees and expenses associated with ZTL's representation of Mr. Felsoci in addition to those associated with the Confidential Client's own representation. [*Id.* at ¶ 5] Mr. Felsoci therefore was advised, when he retained ZTL, that the Confidential Client is paying all fees associated with his representation and ZTL will not bill him for its legal services. [*Id.*]

ZTL's representation of Mr. Felsoci and its representation of the Confidential Client are separate representations, not a joint representation of both of them. [*Id.* at ¶ 6] ZTL separately gives legal advice to Mr. Felsoci and separately gives legal advice to the Confidential Client. [*Id.*] All communications between ZTL and Mr. Felsoci, and all communications between ZTL and the Confidential Client, have been separate. [*Id.*] Other than an interest in ensuring the integrity of Ohio's election process, the only commonality between the two representations is that the Confidential Client has agreed to pay for Mr. Felsoci's representation. [*Id.*]

Prior to Judge Watson's Order of July 24, 2014 (Doc. # 150), ZTL understood that Judge Watson had ruled that the identity of the Confidential Client was not implicated by the claims currently pending before the Court, but would only become potentially relevant if the Court granted Plaintiffs leave to amend and add new claims, which leave has not been granted. [Zeiger Decl. at ¶ 7] As such, it appeared that Judge Watson's prior ruling foreclosed discovery from Mr. Felsoci as to the identity of the Confidential Client in the absence of leave being granted to

3

add new claims. Promptly upon learning of Judge Watson's Order of July 24, 2014 to the contrary, a privilege log was prepared and filed on behalf of Mr. Felsoci three business days later (Doc. # 155). None of the documents listed on the privilege log filed on behalf of Mr. Felsoci disclose the identity of ZTL's Confidential Client. [Zeiger Decl. at ¶ 7]

Inasmuch as ZTL has two separate representations, none of the documents reflecting ZTL's communications with Mr. Felsoci have been copied or otherwise provided to the Confidential Client, and none of the documents reflecting ZTL's communications with the Confidential Client have been copied or otherwise provided to Mr. Felsoci. [*Id.* at ¶ 9] As such, none of the documents reflecting communications with the Confidential Client have been listed on the privilege log filed on behalf of Mr. Felsoci since the representations are separate and the communications themselves have been separate. [*Id.*]

Indeed, Mr. Felsoci has never requested copies of any documents reflecting communications with the Confidential Client and the Confidential Client has never requested copies of the documents reflecting communications with Mr. Felsoci. [*Id.* at ¶ 10] If either made such a request, the documents could not be disclosed without the express consent of the other inasmuch as the two representations are separate. [*Id.*] Such consent has not been requested or given. [*Id.*]

Documents reflecting communications with the Confidential Client do reflect the identity of the Confidential Client, but they relate to, and arise out of, ZTL's representation of that client. [*Id.* at ¶ 11] None has been provided to Mr. Felsoci. [*Id.*]

ZTL's Confidential Client is not a party before the Court nor has that client released ZTL from its ethical obligations of client confidentiality or its obligations under the privilege applicable to attorney-client communications. [*Id.* at ¶ 13] Consistent with the case law cited

4

below, disclosure of the identity of the Confidential Client would reveal both the client's motive for seeking legal advice and the subject of the confidential communications the client has had with ZTL. [*Id.* at ¶ 14] Plaintiffs have framed their demand to know the identity of the Confidential Client in the specific context of their Request for Production of Documents No. 1 and No. 2. [*Id.*] As such, if the identity is disclosed in response to those Requests, confidential motivations of the Confidential Client would be specifically disclosed. [*Id.*] And given the specific parameters of Requests No. 1 and No. 2, the nature of the legal advice sought and given in the context of the specifically identified protest and subsequent litigation, and some of the substance of the communications of the Confidential Client with ZTL, would be obvious. [*Id.*] As such, disclosure of the identity of the Confidential Client will reveal the motivations of the Confidential Client as well as that client's and confidential communications with ZTL. [*Id.*]

### III. Law And Argument

#### A. Communications Between ZTL And The Confidential Client Are Not Within Mr. Felsoci's Possession, Custody Or Control

ZTL's representations of Mr. Felsoci and the Confidential Client are separate representations, not a joint representation of both. [Zeiger Decl. at ¶ 6] As such, each of the communications with each of the separate clients has been conducted separately with neither client receiving copies of documents sent to the other, or having the right to copies of the documents reflecting communications with the other. [*Id.* at ¶¶ 6, 9] In particular, Mr. Felsoci has not requested, and the Confidential Client has not given consent for Mr. Felsoci to see, documents reflecting confidential communications between ZTL and the Confidential Client. [*Id.* at ¶ 10] Those communications therefore are not within Mr. Felsoci's possession, custody or control and cannot be required to be produced in response to the LPO Plaintiffs' document requests to Mr. Felsoci.

5

Similar attempts to obtain documents or information from attorneys who only possess the documents or information by virtue of their representation of separate clients who are not parties to the litigation are commonly rejected by the courts. In *Poppino v. Jones Store Co.*, 1 F.R.D. 215 (W.D. Mo. 1940), the plaintiff sued the defendant for personal injuries alleged to have been sustained in the defendant's store. Following the incident, a separate client – which was represented by the same attorney as the defendant, but was not a party to the litigation – investigated. The plaintiff thereafter sought production of the investigatory documents and photographs in the possession of the defendant's attorney as counsel for the separate client via a Rule 34 document request directed to the defendant. The court denied a motion to compel production. Since the documents were not in the attorney's possession in his capacity as the defendant's attorney but, rather, were in his possession as the separate client's attorney, they were not subject to the defendant's control and not producible:

> It is quite true that if an attorney for a party comes into possession of a document *as attorney for that party* his possession of the documents is the possession of the party. **The mere fact, however, that the attorney for a party has possession of a document does not make his possession of the document the possession of the party.**… The paper which he has in his possession may be the property of some other client. **It is inconceivable that he should be compelled to produce the document belonging to another client because the adversary of one of his clients demands it.** It appears from what was said at the oral argument, as well as from the allegations of the motion, that the documents said to be in the possession of [the attorney] are in his possession not as attorney for the defendant, but as attorney for the [separate client].
>
> … It is obvious, however, that the documents sought here are the property of the [separate client], not a party to this proceeding. If that is true, if [the attorney] represents [the separate client], if these papers are in his possession as attorney for that [client], then, **in no true sense, are they in the possession, custody or control of the defendant in the case**.

6

>
> [*Poppino*, 1 F.R.D. at 219 (italics in original; bold typeface added)]

The *Poppino* court went on and denied discovery of these documents even though they were in the possession of the defendant's attorney, even though the documents were directly related to the same facts and circumstances that gave rise to the litigation involving the defendant, and even though the separate client's interests were aligned with the defendant's interests in limiting liability to the plaintiff.[1]

The holding in *Poppino* was applied more recently in a high profile case in the Southern District of New York. In *In re Terrorist Attacks on September 11, 2001*, 293 F.R.D. 539 (S.D.N.Y. 2013), the court ruled that litigants do not have possession, custody or control over documents in possession of their attorney relating to the attorney's separate representation of other clients. The court denied a motion to compel documents in the possession of the law firm that represented the plaintiffs where the firm had received the documents in connection with its representation of other clients. It explained that "[t]he fact that attorneys for the Plaintiffs also happen to represent parties in [a separate lawsuit] **is irrelevant**, since attorneys have numerous clients and **the documents of one client do not simply come within the control of another merely because both clients have retained the services of the same lawyer or law firm**." *Id.* at 547 (quotation, citation omitted; emphasis added). In other words, "a document in an attorney's possession is within the party's possession or control **only if** the attorney comes into

---

[1] In the affidavit of Patrick Longan submitted by Plaintiffs, he concedes that a client is not entitled access to the attorney's files where, as here, it is necessary "to protect confidences of another client." Doc. # 151-1, at 5-6.

7

possession of [the] document as *attorney for that party*." *Id*. at 547 (italics and alteration in original; bold typeface added; quotation, citation omitted).[2]

Courts have applied the same principles to interrogatories demanding access to information known to a litigant's attorney through representation of another client. *Smith v. SGS North America, Inc.*, 2008 WL 4588742, at *1 (D. Vir. Il. Oct. 10, 2008) (denying motion to compel interrogatory answers: "Merely because counsel for said Defendant also represents co-Defendant does not mean that information within the control of co-Defendant is 'available' to said Defendant."); *Nissei America, Inc. v. Cincinnati Milacron, Inc.*, 95 F.R.D. 471, at 475 (N.D. Ill. 1982) ("we have not found a case in which a party has been required to compel its attorney to answer interrogatories about the affairs of other clients represented by that attorney.").

So too here. Documents in the possession of ZTL as a result of representation of another client "do not simply come within the control of [Mr. Felsoci] merely because both clients have retained the services of the same lawyer or law firm." *In re Terrorist Attacks* at 547. Since the representation, and the documents reflecting communications with respect to each, have been separate and continue to be separate, the documents in ZTL's possession as legal counsel to the Confidential Client are not within Mr. Felsoci's possession, custody or control and not discoverable pursuant to a document request directed to Mr. Felsoci.[3]

---

[2] *See also Netbula, LLC v. Chordiant Software, Inc.*, 2009 WL 3919495, at *2 (N.D. Cal. Nov. 18, 2009) ("This court rejects plaintiffs' contention that Chordiant's documents are deemed to be within Witte's control by virtue of Chordiant's and Witte's status as co-defendants.").

[3] Even if Plaintiffs' theory concerning Mr. Felsoci's access to the privileged information of the confidential client was correct (and it is not under the facts of these separate representations), Mr. Felsoci still cannot be compelled to produce privileged documents to third parties such as Plaintiffs. The Court focused on this reality, stating in its July 31 Opinion and Order that "[t]here may also be a question about whether, if Mr. Felsoci has the legal right to see the documents, they nonetheless retain any privileged status they might have." [Doc. 157, Opinion and Order, Page ID # 3171] After all, even if Plaintiffs' mistaken theory of the facts were true, Mr. Felsoci would be powerless to unilaterally waive the privilege. *See*, *e.g.*, *Anderson v. Clarksville Montgomery County School Bd. and School District*, 229 F.R.D. 546, 547 (M.D. Tenn. 2005); *Static Control Components, Inc. v. Lexmark Intern., Inc.*, 2007 WL 926985 at *7 (E.D.Ky. 2007); *see also* Paul R. Rice, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES, § 9.3 at 7 (2013-14). And, the privilege would nonetheless apply vis-à-vis third parties. *MA Equiptment*

**B.     The Documents Of The Confidential Client Should Not Have Been Identified On Mr. Felsoci's Privilege Log**

The documents of the Confidential Client should not have been listed on Mr. Felsoci's privilege log. As the authorities identified above hold, the documents in ZTL's possession as legal counsel to the Confidential Client are not within Mr. Felsoci's possession, custody or control inasmuch as the representations are separate and the communications themselves have been separate. The court in *In re Terrorist Attacks*, *supra*, specifically acknowledged as much, holding that documents in the possession of counsel stemming from representation of separate clients "should not have been included on [Plaintiffs'] privilege log." 293 F.R.D. at 547.

**C.     The Identity Of The Confidential Client Is Protected By The Attorney-Client Privilege**

The LPO Plaintiffs are not entitled to discover the identity of the Confidential Client because that client's identity is protected by the attorney-client privilege.[4]

While it is true that, in general, the identity of an attorney's client is not privileged, the Sixth Circuit recognizes that there are exceptions to the general rule. *See In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447 (6th Cir. 1983). Here, the applicable exception "arises where disclosure of the identity would be tantamount to disclosing an otherwise protected confidential communication." *Id.* at 453. Thus, "[i]f the identification of the client conveys

---

*Leasing I, LLC*, *v. Tilton*, 2012 WL 4788359 at ¶30 (Ohio App. 10th Dist. 2012); Rice at § 9.3 ("[t]he privilege will protect the communications from all third parties").

    Similarly, Plaintiffs' assertion that ZTL's billing records, including the identity of the Confidential Client, must be produced in response to their document request to Mr. Felsoci, [Doc. 151, Page ID # 3111-12], ignores the reality that even if Mr. Felsoci was entitled to these documents, they are attorney-client privileged *as to Plaintiffs*. Legal billings such as those here (*see* Zeiger Decl. at ¶ 12) that "reveal the motive of the client in seeking representation, litigation strategy or the specific nature of the services provided are privileged." *Evenflo Co., Inc. v. Hantec Agents Ltd.*, 2006 WL 2945440, at *4 (S.D. Ohio 2006). *Accord: State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, at ¶ 28 (2011) ("itemized legal bills necessarily reveal confidential information and thus fall within the [attorney-client] privilege") (citations omitted).

[4]    In the July 31, 2014 Opinion and Order, the Magistrate Judge relies heavily upon the affidavit of Patrick E. Longan that was submitted as an exhibit to the LPO Plaintiffs' *reply* brief and was not served until the LPO Plaintiffs filed their reply brief. Fed. R. Civ. 6(c)(2) expressly states any affidavit supporting a motion must be served with the motion. Therefore, the Court should not have considered the Longan affidavit.

information which ordinarily would be conceded to be part of the usual privileged communication between attorney and client, then the privilege should extend to such identification in the absence of other factors." *Id*. at 453 (quoting *Baird v. Koerner*, 279 F.2d 623, 632 (9th Cir. 1960)).

The Sixth Circuit is not alone in recognizing this exception. In *In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena*, 926 F.2d 1423 (5th Cir. 1991), the Fifth Circuit applied the exception, articulating the policies supporting maintaining confidentiality:

> Clients often consult with attorneys concerning matter that they wish to keep confidential…. For example, a client may wish to consult an attorney concerning adopting a child but not wish the matter to be made public. Such an individual normally will reveal the nature of his problem as well as his identity, and reasonably expects both to remain confidential. **If the disclosure of the client's identity will also reveal the confidential purpose for which he consulted an attorney, we protect both the confidential communication and the client's identity as privileged.**
>
> We protect the client's identity and fee arrangements in such circumstances … because they are connected inextricably with a privileged communication – the confidential purpose for which [the client] sought legal advice. The purpose of the attorney/client privilege is to encourage clients to make full disclosure to their attorneys. **An attorney could not expect a client to fully disclose the nature of his difficulties in such circumstances if the attorney may have to reveal the client's identity**….
>
> [*Id*. at 1431 (quotation, citation omitted; emphasis added)]

The Fourth Circuit had already accepted the policy considerations articulated by the Fifth Circuit in *Reyes-Requena* as early as 1965. In *NLRB v. Harvey*, 349 F.2d 900 (4th Cir. 1965), it held that the identity of an attorney's unknown client was privileged where disclosure of the

10

client's identity would reveal the purpose for which the client engaged the attorney. There, an attorney (Harvey) had been retained by an undisclosed client to investigate and gather information about a union representative. The National Labor Relations Board subpoenaed Harvey and sought the identity of Harvey's client who had engaged Harvey to conduct the investigation, but Harvey refused to identify his client. The Fourth Circuit held that the attorney-client privilege would protect disclosure of the client's identity so long as Harvey had been retained to furnish legal services:

> The privilege may be recognized when so much of the actual communication has already been disclosed that identification of the client amounts to disclosure of a confidential communication…. **Here, upon identification of the client, it will be known that the client wanted information about [the union representative]**. More than the identity of the client will be disclosed by naming the client.
>
> [*Id.* at 907 (emphasis added)[5]]

*Accord*: *Ravary v. Reed*, 415 N.W.2d 240, 244 (Mich. Ct. App. 1987) (holding that trial court erred by granting motion to compel answers to interrogatories that sought identification of unknown client: "[the] privilege clearly attached to the communication of the client's desire to obtain information about plaintiff," therefore "disclosure of the client's name … would be tantamount to disclosure of the substance of that confidential communication").

As in these cases, disclosure of the identity of the Confidential Client would be tantamount to disclosure of the substance of confidential communications between the Confidential Client and ZTL which "ordinarily would be conceded to be part of the usual privileged communication between attorney and client…." *In re Grand Jury Investigation No. 83-2-35*, *supra*. Here, the effort to compel disclosure of the identity of the Confidential Client is

---

[5] The court in *NLRB v. Harvey* remanded for further proceedings since it could not determine from the appellate record whether Harvey had been engaged to perform legal services such as furnishing a legal opinion or whether he was simply hired to gather factual information without providing any legal advice.

11

framed very specifically by Document Requests No. 1 and 2: produce documents identifying who is paying lawyers representing Mr. Felsoci to protest the right of Libertarian Party candidates to be on the ballot. As such, disclosure of the identity of the Confidential Client will inevitably disclose that client's motivation for seeking legal advice – the specific wording of Requests No. 1 and 2 inevitably result in any response disclosing not only the client's motivation for seeking legal advice but also the substance of that client's confidential communications seeking legal advice. So, just as in *Harvey*, "upon identification of the client, it will be known that the client wanted information about" the right of the Libertarian candidates' to be on the ballot. *Harvey* at 907. *See also In re Subpoenaed Grand Jury Witness*, 171 F.3d 511, 514 (7th Cir. 1999) ("[a] client's motive for seeking legal advice is undeniably a confidential communication," thus "the privilege protects an unknown client's identity where its disclosure would reveal a client's motive for seeking legal advice"). And because disclosure of the identity will likewise "reveal the confidential purpose for which [the client] consulted an attorney," this Court must "protect both the confidential information and the client's identity as privileged." *Reyes-Requena* at 1431.

The fact that the Confidential Client is the "benefactor" paying for representation of Mr. Felsoci does not impair the privilege applicable to the identity of the Confidential Client. In *In re Subpoenaed Grand Jury Witness*, 171 F.3d 511, 514 (7th Cir. 1999), the court held that the identity of a client's benefactor was privileged because disclosure "would lead to revealing that client's motive to pay the legal bills for some of [the attorney's] other clients." So, too, in *Medtronic Sofamor Danek, Inc. v. Michelson*, Case No. 01-2373, at pg. 1 (W.D. Tenn. Nov. 6, 2003),[6] the court denied a motion to compel deposition answers regarding "the identity of the

---

[6] A copy is attached as Exhibit B.

parties funding the current litigation and information related to any fee agreements." The court denied the motion to compel, concluding that "the identity of the payer of legal fees in this litigation and the fee arrangement are inextricably intertwined with privileged communications between [client] and [attorney], and, as such, are protected by the attorney-client privilege." *Id*. at pg. 9.

And, as is equally true here, the court in *In the matter of Grand Jury Proceeding (Cherny)*, 898 F.2d 565 (7th Cir. 1990), held that a benefactor's identity was privileged because "[d]isclosure of the fee payer's identity would … reveal his motive for seeking legal advice in the first place" and "would be tantamount to revealing the premise of a confidential communication: the very substantive reason that the client sought legal advice." Or, as the Fifth Circuit held in *Reyes-Requena*, the identity of the benefactor was privileged because exposure of identity and fee arrangements "will expose as obvious the confidential purpose for which [the benefactor] sought [the attorney's] legal advice."

As in these cases, disclosure of the identity of the Confidential Client will reveal that client's confidential communications reflecting not only the motives and purposes for seeking legal advice but the very substantive legal advice sought and received. Since the identification of the Confidential Client in response to Document Requests No. 1 and 2 would surely "convey information which would ordinarily be conceded to be part of the usual privileged communication between attorney and client, … the [attorney-client] privilege should extend to such identification." *Grand Jury Investigation No. 83-2-35*, *supra*.

**IV.     Conclusion**

For the foregoing reasons, the LPO Plaintiffs' motion to compel should be denied.

13

Respectfully submitted,

/s/ John W. Zeiger
John W. Zeiger (0010707)
Steven W. Tigges (0019288)
ZEIGER, TIGGES & LITTLE LLP
41 South High Street, Suite 3500
Columbus, Ohio 43215
(614) 365-9900
(614) 365-7900 Facsimile
zeiger@litohio.com
tigges@litohio.com

Attorneys for Intervening Defendant Gregory Felsoci

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of August, 2014, the foregoing document was filed electronically with the Clerk of Court using CM/ECF system, and notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

/s/ John W. Zeiger
John W. Zeiger (0010707)

504468