UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LIBERTARIAN PARTY OF OHIO, et al.**
　　　　**Plaintiffs,**

　　v.　　　　　　　　　　　　　　　　　　No. 13-953

　　　　　　　　　　　　　　　　　　　　　**JUDGE WATSON**
　　　　　　　　　　　　　　　　　　　　　**MAGISTRATE JUDGE KEMP**
**JON HUSTED,**
**in his Official Capacity as Ohio**
**Secretary of State, et al.,**

　　　　**Defendants.**
_____/

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS UNDER RULE 37 AGAINST INTERVENOR-DEFENDANT-FELSOCI

　　　This Court in *Brown v. Tellermate Holdings, Ltd.*, 2014 WL 2987051 at *1 (S.D. Ohio 2014) (Kemp, M.J.), an age discrimination in employment case, stated:

> There may have been a time in the courts of this country when building stone walls in response to discovery requests, hiding both the information sought and even the facts about its existence, was the norm (although never the proper course of action). Those days have passed. Discovery is, under the Federal Rules of Civil Procedure, intended to be a transparent process.

*Tellermate* involved whether, and how much, to sanction a defendant who

> did not produce documents in a timely fashion, made unfounded arguments about their ability and obligation to do so, caused the Browns to file discovery motions to address these issues, and, eventually, produced a key set of documents which were never subject to proper preservation.

*Id*. The Court, after fully assessing the defendant's recalcitrance, had little difficulty concluding that it <u>had</u> to be sanctioned:

> This type of behavior violated what has been referred to as "the most fundamental responsibility" of those engaged in discovery, which is "to provide honest, truthful answers in the first place **and to supplement or correct a previous disclosure when a party learns that its earlier disclosure was incomplete or incorrect**."

1

*Id*. at \*17 (emphasis added) (quoting *Lebron v. Powell*, 217 F.R.D. 72, 76, 78 (D.D.C. 2003)).

The Court observed: "Where a defendant is guilty of 'gross negligence and lack of good faith in complying with plaintiff's discovery requests and the Court's discovery order[s],' **sanctions are necessary**." *Id*. (emphasis added) (quoting *Bratka v. Anheuser-Busch, Inc*., 164 F.R.D. 448, 456 (S.D. Ohio 1995) (described more fully, *infra*, at pages 18-19).

The remaining question in *Tellermate* was simply how much punishment to mete out. Should it be default judgment, or a stipulation of facts? One or the other was required. *Tellermate*, *supra*, at \*23, embraced Judge Graham's logic in *Bratka*, where he entered default judgment against an abusive defendant:

> [i]f litigants are to have any faith in the discovery process, they must know that parties cannot fail to produce highly relevant documents within their possession with impunity. Parties cannot be permitted to jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents.

(Citation omitted).[1]

The present case is like *Tellermate* and *Bratka* in many ways. To the extent it differs, **it is worse.** Intervenor-Defendant-Felsoci ("Felsoci"), intervened in this case in order to thwart Plaintiffs' discovery efforts, whatever the cost, and prevent Plaintiff-Earl from appearing on Ohio's 2014 election ballot. He did so for partisan political reasons. It was political espionage, pure and simple. His disruption of discovery insured its success.

Through his secret co-client, Terry Casey, a Kasich appointment to Ohio's State Personnel Board of Review and a frequent personality on local television outlets, he misled local

---

[1] Although the Court in *Tellermate* did not enter a default judgment as the Court did in *Bratka*, it still severely sanctioned the defendant. The Court in *Tellermate*, moreover, has not yet granted plaintiff default judgment. *See Brown v. Tellermate Holdings*, 2015 WL 1468796 at \*7 (S.D. Ohio 2015).

2

news media into believing that this matter was one of improper collusion between Plaintiff-Libertarian Party of Ohio ("LPO") and the Democratic Party. The reality was that Democrats provided little assistance.[2] Yet Casey repeatedly played the media with comments about his "shock" to learn of "collusion" between Democrats and the LPO. *See*, *e.g.*, Jim Heath, *Husted Orders Libertarian Party Candidates Off Primary Ballot*, 10TV, March 7, 2014.[3]

Plaintiffs will not attempt to catalog the full details of Felsoci's and Casey's disruptive discovery efforts; the highlights include this Court's conclusions that their lawyers quite likely violated Ohio's Rules of Professional Conduct, *see Libertarian Party of Ohio v. Husted*, 2014 WL 3928293 at * 2 -*3 (S.D. Ohio 2014), and then purposely engaged in a pattern of "harassing and obstructive conduct" to waste Plaintiffs' time during the course of discovery. *See* Opinion and Order, Doc. No. 260 at PAGEID # 7104 (describing Felsoci's "harassing and obstructive conduct that occurred throughout discovery" and thereby denying him the defense of laches). In sum, Felsoci's efforts at avoiding discovery were of the "scorched earth" variety.

Nothing -- Rules of Professional Conduct, Rules of Civil Procedure, or common courtesy[4] -- seemed to matter. The objective was to keep secret any involvement of the Kasich Campaign and the Ohio Republican Party. Their involvement had to be kept secret at all costs.

---

[2] Further, even if Democrats had, it would not have been illegal. *See Deleeuw v. State Bd. of Canvassers*, 688 N.W.2d 847, 852 (Mich. App. 2004) ("Associating for the purpose of getting a candidate's name ... on the ballot is protected activity under the First Amendment; **conspiring for the purpose of having it removed is not.**"). (Emphasis added). Felsoci and his supporters' efforts violated several laws, including the First Amendment to the United States Constitution, in removing Plaintiff-Earl.

[3] http://www.10tv.com/content/stories/2014/03/07/columbus-husted-orders-libertarian-off-ballot.html (last visited June 12, 2015).

[4] Felsoci's lawyers not only made repeated "speaking objections" throughout the course of the depositions conducted by Plaintiffs, they also repeatedly interrupted depositions by making

Given this Court's prior findings, *see* Opinion and Order, Doc. No. 260 at PAGEID # 7104, only a brief outline of Felsoci's obstructive efforts is needed to fully assess the need for punishment in this case:

(1) Felsoci failed to appear at the preliminary injunction hearing held on March 17, 2014 after being advised by Plaintiffs that they wanted to question him. *See Libertarian Party of Ohio v. Husted*, 302 F.R.D. 472, 475 (S.D. Ohio 2014).

(2) Felsoci refused to sit for a deposition or timely respond to written interrogatories offered by Plaintiffs to cure his failure to appear at the preliminary injunction hearing. *Id.* at 474-75.

(3) When Plaintiffs attempted to depose him, he steadfastly refused, necessitating an Order from this Court. *Id.* at 479-80.

(4) Felsoci refused to produce documents identifying who was paying his lawyers, requests that were necessitated in large part because of Felsoci's expressed ignorance of who was paying them (in violation of his lawyers' obligation under Ohio's Rules of Professional Conduct). *See Libertarian Party of Ohio v. Husted*, 2014 WL 3928293 at *2 - *3 (S.D. Ohio 2014).

(5) Felsoci's failure to produce requested documents required another corrective Order from this Court. *Id.* at *9.

(6) At his deposition on August 12, 2014, Felsoci testified that he still did not know who was paying his lawyers, as he was <u>never</u> informed by the Zeiger law firm who was paying them. *See* Transcript of Testimony of Gregory Felsoci, Aug. 12, 2014, Doc. No. 174 at PAGEID # 3526-3527.

(7) Terry Casey, Felsoci's secret co-client, testified on August 28, 2014, that he did not know who would pay Felsoci's lawyers, and did not even know who he would ask to pay the bills that

---

juvenile accusations that Plaintiffs' lawyer was "making faces" at their (Felsoci's lawyers') clients.

4

he did not intend to pay by himself.  *See* Transcript of Testimony of Terry Casey, Aug. 28, 2014, Doc. No. 241-1 at PAGEID # 6233, 6237-6238.

(8) Casey claimed at his deposition on August 28, 2014 that no one in the Kasich Campaign knew about his activities in seeking to protest Earl, *see id.* at PAGEID # 6223, 6366, 6367-69, a claim that was proved false by subsequently uncovered e-mails between Casey and high-ranking officials within the Kasich Campaign.  *See* Doc. No. 240-1 (e-mails between Casey and Kasich Campaign).

(9) Plaintiffs on August 28, 2014 made another document request from Felsoci demanding documents related to billings and payments to and from his lawyers.  *See* Doc. No. 204 at PAGEID # 4259-4260.  This request was required because Casey, through counsel, refused at his deposition to agree to produce any additional invoices.

(10) On September 17, 2014, Felsoci filed a "Request for Instructions" in order to avoid disclosing the documents requested by Plaintiffs on August 28, 2014.  *See* Doc. No. 200.

(11) The Court denied this strange Request the next day. *See* Doc. No. 206.

(12) No motion for protective order was ever filed by Felsoci, and he thereafter produced additional invoices identifying Casey (but no one else) on September 25, 2014, just four days before the September 29, 2014 evidentiary hearing on Plaintiffs' motion for preliminary injunction.  *See* Doc. No. 231.

(13) After the Court denied preliminary relief on October 17, 2014, and cross-motions for summary judgment were in the process of being filed, the Ohio Republican Party on November 19, 2014 paid directly to the Zeiger law firm $100,000 to cover Casey's and Felsoci's legal fees. *See* Doc. No. 296-1 at PAGEID # 7738.

5

(14) Felsoci <u>never</u> supplemented his response to Plaintiffs' August 28, 2014 request with documents or information about the November 19, 2014 payment by the Ohio Republican Party.

(15) On December 22, 2014, December 29, 2014, and February 24, 2015, while cross-motions for summary judgment remained pending, the Ohio Republican Party made three additional payments of $100,000, $100,000, and $50,000, respectively, directly to the Zeiger law firm to relieve Felsoci's and Casey's debt. *See* Doc. No. 296-1 at PAGEID # 7738.

(16) Felsoci <u>never</u> supplemented his response to Plaintiffs' August 28, 2014 request with these documents or information about these payments.

(17) Plaintiffs learned of these payments by the Ohio Republican Party to the Zeiger law firm on Casey's behalf on May 19, 2015 through Casey's and the Kasich Campaign's defensive pleadings to alleged campaign-finance violations. *See* Doc. No. 296 at PAGEID # 7731.

(18) Notwithstanding Plaintiffs' earlier demand on March 29, 2014 that Felsoci supplement his responses, and renewed demand on May 27, 2014 that Felsoci specifically produce documents surrounding the payments made by the Ohio Republican Party, Felsoci refused. *See* Doc. No. 299-1.

(19) Plaintiffs were forced to file on June 12, 2015 their most recent Motion to Compel to obtain documents that should have been produced months ago on June 12, 2015. *See* Doc. No. 299.

(20) At the phone conference addressing Plaintiffs' June 12, 2015 Motion to Compel held before Judge Kemp on June 17, 2015, in an effort to avoid having to disclose these documents, counsel for Felsoci erroneously represented to the Court that the "majority" rule is that later-created documents are not covered by Rule 26(e). Minimal research would have established this is not true. *See*, *e.g*, STEVEN S. GENSLER, 1 FEDERAL RULES OF CIVIL PROCEDURE: RULES AND COMMENTARY 655 (2015).

Felsoci's repeated discovery abuses have required judicial corrective action on three prior occasions. Now Felsoci has refused to fulfill his obligations under Rule 26(e). Felsoci has repeatedly failed the most basic of discovery obligations -- transparency. His attorneys have failed to comply with the most basic of professional obligations -- full disclosure to one's client. All of this was designed to severely hamper and prejudice Plaintiffs' case. **It has**. "Sanctions are necessary." *Tellermate*, *supra*, at *17.

## ARGUMENT

### I. Rule 26(e) Applies to Documents Created After Initial Production.

Felsoci argued to the Court at the June 17, 2015 phone conference that the "majority" rule did not extend Rule 26(e) to later-created documents. Felsoci is wrong. So wrong, in fact, that one must question the motivation behind making such a claim. Overwhelming authority recognizes that "[t]he duty to supplement extends to documents created or acquired after the response to the document request is served." STEVEN S. GENSLER, 1 FEDERAL RULES OF CIVIL PROCEDURE: RULES AND COMMENTARY 624 (2014) (emphasis added). This obligation extends beyond the conclusion of discovery (which has not even occurred in the present case given its expedited nature and absence of discovery deadlines). *See Lujan v. Cabana Management, Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012).

Professor Gensler cites a number cases from across the country for this common-sense proposition. *See L. Tarango Trucking v. County of Contra Costa*, 202 F.R.D. 614, 618 (N.D. Cal. 2001) ("Although those documents were all created after Magistrate Larson's Order, that is no excuse for failing to produce them."); *Adams v. Teck Cominco Alaska, Inc.*, 231 F.R.D. 578, 580 (D. Alaska 2005) ("Contrary to defendant's assertion, Rule 26(e) places the burden on defendant as the disclosing party to supplement its disclosures, not on plaintiffs to request updated

7

information as it becomes available."); *Pizza Public Co. v. Tricon Global Restaurants, Inc*., 2000 WL 1457010, at *1 (S.D.N.Y. 2000) (same); *Robbins & Myers, Inc. v. J.M. Huber Corp*., 274 F.R.D. 63, 74-80 (W.D.N.Y. 2011) (same).

A cursory search reveals more. *See*, *e.g*., *Lee Valley Tools, Inc. v. Industrial Blade Co*., 288 F.R.D. 254, 260 (W.D.N.Y. 2013) ("The duty to supplement applies to responsive documents that are created after a party has served a response to a discovery request."); *Switch Communications Group v. Ballard*, 2012 WL 2342929, at *6 (D. Nev. 2012) (same); *R.F.M.A.S., Inc. v. Mimi So,* 640 F.Supp.2d 506, 510–11 (S.D.N.Y.2009) (holding that a supplementary copyright registration filed by plaintiff after relevant depositions completed was subject to supplementation duty under Rule 26(e)); *Arthur v. Atkinson Freight Lines Corp.,* 164 F.R.D. 19, 19–21 (S.D.N.Y.1995) (holding that medical records created after plaintiff's initial response were subject to continuing duty to supplement); *Llewellyn v. North American Trading,* 1997 WL 177878, at *6 (S.D.N.Y. 1997) (holding that defendant's failure to supplement document production with later-created documents violated Rule 26(e)); *see also Rodowicz v. Massachusetts Mutual Life Insurance Co.,* 279 F.3d 36, 44–45 (1st Cir. 2002) (late change in expected trial testimony by plaintiff on material issue required timely supplementation of plaintiff's prior discovery responses).

The most exhaustive discussion of the history behind and meaning of Rule 26(e) is found in *Robbins & Myers, Inc. v. J.M. Huber Corp*., 274 F.R.D. 63, 74-80 (W.D.N.Y. 2011). There the Court observed that the original version of Rule 26(e) adopted in 1970 provided that supplementation was not always necessary when prior discovery was "complete when made." *Id*. at 74. Subsequent amendments expanded Rule 26(e) to cover <u>all</u> after-acquired documents that render prior production incomplete:

> **Information thereafter acquired by a party cannot exclude documents subsequently created by a party, as by creating the document the party most certainly has thereby 'acquired' information which it reasonably should know, *i.e.,* 'learns,' has rendered its prior response materially inaccurate or incomplete.**

*Id*. at 75 (emphasis added).

The court in *Robbins* noted that two cases, *Kingsway Financial Services, Inc. v. Pricewaterhouse–Coopers LLP,* 2006 WL 1295409 (S.D.N.Y. 2006), and *Cassirer v. Fragin,* 1997 WL 465217 (Bankr. S.D.N.Y. 1997), had not required parties to supplement discovery with after-created documents. But these cases, it found, were distinguishable. *Kingsway Financial* merely stated that the meaning of Rule 26(e) was "unclear." It never attempted to resolve it. *Robbins*, 274 F.R.D. at 79. "[T]he court's actual holding in *Cassirer,*" meanwhile, was "that a defendant as the requesting party failed to show the subsequently created documents ... rendered the trustee's prior responses materially incomplete ...." *Id*.

The Court in *Switch Communications Group v. Ballard*, 2012 WL 2342929 (D. Nev. 2012), likewise distinguished *Kingsway Financial*, as well as another case, *Fructose Corn Syrup Antitrust Litigation*, 2000 WL 33180835 (C.D. Ill. 2000). "The decision in *High Fructose* was also based on the fact that the plaintiff had previously agreed to limit its discovery requests to specific cut-off dates, but then sought supplementation of responses through later dates." *Ballard*, supra, at *7. "The court in *Kingsway Financial Services, Inc.,* stated that it is unclear whether Rule 26(e) requires supplementation as to later created documents ...." *Id*.

Felsoci at the June 17, 2015 phone conference claimed several cases, including *MSC.Software Corp. v. Altair Engineering*, 2012 WL 1340445 (E.D. Mich. 2012), support his claim about Rule 26(e)'s "majority" rule. In *MSC.Software*, however, the court merely refused to require supplementation with newly created material in a highly complex matter where a prior

9

court order precluded relief; it would be a "tremendous burden" and would "only prolong this already extremely protracted litigation," the court observed. *Id*. at *3.

Felsoci's argument was expressly rejected by the very court that decided *MSC.Software* in *Everlight Electronics Co. v. Nichia Corp*. 2015 WL 412184 (E.D. Mich. 2015). In *Everlight*, the Court sustained a motion to compel supplementation with later-created sales documents, explaining: "Everlight's reliance on *MSC.Software* ... is misplaced as the *MSC.Software* court denied the plaintiff's request for supplemental discovery for a variety of reasons that are factually dissimilar to those present here." *Id*. at *2. "In *MSC.Software,* a prior court order precluded the plaintiff's requested relief." *Id*.

The consensus is that Rule 26(e) requires the production of later-created documents that render prior productions either incorrect or incomplete. Of course, this does not mandate rote extension of Rule 26(e)'s command to all later-created documents. Later-created documents must still be found to fall within Rule 26(e)'s terms. A court might find, for example, that the later-created documents do not render prior productions incorrect or incomplete. *See*, *e.g*., *Cassirer v. Fragin,* 1997 WL 465217 (Bankr. S.D.N.Y. 1997). It could conclude that supplementation is too "tremendously burdensome" to be worth the candle. *See*, *e.g*., *MSC.Software Corp. v. Altair Engineering*, 2012 WL 1340445 (E.D. Mich. 2012). It could rely on prior orders or agreements that override Rule 26(e)'s requirements. *See*, *e.g*., *Fructose Corn Syrup Antitrust Litigation*, 2000 WL 33180835 (C.D. Ill. 2000).

But none of these possibilities means that a competing "minority" approach exists under Rule 26(e). There is only one approach, and that is that Rule 26(e) extends to subsequently acquired documents -- including those created <u>after</u> the initial production -- that render prior

productions incorrect or incomplete. It is hornbook law. *See*, *e.g.*, GENSLER, *supra*, at 624.

Felsoci's contrary claim was, and remains, specious.

## II. Felsoci's Failure to Produce Material Documents Rendered His Initial Production Incomplete.

Rule 26(e)(1)(A) states, in relevant part:

[a] party who ... has responded to [a] ... request for production ... must supplement or correct its disclosure or response ... in a timely manner if the party learns that in some material respect the ... response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing ....

Plaintiffs on August 28, 2014 requested all invoices of amounts owed to and all documents reflecting payments received by his attorneys. *See* Doc. No. 204. Plaintiffs' request included the following language:

4. All invoices sent by Felsoci's lawyers to Terry Casey for services rendered to Felosci and/or Terry Casey in relation to Felsoci's protest of Charlie Earl and Felsoci's defense of that protest in state and federal court;

6. <u>All communications between Felsoci's lawyers and any individuals, entities or organizations, including but not limited to Casey, who have paid or agreed to pay for the legal services rendered to Felsoci in regard to the protest of Charlie Earl</u>;

7. All statements of amounts past due sent by Felsoci's lawyers to any individuals, entities or organizations, for services rendered to Felosci and/or Terry Casey in relation to Felsoci's protest of Charlie Earl and Felsoci's defense of that protest in state and federal court;

8. All invoices sent by Felsoci's lawyers to any individuals, entities or organizations, for services rendered to Felosci and/or Terry Casey in relation to Felsoci's protest of Charlie Earl and Felsoci's defense of that protest in state and federal court; and

9. <u>All billing and financial documents indicating the receipt of payments from any individuals, entities or organization, including Terry Casey, for services rendered to Felsoci and/or Casey by Felsoci's lawyers since January 1, 2014</u>[.]

Doc. No. 204 at PAGEID # 4259-4260 (emphasis added).

11

Although it is difficult to judge exactly how <u>many</u> documents Felsoci has failed to produce -- Plaintiffs have not received any supplemental documents -- it is clear that payments made to the Zeiger firm include documentation. This documentation would certainly be covered by ¶ 9 as well as ¶ 6. The Court has already ruled that this sort of documentation is under the control of Felsoci. *Libertarian Party of Ohio v. Husted*, 2014 WL 3928293, at *2 - *3 (S.D. Ohio 2014). Felsoci, moreover, has admitted that additional, relevant documents exist.[5] He simply claims that he has no duty to supplement.

Plaintiffs on May 19, 2015 learned that payments totaling $300,000 had been made by the Ohio Republican Party to the Zeiger law firm (Felsoci's and Casey's lawyer) on Felsoci's and Casey's behalf. Plaintiffs obtained this information through voluntary filings made by Casey and the Kasich Campaign with the Ohio Elections Commission to defend themselves from campaign-finance-based charges. *See* Docs. No. 296-1 & -2. These documents filed by Casey and the Kasich Campaign establish that the Ohio Republican Party on November 19, 2014, December 22, 2014, December 29, 2014, and February 24, 2015, made payments of $100,000, $100,000, $50,000 and $50,000, respectively, to the Zeiger law firm for its representation of Felsoci.

Where "there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation," the documents are material and must be produced. GENSLER, *supra*, at 622 (footnote and citations omitted). Plaintiffs' theory of liability under Count Seven of their Third Amended Complaint is that Felsoci acted in conjunction with the Ohio Republican Party. *See*

---

[5] At the June 17, 2015 phone conference before Judge Kemp Felsoci's lawyer represented that only two additional documents exist, and these were invoices dated November 10, 2014 and March 4, 2015 that were sent to Casey evidencing a "significant" increase in the amount he owed to the Zeiger firm. Plaintiffs reasonably believe that it is likely that numerous additional documents exist that are covered by the August 28, 2014 document request.

12

Third Amended Complaint, Doc. No. 188 at PAGEID # 3834-3836 ("Casey is a state actor acting under color of law for purposes of 42 U.S.C. § 1983 both because (1) he is an agent of the Ohio Republican Party ... [and] [t]he Ohio Republican Party [is a] ... state actor[] acting under color of Ohio law for purposes 42 U.S.C. § 1983 within the meaning of *Smith v. Allwright*, 321 U.S. 649 (1944).").

This establishes state action, which is needed to prove a constitutional violation. Evidence of payments by the Ohio Republican Party to Felsoci's lawyers, which Felsoci failed to produce, is very incriminating. There is more than a reasonable likelihood that the additional information could substantially affect or alter Plaintiffs' discovery plan and trial preparation; it certainly affects the essence of Plaintiffs' constitutional case against Felsoci.

### III. Felsoci Failed to Timely Disclose Documents Surrounding Payments Made by the Ohio Republican Party During a Strategically Important Time Period.

According to the Secretary of State's web page, the November 19, 2014 payment of $100,000 to the Zeiger firm was first reported by the Ohio Republican Party on December 12, 2014 as part of the Ohio Republican Party's "post-general 2014" report.[6] The remaining payments were reported to the Secretary of State as part of the Ohio Republican Party's "pre-primary 2015" report on April 23, 2015.[7] All of these reports to the Secretary of State came after briefing was complete on the cross-motions for summary judgment in this case. They were inconspicuously hidden, moreover, in "post-general 2014" and "pre-primary 2015" accounts.

---

[6] http://www2.sos.state.oh.us/pls/cfqry/f?p=119:44:213217160519028::NO::P44_RP_ID,P44_LISTTYPE:179795911,simple (last visited May 19, 2015).

[7] http://www2.sos.state.oh.us/pls/cfqry/f?p=119:44:213217160519028::NO::P44_RP_ID,P44_LISTTYPE:182171623,simple (last visited May 19, 2015).

Felsoci and the Ohio Republican Party engineered their receipt and finance report to prevent Plaintiffs' from uncovering the payments while dispositive motions were being filed.[8]

"[S]upplementation must occur in a timely manner." GENSLER, *supra*, at 624 (quoting Rule 26(e)(1)). "[P]arties cannot withhold new information during a strategically important time period and nonetheless claim to have fulfilled the duty to timely supplement." *Id*. at 624-25 (footnote and citations omitted). Felsoci <u>never</u> supplemented his discovery, even though it is now clear, and his attorneys admit, that additional documents (including invoices and evidence of payments) exist.

These documents have been withheld from Plaintiffs "during a strategically important time period;" cross-motions for summary judgment were filed and briefing was completed between October 23, 2014 and December 9, 2014. The first payment was made by the Ohio Republican Party to the Zeiger firm on November 19, 2014. Plaintiffs should have been provided any and all documentation surrounding this payment as soon as possible, and certainly no later than the close of briefing on the cross-motions for summary judgment. Failure to supplement with the subsequent payments (and accompanying documentation) made in December of 2014 and February of 2015 compounded the wrong.

Plaintiffs notified Felsoci that they expected him to supplement documents both before and after learning of the payments made by the Ohio Republican Party. They did so on March 29, 2015, before the payments were even uncovered, and again on May 27, 2015, after they were brought to light before the Ohio Elections Commission. Felsoci did not respond until June 9, 2015. Then, rather than apologize and produce the documents, Felsoci demanded that Plaintiffs

---

[8] Felsoci was also hoping that Plaintiffs would give into his demand that they voluntarily dismiss or be subjected to a motion for sanctions under Rule 11. *See* Doc. No. 269 (Felsoci's Rule 11 Motion against Plaintiffs). Plaintiffs refused (to Felsoci's chagrin), and the Court summarily rejected his Motion on January 9, 2015.

agree to a protective order preventing dissemination of the documents. He never produced the documents.

## IV. Sanctions Are Necessary Under Rule 37.

Federal Rule of Civil Procedure 37(c)(1)(C) states that "[i]f a party fails to provide information ... as required by Rule 26(a) or (e), ... the court, on motion and after giving an opportunity to be heard ... impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i) to (vi)." Where a party has violated a discovery order, Rule 37(b)(2)(A)(i) states that a court may include in its "just orders" remedying the wrong an order "directing that the matters embraced in the order or other designated facts be taken as established for purpose of the action, as the prevailing party claims." Rule 37(b)(2)(A)(vi) states that the court may order "rendering a default judgment against the disobedient party." These powers are incorporated into Rule 37(c)(1)(C) and may therefore be used to remedy violations of Rule 26(e), also. *See Garamendi v. Altus Finance, S.A.*, 282 F.R.D. 270, 277 (C.D. Cal. 2012) ("Rule 37(c), by referencing the remedies available under Rule 37(b), also allows a court to dismiss an action for failure to supplement a discovery response as required by Rule 26(e).").

"[S]ome failures to disclose or produce will concern material that is harmful to the party rather than helpful. In that event, the exclusion sanction will be patently insufficient ...." GENSLER, *supra*, at 824. "By incorporating the Rule 37(b)(2)(A) 'merits' sanctions, Rule 37(c)(1) gives courts express authority to impose meaningful sanctions against parties who withhold harmful information in discovery." *Id*.

This Court thoroughly explained its remedial powers in *Southern Electric Supply Co. v. Lienguard, Inc.*, 2007 WL 2156658 at *2 - *3 (S.D. Ohio 2007) (Kemp, M.J.):

> The Court may levy severe penalties for parties who ... fail to supplement those disclosures pursuant to Rule 26(e). ... [T]hese sanctions may include any of the actions

15

authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure. **In the most egregious cases, dismissal of the entire action is permitted.** Rule 37(b)(2)(C).

(Citations omitted and emphasis added). *See generally Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990).

Where the failure to supplement cannot be cured by suppressing evidence, the Sixth Circuit in *Phillips v. Cohen*, 400 F.3d 388, 402 (6th Cir. 2005), has established four factors for "merits" sanctions: "(1) evidence of willfulness or bad faith; (2) prejudice to the adversary; (3) whether the violating party had notice of the potential sanction; (4) whether less drastic sanctions have been imposed or ordered."

### A. Felsoci's Wrong was Willful and in Bad Faith.

"A party demonstrates bad faith by, *inter alia,* delaying or disrupting the litigation or hampering enforcement of a court order." *Coquina Investments v. Rothstein*, 2012 WL 3202273 at *3 (S.D. Fla. 2012) (quoting *Eagle Hospital Physicians, LLC v. SRG Consulting, Inc*., 561 F.3d 1298, 1306 (11th Cir. 2009)). Willful failure is defined as "any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown." *Tom v. S.B., Inc*., 280 F.R.D. 603, 610 (D.N.M. 2012) (quoting *In re Standard Metals Corp.,*817 F.2d 625, 628-29 (10th Cir. 1987)).

On one hand, where a smoking gun is suppressed, willfulness is easily established. *See*, *e.g*., *Clearvalue, Inc. v. Pearl River Polymers, Inc*., 242 F.R.D. 362, 377 (E.D. Tex. 2007). "Without a 'smoking gun' statement," on the other hand, "a district court makes a determination of bad faith by drawing inferences from the conduct before it." *Coquina Investments*, 2012 WL 3202273 at *3 (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1125 (11th Cir. 2001)).

In the present case, Felsoci suppressed a smoking gun. Even if the gun is not smoking, he could not have known that. He feared it was. Further, he has repeatedly hampered, obstructed, and disrupted this litigation. He is a poster-child for bad faith.

### B. Plaintiffs Have Been Prejudiced.

The failure to produce a proverbial "smoking gun" presents the quintessential reason for drastic punishments. After all, defendants suppress smoking guns because they have nothing to lose. In order to deter this sort of conduct and correct the irreparable harm it causes plaintiffs, and more importantly the justice system, penalties must be severe.

In *Clearvalue, Inc. v. Pearl River Polymers, Inc.*, 242 F.R.D. 362, 377 (E.D. Tex. 2007), for example, the court directed judgment as a penalty for a party's failure to disclose a document that "was a proverbial smoking-gun." The court explained that a lesser sanction was "not sufficient because it does not punish Plaintiffs for their active concealment of the relevant information." *Id*. at 382. *See also In re Delta/AirTran Antitrust Litigation*, 846 F.Supp.2d 1335, 1353 (N.D. Ga. 2012) ("Delta's ... lack of a 'smoking gun' supports lesser sanctions.").

**Here, the involvement of the Ohio Republican Party with the protest of Earl is the proverbial smoking gun**. Plaintiffs' argument in Count Seven of the Third Amended Complaint is that because he coordinated with the Ohio Republican Party, Felsoci was involved in state action. *See* Third Amended Complaint, Doc. No. 188 at PAGEID # 3834-3836 ("Casey is a state actor acting under color of law for purposes of 42 U.S.C. § 1983 ... because (1) he is an agent of the Ohio Republican Party ... [and] [t]he Ohio Republican Party [is a] ... state actor[] acting under color of Ohio law for purposes 42 U.S.C. § 1983 within the meaning of *Smith v. Allwright*, 321 U.S. 649 (1944).").

This was (and is) the crux of Plaintiffs' case against Felsoci.[9] **This was the proof Plaintiffs were looking for from the very beginning**. Plaintiffs' discovery efforts were directed at uncovering the Ohio Republican Party's involvement. Payments made by the Ohio Republican Party to Felsoci's lawyers is golden proof! It was suppressed for this very reason.

### C. Felsoci's Repeated Wrongs Placed Him on Notice.

Felsoci has already been punished once by the Court. Judge Watson stripped him of the defense of laches because of his harassing and obstructive conduct. The Court, moreover, has already twice been forced to order that he produce evidence. He knows he has been punished for abusing the discovery process. Plaintiffs, moreover, provided him multiple opportunities to properly supplement discovery. He continues to refuse, claiming that one need not supplement with later-created documents. He knows this argument is frivolous; Plaintiffs have provided him with the authorities contained in this Memorandum. Still, he refuses to conform to Rule 26(e).

### D. Less Drastic Sanctions Will Not Suffice.

"Permissible purposes of a sanction include: (1) compensating the court and other parties for the added expense caused by the abusive conduct; (2) compelling discovery; (3) deterring others from engaging in similar conduct; and (4) penalizing the guilty party or attorney." *Steed v. Everhome Mortgage Co*., 308 Fed. Appx. 364, 370-71 (11th Cir. 2009). In the present case, sanctions are necessary for three of these reasons: First, to compensate Plaintiffs for the added expense caused by Felsoci's abusive conduct; second, to punish Felsoci; and third, to deter

---

[9] Contrary to Felsoci's representation at the phone conference on June 17, 2015 before Judge Kemp, Judge Watson never ruled that this evidence is irrelevant. Indeed, the Court has repeatedly concluded the evidence is relevant to Count Seven, which is why the Court ordered Felsoci to sit for his deposition, *see* Doc. No. 133, and produce documents. *See* Doc. No. 162. Judge Watson ruled that for purposes of Plaintiffs' fourth motion for preliminary injunction, even if the Ohio Republican Party were involved it would not constitute state action. Findings and conclusions in the context of preliminary injunctions, as Felsoci knows from Plaintiffs' successful response to his Rule 11 Motion, *see* Doc. No. 270, are not binding or entitled to any conclusive weight. *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Felsoci, his sponsors, and others from future wrongdoing. In order to accomplish these aims, severe sanctions are required.

Less drastic sanctions will not suffice here. There is no evidence to suppress. Plaintiffs now know that the Ohio Republican Party paid Felsoci's lawyers, having uncovered that information outside discovery channels. Had Plaintiffs been timely informed of this fact, they could have timely explored the matter through discovery and included it in their motion for summary judgment. They never had that opportunity.[10]

*Bratka v. Anheuser-Busch, Inc.*, 164 F.R.D. 448, 456 (S.D. Ohio 1995), where the Court directed a default judgment against the defendant, governs this case. There, Judge Graham explained his rationale for entering default judgment against the defendant:

> Defendant's negligence and lack of good faith have prolonged this litigation, increased the time and expense to plaintiff and has required an inordinate amount of the Court's time which has detracted from its ability to give timely attention to other important cases on its docket. ... The Court concludes that an award of fees and expenses alone would not be a sufficient sanction. Such a sanction was imposed at an earlier stage of this litigation but apparently failed to impress the defendant with the seriousness of its responsibilities. The Court also believes that deterrence is an important consideration in selecting the sanction in this case. ... If litigants are to have any faith in the discovery process, they must know that parties cannot fail to produce highly relevant documents within their possession with impunity. Parties cannot be permitted to jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents.

*Id*. at 456.

The only viable solutions in this case, as in *Bratka* and *Tellermate*, are: (1) directing that the Ohio Republican Party's antecedent coordination with Felsoci and Casey be stipulated for

---

[10] One might suggest that re-opening proceedings is a less drastic alternative. *See*, *e.g.*, *L. Tarango Trucking v. County of Contra Costa*, 202 F.R.D. 614, 623 (N.D. Cal. 2001) (reopening trial where party had failed to timely supplement). The difficulty with this solution is that time remains of the essence in this case. For that reason, simply re-opening proceedings rewards Felsoci, whose objective throughout these proceedings has been to waste Plaintiffs' time and delay resolution.

purposes of Count Seven of the Third Amended Complaint; and (2) entering default judgment against Felsoci under Count Seven of the Third Amended Complaint. Only a default judgment will adequately punish Felsoci and deter others, including his sponsors, from engaging in political espionage in the future.[11] Felsoci, moreover, is a repeat offender. Felsoci has engaged in a pattern of abusive practices for nefarious reasons. He must be sanctioned.

## CONCLUSION

Plaintiffs' Rule 37 Motion for sanctions should be **GRANTED.**

Respectfully submitted,

*/s/ Mark R. Brown*

| | |
|---|---|
| Mark Kafantaris | Mark R. Brown, Trial Counsel |
| 625 City Park Avenue | 303 East Broad Street |
| Columbus, OH 43206 | Columbus, OH 43215 |
| (614) 223-1444 | (614) 236-6590 |
| (614) 221-3713(fax) | (614) 236-6956 (fax) |
| mark@kafantaris.com | mbrown@law.capital.edu |

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that copies of this Motion, Memorandum in Support and Proposed Order were filed using the Court's electronic filing system and will be thereby served on the parties through counsel of record.

*s/Mark R. Brown*
Mark R. Brown

---

[11] This is not the first time, after all, that Republicans have targeted Libertarian Party candidates in Ohio. *See* Testimony of Matthew Damschroder, Aug. 26, 2014, Doc. No. 227-1 at PAGEID # 5612 (Exhibit 30) (Ohio Republicans' unsuccessful "sore loser" challenge to Gary Johnson, Libertarian Party's 2012 presidential candidate).