```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Libertarian Party of Ohio,
    et al.,                       :

        Plaintiffs,             :

    v.                              :       Case No. 2:13-cv-953

Jon Husted, et al.,             :       JUDGE MICHAEL H. WATSON
                                                  Magistrate Judge Kemp
        Defendants.             :

                        OPINION AND ORDER

On September 18, 2015 Plaintiffs filed a motion to compel non-party Terry Casey to produce certain subpoenaed documents - in particular, documents which were partially redacted.  Mr. Casey responded to this motion and submitted unredacted versions of the documents to the Court for *in camera* review on September 25, 2015.  Plaintiffs replied the same day.  For the reasons set forth below, the motion to compel will be granted.

One of the categories of documents described in the subpoena, which is attached as Exhibit One to the motion to compel (Doc. 329), is this:

> 4.  Any and all documents and communications between Terry Casey, Intervenor-Defendant-Felsoci ..., agents of the 2014 campaign of John Kasich for Governor (including Matt Carle, Dave Luketic, and Steve Polesovsky), and/or John Musca, **relating to Felsoci's protest of Charlie Earl from January 1, 2014 to present.**  (Emphasis supplied).

As prior orders of this Court reflect, Mr. Felsoci successfully protested the inclusion of Libertarian Party Candidate Charlie Earl on the Ohio gubernatorial ballot.  One of his theories is that the Ohio Republican Party and/or Governor Kasich's campaign

committee was involved in the filing of the protest.  The protest was upheld by the Ohio Secretary of State on March 7, 2014.  The first pleading or motion directed to that decision was filed the same day.

The two documents in question are electronic communications (apparently text messages or voicemails) involving Dave Luketic, Jeff Polachesky (whom the Court assumes to be the same person as "Steve Polesovsky," the name appearing in the subpoena), and Terry Casey.  The unredacted portions (Exhibit Two to Doc. 329) consist, first, of a February 26, 2014 message from Dave Luketic which says "Would it help our case if one of the circulators signed a Democratic petitions (sic) this year?"  There were two responses from Mr. Casey; his February 27, 2014 response, "Sorry for my delay.  YES!  These are very important.  Can we discuss more by phone tonight?? Or, early Friday am?  Thanks Terry" was produced.  A May 2, 2014 comment, not directly responsive to the question, was not.  The second string of communications, which are between Jeff Polachesky and Mr. Casey, begin with Mr. Polachesky's March 4, 2014 question, "Anything new?  Since you last texted..."  Mr. Casey responded the same day with "Nothing new.  Just more grinding and Dems trying to play 'hide the ball'!!  Terry."  Three days later, Mr. Polachesky asked, "Any word on when we'll know something?"  Mr. Casey's response to that question and Mr. Polachesky's reply, both dated March 8, 2014 were redacted.  The final communication on that page is the same May 2, 2014 statement from Mr. Casey which appeared in the string of communications with Mr. Luketic.

In his responsive memorandum, Mr. Casey describes the content of the redacted communications as "relating to the subsequent litigation in this Court or the Ohio Supreme Court." Doc. 331, at 2.  The Court's independent review of the redacted statements confirms that description.  Mr. Casey's position is

that these communications do not "relate to [the] protest of Charlie Earl" because that protest was over on March 7, 2014. Mr. Casey notes that other document requests in the subpoena refer to "Felsoci's protest of Charlie Earl **and Felsoci's defense of that protest in state and federal courts"** (emphasis supplied), indicating that Plaintiffs themselves drew a distinction between the protest and the litigation.  Plaintiffs' position is that this litigation is "related to" the protest because the protest, and the Secretary of State's denial of it, are what led directly to the filing of those motions and pleadings in this case which sought to overturn that ruling.  They explain that the other document requests dealt with billing statements and that it was necessary to ask for the statements in that way.  Plaintiffs also ask the Court to direct Mr. Casey to produce any other documents he might have withheld that are responsive to Category 4 of the subpoena if he withheld them on the basis that those documents contained communications relating only to the litigation as opposed to the "protest" as Mr. Casey has defined it.

I.

Several principles guide the Court's decision.  First, words are important.  Second, semantic game-playing in discovery is inappropriate.  Third, counsel have an obligation to work together in good faith to insure that issues of semantics which are unrelated to the substance of a discovery issue - that is, issues which have nothing to do with whether the documents in dispute are either relevant or privileged - do not clog up the discovery process itself or lead to unnecessary motions practice. The Court starts with the first principle.

No one would expect a party responding to a discovery request to produce, voluntarily, documents which the other party did not ask for (although sometimes, in a spirit of cooperation - something notable in this case only by its absence - that might

-3-

happen). On the other hand, counsel should refrain from hypertechnical reading of discovery requests. The question that responding counsel must always ask is, "How would a reasonable person interpret this request?" As the court in Pilling v. General Motors Corp., 45 F.R.D. 366, 369 (D. Utah 1968)(addressing the subject of how to interpret interrogatories) stated, "[n]either questions nor their answers should be interpreted with excessive rigidity or technicality, but a rule of reason should be applied as to both." In fact, the court described this concept as being so fundamental that it required no citation to authority. The same approach is reflected in this language from Werbungs Und Commerz Union Austalt v. Collectors Guild, Ltd., 728 F.Supp. 975, 982 (S.D.N.Y. 1989), aff'd in part and rev'd in part 330 F.2d 1021 (2d Cir. 1991): "Although a party is required to respond only to the requests and questions actually propounded during discovery, they should not be read hypertechnically; rather, a party should attempt to comply with discovery demands in good faith." The Advisory Committee notes to the 1993 revisions to Rule 37 are in accord, stating it this way: "Interrogatories and requests for production should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions under subdivision (a)."

The phrase "relate to" is undoubtedly broad. In fact, this Court's experience has been that a document request using this language is often objected to as overly broad. Some courts agree; for example, in Lindell v. Synthes USA, 2013 WL 3146806 (E.D. Cal. June 18, 2013), the court held that a document request seeking every document "related to expenses or wages" was "overbroad and not stated with reasonable particularity." See also Cardenas v. Dorel Juvenile Group, Inc., 232 F.R.D. 377, 381

(D. Kan. 2005)("this Court has held on several occasions that a document request may be vague, or overly broad and unduly burdensome on its face if it uses an omnibus term such as 'relating to,' 'pertaining to,' or 'concerning'").  It is unusual for a responding party to read that phrase as a limitation on a document request which, on its face, describes a time frame which extends well beyond the date on which the administrative proceedings on the protest concluded.  That is simply not the objectively reasonable, good faith interpretation that the Rules call for.  The most that can be said for Mr. Casey's argument is that it might be reasonable to view the request, in its entirety, and when read in conjunction with the requests which followed, as somewhat ambiguous.  But it was not reasonable for him to work hard to find an ambiguity in the words used and then to interpret them strictly in his favor, rejecting any effort to broaden his reading even when he was asked to do so.

    That leads directly into the second principle.  As this Court previously has held, when a response to a discovery request is "either disingenuously hypertechnical or purposefully obtuse," that can be sanctionable conduct.  <u>PepsiCo, Inc. v. Central Inv. Corp., Inc.</u>, 2002 WL 32122596, *6 (S.D. Ohio Feb. 4, 2002) (Beckwith, J.).  Rule 26(g) requires a certification that a discovery response is "consistent with these rules" (and, the Court would add, case law interpreting them) and not "interposed ... to ... cause unnecessary delay, or needlessly increase the cost of the litigation."  Treating this particular discovery request as a narrow inquiry for only pre-March 7, 2014 communications is not consistent with the Rules and seems particularly designed to cause delay and increase costs.  It strikes the Court as particularly disingenuous when a reasonable person in Mr. Casey's position would clearly have known that, in light of all of the litigation activity which preceded the

-5-

request, it was extremely unlikely that Plaintiffs wanted only communications which made some direct reference to the administrative protest process and not ones which concerned how that process was playing out in the courts.  None of their other discovery efforts about the relationship between the protest, Governor Kasich's campaign, and the Ohio Republican Party appear to have been similarly limited, and there is no reason to think that this one was.

     Finally, addressing the third principle, it is helpful to explore what a good faith effort to resolve this particular issue short of motions practice might have looked like.  Once it became apparent how Mr. Casey was construing the request, and that he was withholding information based on that construction, reasonable attorneys comporting themselves in the spirit required by the Rules would have had a conversation in which Plaintiffs' counsel would have said something like, "I guess I understand your point, but of course that is not what I meant, and you probably know that.  If you care to stand on your objection, I could always serve yet another subpoena, but why go to that trouble when I've now told you clearly what I meant to ask for, and you appear to have no substantive objection to giving it to me?"  A reasonable response to such a question would have been, "You could have been more precise, but there's no point litigating such a minor issue.  We can agree to disagree on the exact interpretation of the request, but in good faith I'm producing the withheld information."  The Court sees no evidence that anything remotely resembling this type of dialogue occurred.  In fact, the filing of a motion, response, and reply which total, cumulatively, seventeen pages of briefing, strongly suggests that it did not.  Unfortunately, the Court has now had to add another order to the stack of paper (or electronic documents) spawned by this matter.  "Unnecessary" is the best way to describe all of

it.

## II.

For the reasons set forth above, non-party Terry Casey shall, within seven days of the date of this order, produce all documents in his possession, custody, or control which are responsive to category four of the subpoena as construed by this order.  The Court again reserves ruling on whether sanctions should be awarded in connection with this motion, but strongly emphasizes that (although discovery should now be nearing its close) that any future violations of the principles set forth in this order will almost certainly lead to sanctions.

## III.

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a).  The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge