**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Libertarian Party of Ohio,** *et al.,*

      **Plaintiffs,**                   **Case No. 2:13–cv–953**

      **v.**                          **Judge Michael H. Watson**

**Jon A. Husted,**
**Ohio Secretary of State,**

      **Defendant.**

## OPINION AND ORDER

Plaintiffs challenge several provisions of Ohio's election statutes, including Ohio Revised Code §§ 3503.06(C)(1)(a) and 3501.38(E)(1) and Ohio Senate Bill 193 ("S.B. 193"). The Court has issued several comprehensive decisions on the constitutional issues this case has presented. ECF Nos. 18, 47, 80, 260, & 285. The remaining issues not addressed in those decisions are: (1) whether S.B. 193 violates the United States Constitution as applied to Plaintiffs, *see* Pls' Am. Compl. ¶¶ 341–46, ECF No. 188 (Count 4); and (2) whether the State of Ohio is immune from Plaintiffs' claim that S.B. 193 violates the Ohio Constitution, *see id.* ¶¶ 347–54 (Count 5).

Motions addressing these remaining issues are ripe for review. *See* ECF Nos. 205, 261, 264, & 267. These motions also seek the Court's final consideration of Plaintiffs' other claims. *See* Pls' Am. Compl. ¶¶ 329–340, 355–79 (Counts 1–3 and 6–9).

For the reasons addressed herein, the Court finds that S.B. 193 is not unconstitutional as applied to Plaintiffs and that the State of Ohio is immune from Plaintiffs' claim that S.B. 193 violates the Ohio Constitution.

## I. BACKGROUND

### A. The Parties

Four Plaintiffs initiated this case: the Libertarian Party of Ohio ("LPO"), Kevin Knedler ("Knedler"), Aaron Harris ("Harris"), and Charlie Earl ("Earl") (collectively, "the LPO candidates"). LPO has previously been a ballot-qualified political party in Ohio. The LPO candidates have run for local, statewide, and federal offices since 2008 and are active members of LPO.

During a conference held on December 4, 2013, the Court orally granted the following additional parties leave to intervene as Plaintiffs in this action: Robert M. Hart, individually; Robert Fitrakis, on behalf of the Ohio Green Party; Max Russell Erwin, individually; and Don Shrader, on behalf of the Constitution Party of Ohio (collectively, "Intervenor Plaintiffs"). Intervenor Plaintiffs no longer have any pending claims in this case. *See* ECF No. 285 (denying with prejudice Intervenor Plaintiffs' claim challenging S.B. 193 on its face).

Defendant Jon Husted, the Ohio Secretary of State ("Secretary Husted"), is Ohio's chief elections officer under Ohio Revised Code § 3501.04 and therefore is charged with the duty to enforce Ohio's election laws. Plaintiffs sue Secretary Husted in his official capacity only. The State of Ohio successfully moved to

intervene to defend the constitutionality of Ohio's out-of-state circulator law, Ohio Revised Code § 3503.06(C)(1)(a) on October 3, 2013.

Defendant Gregory Felsoci ("Felsoci") filed one of the successful protests against the 2014 LPO candidates with Secretary Husted that resulted in the removal of those candidates from the Ohio May 2014 primary ballot. The Court likewise granted Felsoci leave to intervene.

### B. Facts and Procedural History

The present lawsuit is one of four actions Plaintiffs have filed in federal court over the past decade concerning their right to appear on the Ohio ballot. *See Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 582 (6th Cir. 2006) (striking down the cumulative effect of Ohio election laws on minor party ballot access); *Libertarian Party of Ohio v. Brunner*, 567 F. Supp. 2d 1006, 1015 (S.D. Ohio July 17, 2008) (resulting in the LPO candidate's access to the ballot because it had the requisite community support); *Libertarian Party of Ohio v. Husted*, No. 2:11–cv–722, 2011 WL 3957259, at *6 (S.D. Ohio Sept. 7, 2011) (finding H.B. 194 violated LPO's First Amendment rights), *vacated as moot*, 497 F. App'x 581 (6th Cir. 2012).

Plaintiffs initiated this lawsuit on September 25, 2013—alleging the first of Plaintiffs' claims against Secretary Husted (Counts 1 and 2)—to challenge Ohio Revised Code § 3506.06(C)(1)(a), Ohio's prohibition against using petition circulators who reside in states other than Ohio. On September 20, 2013, a related case, *Citizens in Charge, Inc., et al v. Husted*, Case No. 2:13–cv–935,

brought by similarly-situated plaintiffs, challenged the same statute. Both cases were before this Court. Both sets of plaintiffs successfully sought a preliminary injunction to prohibit the enforcement of the statute. *See* Order, ECF No. 18. The Court has since permanently enjoined Secretary Husted and the State of Ohio from enforcing that statute in *Citizens in Charge, Inc v. Husted*. Order, ECF No. 43, Case No. 2:13–cv–935.

On November 6, 2013, the Ohio Legislature passed, and the Governor signed, S.B. 193, which became effective February 5, 2014. Thereafter, Plaintiffs amended their complaint, adding three claims (Counts 3, 4, and 5) seeking to enjoin the retroactive enforcement of S.B. 193 and bringing as-applied challenges to S.B. 193 under the United States and Ohio Constitutions. *See* ECF No. 16.

Plaintiffs successfully sought a preliminary injunction in this Court preventing Secretary Husted and the State of Ohio from retroactively enforcing S.B. 193. As a result, the Court ordered Secretary Husted and the State of Ohio to provide Plaintiffs access to the primary and general election ballots in 2014.

In anticipation of the 2014 primary, LPO hired Oscar Hatchett ("Hatchett") (a paid circulator service) to collect signatures for the LPO candidates' petitions. Hatchett collected signatures for several LPO candidates, specifically Earl for Governor, his running mate Sherry L. Clark ("Clark") for Lieutenant Governor, and Steven Linnabary ("Linnabary") for Ohio Attorney General. The petition forms ("part petitions") contained over 1,400 signatures but did not include the

name and address of the person or entity that paid them in the employer information block.  Another paid circulator, Sarah Hart ("Hart"), collected signatures and failed to fill out the employer information block as well.  After submitting the part petitions, Secretary Husted certified Earl, Clark, and Linnabary as LPO candidates for the 2014 Ohio primary election.

The part petitions were challenged by Felsoci and two others as violating Ohio Revised Code § 3501.38(E)(1), which requires paid circulators to disclose their employers.  After filing the protests, Secretary Husted referred them to an appointed hearing officer, Professor Bradley A. Smith ("Professor Smith") to conduct a hearing and issue a report and recommendation as to disposition of the protests.

On March 7, 2014, Professor Smith found that the signatures Hatchett and Hart gathered violated Ohio Revised Code § 3501.38(E)(1) because they failed to provide the name and address of the person or entity who paid them in the employer information box.  Professor Smith therefore recommended that the part petitions containing those signatures be ruled invalid.

Secretary Husted adopted Professor Smith's report and recommendation the same day.  ECF No. 57-4.  As a result of the invalidation of the part petitions gathered by Hatchett and Hart, the LPO candidates no longer had the requisite number of valid signatures to appear on the May 2014 Ohio primary ballot. Having failed to qualify for the primary ballot, Earl, Clark, and Linnabary did not

appear on the ballot as LPO candidates for the November 2014 Ohio general election.

Shortly thereafter, Plaintiffs again amended their complaint, adding additional claims (Counts 6, 7 and 8) challenging the disclosure requirement of Ohio Revised Code § 3501.38(E)(1). ECF No. 56. Felsoci intervened. *See* ECF No. 58.

That same day and in a renewed motion on September 15, 2014, Plaintiffs sought to preliminary enjoin the enforcement of Ohio Revised Code § 3501.38(E)(1). ECF Nos. 57 & 192. Plaintiffs' September 15, 2015 motion also sought preliminary injunctive relief on the final count (Count 9) included in their third amended complaint, ECF No. 188, which alleges Professor Smith held a conflict of interest because he represented the Ohio Attorney General, Mike Dewine, in a separate case.

The Court, however, denied Plaintiffs' motions. The Court declined to grant the injunction and determined that Ohio Revised Code § 3501.38(E)(1) places only a minimal burden on political speech and that the disclosures it requires are substantially related to Ohio's interests in both deterring and detecting fraud. *See* ECF Nos. 80 & 260. The Court also determined that Secretary Husted's decision to void the LPO petitions was not influenced or controlled by improper political animus. *See id.*

Plaintiffs' third amended complaint contains the current iteration of allegations against Defendant and Intervenor Defendants. ECF No. 188.

## II.    STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); s*ee also Van Gorder v. Grand Trunk Western R.R., Inc.*, 509 F.3d 265 (6th Cir. 2007).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Pittman v. Cuyahoga Cnty. Dept. of Children and Family Serv.*, 640 F.3d 716, 723 (6th Cir. 2011). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law.'" *Pittman*, 640 F.3d at 723 (quoting *Anderson*, 477 U.S. at 251–52).

## III. ANALYSIS

### A. Counts 1 and 2

Plaintiffs move for summary judgment as to Counts 1 and 2, which challenge Ohio's prohibition against using petition circulators who reside in states other than Ohio (Ohio Revised Code § 3506.06(C)(1)(a)).  ECF No. 261.

The Court has already permanently enjoined Secretary Husted and the State of Ohio from enforcing the residency requirement for circulators of petitions for candidates and initiatives set forth in Ohio Revised Code § 3503.06(C)(1)(a).  *See* ECF No. 43, Case No. 2:13–cv–935.  The Court notes that an appeal is pending in that case, Case No. 2:13–cv–935; however, that appeal is limited and does not include an appeal of the Court's injunction permanently prohibiting the enforcement of Ohio Revised Code § 3503.06(C)(1)(a).  Notice of Appeal 1, ECF No. 45, Case No. 2:13–cv–935.  Nothing has changed in the interim.

On the basis of its prior ruling, the Court **GRANTS** Plaintiffs' motion for summary judgment on Counts 1 and 2 and **DENIES** Secretary Husted's and the State of Ohio's motion for summary judgment as to Counts 1 and 2.  Accordingly, for the reasons outlined in the permanent injunction order, ECF No. 43, Case No. 2:13–cv–935, the Court finds Ohio Revised Code § 3503.06(C)(1)(a) violates Plaintiffs' First Amendment right to engage in free speech, and **PERMANENTLY ENJOINS** Secretary Husted and the State of Ohio from enforcing the residency

requirement for circulators of petitions for candidates and initiatives set forth in Ohio Revised Code § 3503.06(C)(1)(a).

## B. Count 3

Count 3 asserts a claim under 42 U.S.C. § 1983 challenging the retroactive application of S.B. 193. The Court issued a preliminary injunction on this issue on January 7, 2014, enjoining Secretary Husted and the State of Ohio from enforcing S.B. 193 until after the 2014 election cycle. *See* ECF No. 47.

In the State of Ohio's cross motion for summary judgment, ECF No. 267, it argues that Plaintiffs' claim is moot because it challenges the law as applied to Ohio's 2014 primary elections, and Plaintiffs participated in that election, which is now over. Mot. Summ. J. 3–5, ECF No. 267.

In their motion for summary judgment, Plaintiffs assert that, if Count 3 is treated as moot, it would dissolve the January 7, 2014 preliminary injunction and "would bring S.B. 193 back to full life as of its effective date" and thus would result in "collateral consequences." Reply 2, ECF No. 268.

Plaintiffs' argument is not well taken. Plaintiffs fail to provide evidence of the "collateral consequences." They merely assert that Plaintiffs' "filings as a political party after [February 5, 2014] *could* be challenged by federal and state authorities (and perhaps others)" and donations made to LPO as a political party "might also be questioned." Reply 2, ECF No. 268. Plaintiffs' claim is speculative, perfunctory, and unaccompanied by any argument as to the actual consequences that would stem from the Court's failure to declare that S.B. 193

cannot be applied retroactively. Therefore, the Court finds it waived. *See Cook v. Donahoe*, No. 3:11–cv–132, 2013 WL 93663, at *4 (S.D. Ohio Jan. 8, 2013) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation omitted).

Plaintiffs have failed to articulate the need for a permanent injunction and declaration. Accordingly, since the 2014 election cycle is now over, the Court **DISMISSES** Count 3 as moot.

## C. Counts 4 and 5

Plaintiffs allege that S.B. 193 violates their rights under the First Amendment and the Equal Protection Clause of the United States Constitution (Count 4) and that it violates Article V, § 7 of the Ohio Constitution (Count 5). Count 4 is against Secretary Husted and Count 5 is against Secretary Husted and the State of Ohio. Plaintiffs move for summary judgment, and the State of Ohio has filed its cross motion for summary judgment on these counts. ECF Nos. 261 & 267.

### 1. Count 4

Plaintiffs attack the constitutionality of S.B. 193 as applied to them, claiming it places Plaintiffs at a political disadvantage relative to the two major parties in Ohio's general elections by denying LPO access to party membership privileges afforded to the two major parties and failing to provide LPO candidates

an equal opportunity to gain access to Ohio's primary elections by affording the two major parties privileges not afforded to Plaintiffs.

This is not the first time the Court has addressed the constitutionality of S.B. 193. On March 16, 2015, the Court denied Intervenor Plaintiffs' motion for summary judgment in which they argued that S.B. 193 was unconstitutional on its face. ECF No. 285.

This Court found S.B. 193 was not *facially* invalid and thus granted the State of Ohio's cross motion for summary judgment.[1]  Order 2, ECF No. 285. Now before the Court is Plaintiffs' challenge to the constitutionality of S.B. 193 *as applied* to them.

The Sixth Circuit Court of Appeals has explained the difference between facial and as applied challenges:

> A facial challenge to a law's constitutionality is an effort "to invalidate the law in each of its applications, to take the law off the books completely." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc); *see also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ("a 'facial' challenge . . . means a claim that the law is 'invalid in toto—and therefore incapable of any valid application.'" (quoting *Steffel v. Thompson*, 415 U.S. 452, 474, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974))). In contrast to an as-applied challenge, which argues that a law is unconstitutional as enforced against the plaintiffs before the court, a facial challenge "is not an

---

[1] On February 27, 2015, Plaintiffs moved "to maintain the status quo," ECF No. 284, and asked that Husted "not attempt to disqualify [LPO] from Ohio's 2015 election ballot unless authorized by the Court through a final dispositive ruling." Mot. 1–2, ECF No. 284. The Court issued a final dispositive ruling addressing the issues presented in Plaintiffs' February 27, 2015 motion to maintain the status quo when it denied Intervening Plaintiffs' Summary Judgment Motion, ECF No. 285, on March 16, 2015. For the reasons stated therein, Plaintiffs' motion to maintain the status quo is **DENIED** as moot.  *See* ECF No. 285.

attempt to invalidate the law in a discrete setting but an effort 'to leave nothing standing[.]'" *Connection Distrib. Co.*, 557 F.3d at 335 (en banc) (quoting *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) (en banc)).

*Speet v. Schuette*, 726 F.3d 867, 871–72 (6th Cir. 2013). Thus, to prevail on their as-applied challenge, Plaintiffs must show how S.B. 193 is unconstitutional as enforced against LPO and its candidates.

Plaintiffs argue that S.B. 193 violates their First Amendment and Equal Protection rights under the United States Constitution by placing LPO at a political disadvantage. Pls' Mot. Summ. J. 5, 6, ECF No. 261-1. Plaintiffs make the same arguments, some verbatim, as did Intervenor Plaintiffs when they moved for summary judgment on the statute's facial validity. *See, e.g., id.* at 8 ("The ACLU correctly states that 'S.B. 193 will then prevent . . . dissolved parties [including Plaintiff-LPO] from re-forming and fielding candidates until 2016, and because these candidates will be denied access to the 2016 Primary Election, voters will be barred from affiliating with these parties until at least 2017.' Doc. No. 165-1 at PAGEID # 3279."). In fact, the only new argument Plaintiffs make is an attempt to analogize a district court case out of Michigan to the application of S.B. 193 to LPO. *Id.* at 9–10 (discussing *Green Party of Michigan v. Land*, 541 Supp. 2d 912, 917–18 (E.D. Mich. 2008)).

Plaintiffs fail to cogently explain how their as-applied challenge to S.B. 193 differs from Intervening Plaintiffs' facial challenge. It is not the task of the Court to supply an argument or an evidentiary basis for Plaintiffs' bare allegations.

Plaintiffs' amended complaint and motion for summary judgment fail to provide any specific evidence to support their as-applied claim.  That is, Plaintiffs do not produce any evidence to demonstrate how the enforcement of S.B. *193 on LPO and its candidates* is unconstitutional.  *See Connection Distrib. Co.*, 557 F.3d at 336 (en banc).

Furthermore, Plaintiffs' assertion that *Land* supports its position that the application of S.B. 193 is unconstitutional is misplaced.  *See* Pls' Mot. Summ. J. 10, ECF No. 261-1 (quoting language from *Land* in which that court found that "while at first blush the Statute may appear neutral on its face, further inquiry reveals that the Statute, by its own terms, benefits the major political parties to the detriment of all others."  *Land*, 541 F. Supp. 2d at 917–18.).  In *Land*, political parties, a newspaper and a political strategist successfully challenged the constitutionality of a Michigan law that allowed the two major political parties to obtain the party declarations of voters from the state's prior presidential primary. *Land* is inapplicable to Plaintiffs' as-applied challenge in two key respects.  First, the central issue in *Land* was who is to receive the party preference information after the election has occurred.  *Land*, 541 F. Supp. 2d at 920.  *Land* concerns a law premised on the outcome of a single past election and relates to the reporting of information, whereas Plaintiffs now ask the Court to make a determination on the prospective application of S.B. 193, which relates to the certification of minor political parties to Ohio's ballot.  Second, *Land* specifically

found the issue of a minor party's access to the ballot was not implicated, which is central to Plaintiffs' as-applied challenge. *See id.* 922–23.

Without more, Plaintiffs' as-applied challenge fails. Accordingly, the Court **DENIES** Plaintiffs' motion for summary judgment as to Count 4, ECF No. 261, and **GRANTS** the State of Ohio's motion as to Count 4. ECF No. 267. As addressed above, the Court finds Plaintiffs' motion to maintain the status quo moot.

### 2. Count 5

Plaintiffs seek a finding that S.B. 193 violates Article V, § 7 of Ohio's Constitution, which states in relevant part, "[a]ll nominations for elective state, district, county and municipal offices shall be made at direct primary elections or by petition as provided by law . . . ." Ohio Const. art. V, § 7. In support, Plaintiffs claim that *Blackwell* interpreted this provision to require that "all political parties, including minor parties, nominate their candidates at primary elections." Pls' Mot. Summ. J. 10, ECF No. 261-1 (citing *Blackwell*, 462 F.3d at 582 (6th Cir. 2006)).

The State of Ohio argues Plaintiffs' claim is barred by sovereign immunity under the Eleventh Amendment to the United States Constitution. Mot. Summ. J. 11–14, ECF No. 267; *see also* Ds' Resp. to Pls' Second Mot. Prelim. Inj. 1–4, ECF No. 32.

Plaintiffs maintain that the State of Ohio waived any immunity that it had by voluntarily intervening in this case. *See* Compl. ¶ 351, ECF No. 188. Plaintiffs aver that Secretary Husted also lost his immunity as a result of that waiver.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). Additionally, "[t]he Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." *Id.* (internal citation and quotation marks omitted). "And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Id.* at 101–02; *see also id.* at 102 (discussing an exception carved out by *Ex Parte Young*, 209 U.S. 123 (1908), when a citizen of a state sues a state under the federal law seeking injunctive or declaratory relief).

Plaintiffs concede that "[h]ad the State of Ohio not voluntarily intervened as an additional Defendant, Plaintiffs would have been barred by the Eleventh Amendment from prosecuting in this Court their Ohio constitutional claims." Pls' Mot. Summ. J. 12–13, ECF No. 261-1. Thus, the question is whether and to

what extent the State's intervention in this case resulted in a waiver of sovereign immunity.

"A State remains free to waive its Eleventh Amendment immunity." *Lapides*, 535 U.S. at 618.  "[T]he [Supreme] Court has made clear in general that 'where a State *voluntarily* becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." *Id.* (citing *Gunter v. Atl. Coast Line R. Co.*, 200 U.S. 273, 284 (1906)).  "[O]ur test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 247 (1985) (internal quotation marks omitted)).  The Sixth Circuit has not so long ago stated the following:

> In cases of consent, waiver cannot be implied but must be unequivocally expressed.  Waiver occurs if the state voluntarily invokes federal jurisdiction, or else if the state makes a clear declaration that it intends to submit itself to federal jurisdiction. This is a high standard to meet, as courts will give effect to a state's waiver of Eleventh Amendment immunity only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction.

*VIBO Corp., Inc.*, 669 F.3d at 691 (internal citation, alterations, and quotation marks omitted).

The State of Ohio argues that "[b]efore S.B. 193 was passed the State of Ohio intervened for the sole purpose of defending Plaintiffs' challenge to Ohio's

out-of-state circulator law[, § 3503.06(C)(1)(a)]. . . ." State of Ohio's Mot. Summ. J. 12, ECF No. 267. As such, the State of Ohio "did not, and could not, 'unequivocally express,' an intent to waive its immunity as to Plaintiffs' Ohio Constitutional claim regarding a law that did not exist at the time it intervened." *Id.* (citing *VIBO Corp., Inc. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012)). The State of Ohio claims that, since it did not have immunity under the Eleventh Amendment as to Plaintiffs' challenge to S.B. 193 under the United States Constitution, pursuant to § 1983 (Count 4), it does not follow that, by defending those claims, it waived its immunity as to Count 5.

Plaintiffs' argument appears to be as follows: Since the State of Ohio was not originally named as a defendant in the case, by intervening as to one argument, and then later, after Plaintiffs amended their complaint, joining in the defense against the newly added claims addressing S.B. 193, the State of Ohio waived any claim of immunity it may have made as to any of the claims addressing S.B. 193. *See* Pls' Mot. Summ. J. 18, ECF No. 261-1. Thus, Plaintiffs argue the State of Ohio waived its immunity "by such overwhelming implication from the text as will leave no room for any other reasonable construction." *VIBO Corp., Inc.*, 669 F.3d at 691. The Court disagrees.

First, Plaintiffs' reliance on *Lapides* is misplaced. *See* Pls' Mot. Summ. J. 13–14, ECF No. 261-1. In *Lapides*, the United States Supreme Court held that, when a state removes a case from state court in which a citizen litigant has sued a state, the state's removal constitutes a "form of voluntary invocation of a federal

court's jurisdiction sufficient to waive" this immunity. *Lapides*, 535 U.S. at 624 ("We conclude that the State's action joining and removing of this case to federal court waived its Eleventh Amendment immunity. . . ."). This form of waiver did not occur here; rather, Plaintiffs instituted the instant action in federal court. *See Coll. Sav. Bank*, 527 U.S. at 676.

Further, there is no suggestion here that the State of Ohio expressly consented to being sued in federal court. The State of Ohio has clearly asserted its immunity in response to Plaintiffs' arguments as to Count *5*. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 121 (instructing courts to examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment).

After intervening, the Court considered the State of Ohio's arguments in opposition to Plaintiffs' first motion for preliminary injunction. The State of Ohio then responded to Plaintiffs' second motion for a preliminary injunction, in which Plaintiffs sought preliminary relief under Counts 3 through 5, expressly asserting its immunity to Count 5. Ds' Resp. to Pls' Second Mot. Prelim. Inj., ECF No. 32.

Plaintiffs' second motion seeking preliminary relief—Plaintiffs' first motion to address Count 5—and the pending motion for summary judgment, are the only two motions filed relating to Count 5. In response to *both* motions, the State of Ohio has expressly asserted its immunity afforded to it by the Eleventh Amendment as to Count 5. *Cf. Ku v. State of Tennessee*, 322 F.3d 431, 432 (6th

Cir. 2003) (denying the state sovereign immunity because the state failed to raise it before that court rendered a judgment on the merits).

Accordingly, the Court finds that the State of Ohio has not waived its immunity under the Eleventh Amendment of the United States Constitution as to Count 5. Therefore, the Court **GRANTS** the State of Ohio's motion for summary judgment on the basis of Eleventh Amendment immunity and **DISMISSES** Count 5 for lack of jurisdiction.

### D. Counts 6 through 9

Plaintiffs assert four counts against both Secretary Husted and Felsoci (Counts 6 through 9). Specifically, Plaintiffs bring a facial and as-applied challenge to Ohio Rev. Code § 3501.38(E)(1) alleging First Amendment and Equal Protection Clause violations (Counts 6 and 7), a challenge to the "retroactive application of secretary's interpretation of" that law (Count 8), and a due process challenge claiming a "constitutionally debilitating conflict of interests when [Professor Smith] adjudicated" the protest against Earl and Linnabary (Count 9).

Plaintiffs bring these claims pursuant to 42 U.S.C. § 1983, alleging violations of their rights under the First and Fourteenth Amendments to the United States Constitution. To prevail on a claim under § 1983, a plaintiff must show that a person acting under color of law deprived him of his rights secured by the United States Constitution or its laws. *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001).

Plaintiffs, Secretary Husted, and Felsoci move for summary judgment on these counts. ECF Nos. 205, 261, 264, 267.

Two preliminary matters to consider before addressing the substance of Plaintiffs' claims are: whether Plaintiffs claims are bared by laches and whether Felsoci was a state actor when he filed his protest against Earl and Linnabary.

Secretary Husted asserts that laches bars Plaintiffs' claims and moves for summary judgment on Counts 6 through 9 on that ground.

> "Laches is the 'negligent and unintentional failure to protect one's rights.'" *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002) (quoting *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991)). . . . Laches does not simply concern itself with the passage of time, but rather focuses on the question of whether a delay renders it inequitable to permit the claims to be enforced. *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 550 (6th Cir. 2003).  As such, a party asserting laches must show: (1) a lack of diligence by the party against whom the defense is asserted; and (2) prejudice to the party asserting it. *Ford Motor Company*, 342 F.3d at 550; *Nartron Corp.*, 305 F.3d at 408.

*McClafferty v. Portage Cnty. Bd. of Elections*, 661 F. Supp. 2d 826, 839–40 (N.D. Ohio 2009).

The Court assessed Secretary Husted's claim of laches in the Court's Order denying Plaintiffs' fourth motion for a preliminary injunction and determined that Plaintiffs failed to advance their claims in a diligent manner and likewise failed to seek an earlier trial date.  The Court also found compelling the evidence Secretary Husted presented that any change to the ballot at that point would create a substantial risk of voter confusion.  The Court found laches applied to Plaintiffs' due process conflict of interest claim (Claim 9); but the remaining

claims required extensive discovery.  However, given the obstructive tactics

employed by Felsoci's counsel during discovery, *see* Order 30–31, ECF No. 260,

the Court did not bar any claim by laches.  Given that Secretary Husted and

Felsoci have not articulated any other basis for finding laches, the Court again

declines to hold those claims barred by laches.

A second preliminary issue is whether Felsoci is a state actor under

§ 1983.  There is ongoing discovery as to some of the arguments related to this

preliminary issue, but the Court need not make a determination as to whether

Felsoci is a state actor with respect to Counts 6, 8, and 9 because regardless of

whether he is, Plaintiffs' claims fail.  However, as explained in greater detail

below, the Court **DENIES WITHOUT PREJUDICE** Felsoci's motion for summary

judgment as to Count 7 and **DENIES WITHOUT PREJUDICE** Plaintiffs' summary

judgment motion on Count 7 based on the ongoing discovery regarding this as a

ground for relief.

For purposes of the following analysis, the Court will consider Felsoci's

arguments alongside Secretary Husted's arguments.

### 1.  Count 6

Count 6 challenges the requirement in Ohio Revised Code § 3501.38(E)(1)

that petition circulators disclose their employers.  The Court addressed this

specific issue in its March 19, 2014 Order denying LPO's third motion for a

preliminary injunction.  ECF No. 80.  In that Order, the Court found that Plaintiffs

failed to demonstrate a likelihood of success on the merits of their claim that Ohio

Rev. Code § 3501.38(E)(1) violates the First Amendment.  Plaintiffs appealed that Order to the United States Court of Appeals for the Sixth Circuit, which affirmed the Court's denial of Plaintiffs' third motion for a preliminary injunction and affirmed this Court's determination that Plaintiffs failed to show a likely favorable determination as to its challenge to Ohio Revised Code § 3501.38(E)(1).  *See* ECF No. 107.

Plaintiffs continue to maintain that the employer identification requirement of Ohio Revised Code § 3501.38(E)(1) is unconstitutional on its face because it impermissibly burdens their First Amendment right to engage in political speech. They contend the statute cannot survive the exacting scrutiny standard as that standard is applied to such disclosure requirements.  *See* Pls' Mot. Summ. J. 19–20, ECF No. 261-1.  That is, Plaintiffs argue the employer identification requirement in the Ohio statute chills political speech and is not substantially related to a significant state interest.  *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 366–67 (2010).

Secretary Husted argues that "Plaintiffs' complete failure to present any evidence of 'chill,' the essential element of their facial First Amendment challenge, is fatal to their claim and 'renders all other facts immaterial.'"  Mot. Summ. J. 18, ECF No. 267.

Felsoci argues that "instead of articulating a new evidentiary or legal basis for their motion, Plaintiffs simply rehash their prior unsuccessful arguments and

incorporate by reference the evidence they previously submitted in their losing efforts." Felsoci's Supp. Mem. 1, ECF No. 265.

Secretary Husted and Felsoci both argue that Plaintiffs' facial challenge fails because the employer identification requirement places a minimal burden on Plaintiffs' First Amendment rights, and the requirement serves Ohio's significant interest in detecting and deterring fraud in the signature gathering process.

The Court found that Ohio Revised Code § 3501.38(E)(1) does not offend any of the constitutional principles set forth in *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999), *Citizens in Charge v. Brunner*, 689 F. Supp. 2d 992 (S.D. Ohio 2010), or *(WIN) Washington Initiatives Now v. Rippie*, 213 F.3d 1132 (9th Cir. 2000). To the contrary, the Court found those decisions all recognize that a state may legitimately require disclosure of the identities of candidate petition circulators and their employers provided paid circulators are not singled out for such disclosure. *Buckley*, 525 U.S. at 198–88 (approving of a state statute that required disclosure of the identities of all circulators); *Citizens in Charge*, 689 F. Supp. 2d at 993 (assessing Ohio statutes that require disclosure of all sources of money spent on all candidates); *WIN*, 213 F.3d at 1139 (striking down a state law that required only paid circulators disclose their identities). In addition, the Court determined that all three decisions acknowledge a states' substantial interest in requiring disclosure of the identity of those who pay petition circulators. *Buckley*, 525 U.S. at 203 ("Through the disclosure requirements that remain in place, voters are informed of the source [of money] . . . ."); *Citizens in*

*Charge*, 689 F. Supp. 2d at 993 (acknowledging that a state may legitimately require disclosure of the sources of money spent to support candidates); *WIN*, 213 F.3d at 1139 (recognizing the state's "interest[] in combating fraud and providing voters with useful information about the electoral process."). The Court found that, here, the challenged statute goes no farther than requiring all paid circulators to disclose their identity and the identity of those that pay them.

Neither Plaintiffs nor Secretary Husted nor Felsoci have submitted any evidence to supplement that record. The Court's assessment remains the same.

Accordingly, the Court holds that Plaintiffs have failed to demonstrate a genuine issue of material fact that Ohio Revised Code § 3501.38(E)(1) is unconstitutional on its face. As a result, the Court **GRANTS** Secretary Husted's and Felsoci's motions for summary judgment and **DENIES** Plaintiffs' motion as to Count 6.

### 2. Count 7

In Count 7, LPO asserts an equal protection selective enforcement claim relating to the disqualification of the LPO candidates in the 2014 general election, which is commonly referred to as the "Felsoci debacle."

The Court most recently addressed this claim in its denial of Plaintiffs' fourth motion for a preliminary injunction on October 17, 2014, ECF No. 260. Removal of Earl, Clark, and Linnabary from the ballot was the first occasion on which enforcement of the employer disclosure requirement had resulted in the disqualification of a statewide candidate. In the absence of a protest, Husted's

practice had been to not check petitions to see whether the employer name and address had been admitted.

As the Court has been informed of ongoing discovery concerning the claims raised by Plaintiffs in Count 7, Plaintiffs', Secretary Husted's, and Felsoci's motions are hereby **DENIED WITHOUT PREJUDICE** to refiling upon completion of discovery.

### 3. Count 8

In Count 8, LPO challenges Secretary Husted's retroactive application  of Ohio Revised Code § 3501.38(E)(1),  Comp. ¶ 369, ECF No. 188, through which Husted disqualified the LPO candidates from participating in the 2014 primary election.  The Court initially denied a preliminary injunction under this theory on March 19, 2014, ECF No. 80, and denied Plaintiffs' motion seeking another preliminary injunction under this same theory on October 17, 2014, ECF No. 260. During its second review, the Court recounted the Court of Appeals' affirmation of the Court's March 19, 2014 Order, and the Court reviewed Plaintiffs' additional arguments.

As Plaintiffs fail to present any new evidence in support of Count 8, the Court **GRANTS** Secretary Husted's and Felsoci's motions for summary judgment as to Count 8 and **DENIES** Plaintiffs' motion for summary judgment as to Count 8.

### 4. Count 9

Count 9 claims a violation of due process due to Professor Smith's alleged conflict of interest. This claim was preliminarily addressed and rejected in the Court's October 17, 2014 Order denying Plaintiffs' fourth motion for a preliminary injunction, ECF No. 260.

Plaintiffs alleged that before the protest hearing, Professor Smith participated in writing a pro bono amicus brief for Attorney General DeWine that was filed with the United States Supreme Court in an unrelated matter. Plaintiffs argued that since Professor Smith worked for the incumbent Attorney General, Professor Smith was biased against Linnabary.

The Court determined that Plaintiffs' counsel was apparently aware of Professor Smith's participation in the other case, see Order 26–27, ECF No. 260, and that, in any event, Professor Smith filed the amicus brief before the protest hearing. Moreover, Professor Smith testified that he had no contact with Attorney General DeWine, and his participation in the other matter was limited to filing that single amicus brief.

Without any new showing by Plaintiffs of evidence to contravene the foregoing or new support for their position, the Court finds that Plaintiffs' claim fails as a matter of law. Accordingly, the Court **GRANTS** Secretary Husted's and Felsoci's motion for summary judgment as to Count 9 and **DENIES** Plaintiffs' motion for summary for summary judgment as to Count 9.

## IV.    CONCLUSION

For the foregoing reasons, the Court:

- **GRANTS** Plaintiffs' motion for summary judgment, ECF No. 261, as to Counts 1 and 2 and **PERMANENTLY ENJOINS** Secretary Husted and the State of Ohio from enforcing the residency requirement for circulators of petitions for candidates and initiatives set forth in of Ohio Revised Code § 3503.06(C)(1)(a);

- **DENIES WITH PREJUDICE** Plaintiffs' motion for summary judgment, ECF No. 261, as to Counts 4, 6, 8 and 9, and **DENIES WITHOUT PREJUDICE** their motion as to Count 7;

- **GRANTS** Secretary Husted's motions for summary judgment, ECF Nos. 205 and 267, as to Counts 4, 5, 6, 8, and 9, **DENIES WITH PREJUDICE** the same as to Counts 1 and 2, and **DENIES WITHOUT PREJUDICE** the same as to Count 7;

- **GRANTS** the State of Ohio's motion for summary judgment, ECF No. 267, as to Counts 4 and 5 and **DENIES WITH PREJUDICE** the same as to Counts 1 and 2;

- **GRANTS** Felsoci's motion for summary judgment, ECF No. 264, as to Counts 6, 8, and 9 and **DENIES WITHOUT PREJUDICE** the same as to Count 7;

- **DENIES** as moot Plaintiffs' motion to maintain the status quo until final disposition, ECF No. 284;

- **DISMISSES** Count 3 as moot; and

- **DISMISSES** Count 5 for lack of jurisdiction.

Finally, on October 12, 2015, Plaintiffs filed an omnibus motion to supplement the record, ECF No. 335, notwithstanding the Court's Order stating that the Court will establish a briefing schedule for the omnibus filings. *See* O. 1–2, ECF No. 305. The Court reviewed the authorities and determines they do not affect any of the Court's decisions in this Opinion and Order. Accordingly, Secretary Husted and Felsoci shall not include any discussion of these authorities in their forthcoming omnibus briefs except to the extent the parties rely on these authorities with regard to their arguments as to Count 7.

The response to Plaintiffs' omnibus motion is due **within fourteen days** of the date of this Order. The Court limits responsive briefing to a single brief for Secretary Husted and a single brief for Felsoci. The Court imposes a **twenty page limit** on all response briefs. Plaintiffs' are not permitted to file a reply without Order of Court.

The Clerk shall remove ECF Nos. 205, 261, 264, 267, and 284 from the Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**