```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Libertarian Party of Ohio,
    et al.,                          :

        Plaintiffs,              :

    v.                               :    Case No. 2:13-cv-953

Jon Husted, et al.,              :    JUDGE MICHAEL H. WATSON
                                  Magistrate Judge Kemp
        Defendants.              :

## OPINION AND ORDER

    This case, the background of which appears in many other orders of the Court and which will not be repeated here, is before the Court to resolve a number of pending discovery-related motions. The substantive issues raised in those motions are all moot; discovery is complete. This order addresses the issue of whether any discovery sanctions should be imposed.

### I. Unresolved Requests for Sanctions

    Plaintiffs requested sanctions under Rule 37(a)(5) in their motion to compel Gregory Felsoci, the intervenor defendant, to produce documents (Doc. 299); in a separate motion for sanctions which addresses that and other aspects of discovery (Doc. 300); in their second motion to compel Mr. Felsoci's deposition (Doc. 316); and in their renewed motion to compel production of documents from non-party Matt Borges (Doc. 326). Each motion raises the question of whether the party opposing discovery - primarily Mr. Felsoci - did so in a way which was substantially justified.

### A. The Rule 26(e) Issue

    The most comprehensive motion is Doc. 300. It summarizes various difficulties with discovery, all of which are addressed

on their merits in prior court orders, and concludes that Mr. Felsoci's participation in this case was "political espionage" designed to thwart legitimate discovery and that his tactics were "of the 'scorched earth' variety." Id. at 2-3. Plaintiffs detail how difficult it was for them to uncover the fact that Terry Casey, a Republican Party operative, was paying Mr. Felsoci's legal fees in this case, and that money to do so was supplied directly by the Ohio Republican Party; how hard it was to compel Mr. Felsoci to sit for a deposition; how Mr. Felsoci's lawyers refused to supplement discovery responses to show that Mr. Casey or the Ohio Republican Party had made additional payments toward Mr. Felsoci's legal fees; and how Mr. Felsoci's lawyers did not fulfill their professional obligations to Mr. Felsoci when they did not inform him of their joint representation of himself and Mr. Casey and the agreement Mr. Casey made to pay Mr. Felsoci's legal fees - a failure which allowed Mr. Felsoci to deny any knowledge of who was paying his legal fees. The motion concludes by arguing that there was never any justification for Mr. Felsoci's failure voluntarily to produce documents showing that the Ohio Republican Party had made additional payments in 2015 toward Mr. Felsoci's legal fees - those documents are the subject of the motion to compel which is Doc. 299 - and it asks for sanctions including a default judgment against Mr. Felsoci on Count Seven of the complaint.

    In his opposing memorandum (which also opposes the request for sanctions made in Doc. 299), Mr. Felsoci points out that he did supply Plaintiffs with the supplemental documentation about payments of legal fees which are the subject of Doc. 299, and did so promptly after receiving a supplemental document request, something the Court suggested to Plaintiffs' counsel during a telephone conference held with respect to that motion. He argues that he had no obligation to do so prior to that, even though the

-2-

invoices were requested by Plaintiffs earlier in the case, because when that request was made, these particular invoices did not exist.  He contends that there is a split of authority about whether later-created documents must be produced in response to a document request when the earlier production was complete when made.  The 20-page reply memorandum (Doc. 306), which reads like a treatise on the duty to supplement found in Rule 26(e), disputes that such a split of authority exists and contends that Mr. Felsoci's argument about the materiality of the documents is so clearly incorrect that sanctions are appropriate.

As Mr. Felsoci portrays it, the cases are split on the question of whether a party must supplement a prior document production with documents which are responsive to the request but which did not exist at the time the original production was made.  He relies on, among other cases, Judge Litkovitz' decision in <u>Rhein v. Smyth Automotive, Inc.</u>, 2012 WL 3150953 (S.D. Ohio Aug. 2, 2012), as supporting that thesis.  There, one of the document requests asked for sales reports from January 1, 2005 to the present.  Defendants produced all such reports through the date of their initial response but did not supplement that production as additional reports were created.  The Court ordered only a portion of these new reports to be produced, reasoning that given "the strong policy favoring liberal discovery" and given that defendants themselves were relying on such reports which post-dated the original document production, the plaintiff was entitled to the supplemental documents to the extent they were relevant.  The Court also held, however, that an open-ended document request could not force a responding party to produce wholly irrelevant documents, even if they were responsive, because such documents could not render an earlier response incomplete or incorrect when made, which is the trigger for the duty to supplement as set out in Rule 26(e).  Mr. Felsoci also

cites to a case relied on in Rhein, MSC Software Corp. v. Altair Engineering, Inc., 2012 WL 1340445, *2 (E.D. Mich. Apr. 18, 2012), which stated, although not in its direct holding, that "Rule 26(e) does not place a continuing burden on a party responding to a discovery request to supplement with new information."  Also, there is a statement in a less recent case, Kingsway Financial Services, Inc. v. Pricewaterhouse-Coopers LLP, 2006 WL 1295409, *2 (S.D.N.Y. May 10, 2006), that "[s]urprisingly, with the exception of an unpublished and uncitable decision of the United States Court of Appeals for the Sixth Circuit, I have been unable to find any precedents addressing whether documents created after the service of a Rule 34 response need be produced in response thereto."  That court concluded that "[s]ubsequently created documents do not render a previously served document response incomplete as of the date of the response" and that even if they did, the rules did not specify how frequently responses to document requests had to be updated.

Plaintiffs certainly have the stronger argument that these cases, read closely, do not necessarily suggest a different rule about the duty to supplement with after-created documents; rather, they allow room for parties to debate whether responsive but irrelevant documents must be disclosed in a supplemental production, or whether open-ended requests for documents may ultimately create an undue burden on the producing party which would excuse production.  But this illustrates that the point is arguable.  Certainly, the Kingsway decision provides a fair amount of support for Mr. Felsoci's position.  Were the Court called upon simply to decide the question of whether Mr. Felsoci had a duty to supplement where, as here, the after-created documents were few in number and directly relevant to Plaintiffs' claims, it would probably side with Plaintiffs.  Plaintiffs have

-4-

the documents now, however, and the substantive issue is moot. Can the Court also say that Mr. Felsoci's position lacked substantial justification in a way that merits sanctions? That is a close call, but there is just enough justification for his argument that it falls on the non-sanctionable side. Perhaps with more development of the case law, his position will become untenable and sanctionable, but the Court cannot make that determination here, even though Mr. Felsoci would have been better-advised to produce the documents either voluntarily or in response to Plaintiffs' express request to supplement his earlier production. However, that spirit of cooperation has been absent in this case from the outset.

### B. The Second Felsoci Deposition

The second motion to compel a deposition of Mr. Felsoci also contains a request for sanctions. By way of brief background, Mr. Felsoci was deposed once in this case, pursuant to a court order issued after he objected to being deposed at all, so when Plaintiffs requested a second deposition, leave of court was required under Fed.R.Civ.P. 30(a). The basis for the request was the production of documents showing that the Ohio Republican Party was paying Mr. Felsoci's legal bills. Plaintiffs assert in their motion that Mr. Felsoci had no reasonable basis for refusing their request. They rely on this Court's decision in Fresenius Medical Care Holdings, Inc. v. Roxane laboratories, Inc., 2007 WL 764302 (S.D. Ohio March 9, 2007) for the proposition that if important documents surface after the first deposition of a witness has been taken, a second deposition is routinely permitted. After a conference with the Court, Mr. Felsoci agreed to submit to a brief second deposition, but the parties were apparently unable to come to agreement as to the parameters of that deposition. The Court subsequently issued a brief order directing that the deposition go forward (Doc. 322).

It reserved ruling on the balance of the issues raised by the motion.

In a lengthy opposing memorandum (Doc. 320), Mr. Felsoci offers a number of reasons why Plaintiffs' request for a second deposition should have been denied. He focuses on, among other factors, the untimeliness of the request, and on the fact that the newly-produced documents came not from Mr. Felsoci but from Terry Casey. Mr. Felsoci also points out that it was not very likely that he would have much to contribute on the issue since he was, for a long time, unaware of who was paying his lawyers, and he had no direct knowledge of any arrangements between Terry Casey and the Ohio Republican Party to pay his fees. The Court, as noted, rejected these rationales and ordered the deposition to go forward. Having considered them, however, in the context of Plaintiffs' request for sanctions, and keeping in mind that a second deposition of the same witness is presumptively improper, the Court finds no basis upon which to order sanctions.

Conceptually, there is some difficulty with the notion that a party can be sanctioned for simply insisting that the opposing party comply with a rule of civil procedure. Rule 30(a)(2) sets forth four different situations where leave of court to take a deposition must be sought if the parties do not stipulate to the deposition. They include taking a deposition earlier than allowed by Rule 26(d), taking a deposition when ten witnesses have already been deposed by that party, taking the deposition of a person in prison, and taking a second deposition of the same witness. At least one court has held that sanctions cannot be imposed under this rule against a party who refuses to stipulate to a deposition and forces the requesting party to seek leave of court. See Ashby v. McKenna, 331 F.3d 1148, 1150 (10th Cir. 2003)(holding that the prisoner plaintiff "was within his rights under Rule 30(a) in refusing to be deposed without court order.

His refusal cannot serve as a basis for sanction"). This Court need not go that far in its ruling, however, given that it was and is debatable how much Mr. Felsoci would have to add to the body of knowledge concerning the Ohio Republican Party's agreement to pay his legal fees, especially once that fact was learned from other sources and Plaintiffs obtained copies of the documents showing the payments. Whether Mr. Felsoci knew about that arrangement from the outset was the subject of his prior testimony and deposition (he said he did not), and nothing in the documents refutes that assertion. Given the lack of a strong showing that this deposition was crucial to Plaintiffs' claims, although the Court concluded, on balance, that a brief second deposition was warranted, Mr. Felsoci's refusal to consent to the deposition when asked, thus forcing Plaintiffs to file the motion to compel, was not without some justification.

### C. The Matt Borges Subpoena

The final request for sanctions comes in Plaintiffs' motion to compel a non-party, Matt Borges, to produce documents. In their motion (Doc. 326), Plaintiffs argued that Mr. Borges' assertion that he had no documents responsive to a subpoena issued by Plaintiffs was demonstrably false. The documents which had been requested were documents evidencing payments from the Ohio Republican Party to the firm of Zeiger, Tigges & Little, who represent Mr. Felsoci and Mr. Casey in connection with this litigation. Plaintiffs obtained evidence, after Mr. Borges said he had no such documents and that any such documents dated before March 3, 2015 had been lost or destroyed, that a payment was made on March 28, 2015 (although that payment had nothing to do with this case). Mr. Borges responded that he did not construe the subpoena to cover unrelated payments to the Zeiger firm. He supplied the documents as part of his response. In reply, Plaintiffs argued that the request was broad enough to cover all

-7-

payments made by the Ohio Republican Party to the Zeiger firm, and that payments even in unrelated matters were relevant to the issues in this case.

The production of the requested documents mooted the underlying issue. As to the request for sanctions, it appears to the Court that the failure to produce the documents in question was initially caused by a good faith disagreement, or misunderstanding, as to the scope of the subpoena. The need for the motion to have been filed was related, in part, to the time pressures of this litigation as opposed to the failure of Mr. Borges' counsel to respond in good faith to Plaintiffs' request for the documents once the additional payment came to light. This is not a situation which warrants sanctions.

### D. Additional Matters

The Court did reserve a ruling on whether sanctions were appropriate in connection with its order granting a motion to compel Terry Casey to produce documents in response to a subpoena. That order (Doc. 334) pointed out a striking lack of cooperation, transparency, and good faith efforts to resolve discovery disputes which had permeated this litigation from the outset, and it warned the parties that further conduct of that nature would undoubtedly lead to sanctions. The record does not reflect any further discovery disputes - probably because discovery was substantially complete by that time - and the Court sees little benefit in revisiting the issue of sanctions at this stage of the case.

The Court does add this cautionary note. The overall conduct of discovery in this case, especially on the part of Mr. Felsoci's and Mr. Casey's counsel, demonstrates a pattern of technical and begrudging responses and objections to discovery requests, which pattern was clearly designed to delay or obstruct the Plaintiffs' ability to learn that the Ohio Republican Party

-8-

was involved in the effort to keep Libertarian Party candidates off the ballot.  It would be difficult indeed to characterize what went on here as the construction, administration, or employment of the Rules of Civil Procedure by the parties "to secure the just, speedy, and inexpensive determination of every action and proceeding."  See Fed.R.Civ.P. 1.  However, the addition of the term "parties" to Rule 1 is of recent vintage (December 1, 2015).  Nevertheless, discovery in this case did not proceed consistently with the spirit of the prior version of Rule 1 even if each of the positions taken by counsel found just enough support in the language of the rules or the case law to prevent the imposition of sanctions.  Looking at the entire "body of work" in hindsight, it would probably have benefitted the parties and the interests of justice to have been less lenient with the parties (or non-parties, for that matter) at an early stage of the case simply in order to prevent the case from devolving into a series of bitter skirmishes about matters that, in the great majority of cases litigated in this Court, do not require the type of extensive and expensive motions practice which continually characterized this case.  Should these particular attorneys or parties come before the Court in future cases, the history of their conduct here will strongly influence the Court's approach to discovery, including sanctions, in order to insure that the goals of Rule 1 are met.

## II.  Order

Based upon the foregoing, all issues relating to any discovery motion addressed in this case, including but not limited to Docs. 299, 300, 316, and 326, are resolved.

## III.  Motion to Reconsider

In light of the age of this case, the Court notifies the parties that it is **reducing** the amount of time for filing a motion to reconsider with the District Judge.

Any party may, within seven days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a).  The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due seven days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp  
United States Magistrate Judge