UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Libertarian Party of Ohio,** *et al.*,

      **Plaintiffs,**

v.

**Jon A. Husted,
Ohio Secretary of State,**

      **Defendant.**

Case No. 2:13–cv–953

Judge Michael H. Watson

## OPINION AND ORDER

The Libertarian Party of Ohio ("LPO") and several of its members, leadership, and/or candidates ("Plaintiffs") move for summary judgment as to Count Seven of their third amended complaint, ECF No. 188. Mot., ECF No. 338. Ohio Secretary of State Jon A. Husted ("Secretary Husted") and Gregory A. Felsoci ("Felsoci") cross-move for summary judgment. ECF Nos. 344 & 345. The motions are ripe for review. Plaintiffs move to supplement the record. ECF No. 335. As that motion is unopposed,[1] the Court **GRANTS** Plaintiffs' motion to supplement the record. ECF No. 335. For the following reasons, the Court **DENIES** Plaintiffs' motion, ECF No. 338, and **GRANTS** Secretary Husted's and Felsoci's motions, ECF Nos. 344 and 345.

---

[1] Felsoci "objects" to supplemental exhibits five, six, eight, nine, ten, and twelve. Mot. 18, ECF No. 346. Felsoci's objections to exhibits eight and nine are moot because Plaintiffs submitted those exhibits in support of motions that the Court has since ruled on. Felsoci objects to the admissibility of exhibits five, six, ten, and twelve on relevancy grounds. The Court considers those arguments in this Opinion and Order.

## I. FACTS

In 2014, LPO's candidates attempted but failed to obtain ballot recognition. Subsequently, LPO amended its complaint in this case to include, *inter alia*, Count Seven, arguing that Secretary Husted and Felsoci violated the First Amendment and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution when Secretary Husted selectively enforced Ohio Revised Code § 3501.38(E)(1)—which requires petition circulators to disclose their employer, resulting in the LPO candidates' removal from the 2014 primary ballot. Since that date, the Court twice reviewed this claim and twice found it unlikely to succeed. *See* Oct. 17, 2014 Order, ECF No. 260 & Mar. 19, 2014 Order, ECF No. 80.

The parties have incorporated by reference their previous briefing as to Count Seven, *see* Ps' Mot. 1, ECF No. 338; Sec. Husted's Mot. 16, ECF No. 344, and further claim that they have uncovered new evidence in support of their position. Their evidence consists primarily of the depositions of Matt Borges ("Borges"), chair of the Ohio Republican Party ("ORP"), Terry Casey ("Casey"), a political strategist who orchestrated Felsoci's protest and is the current chairperson of the State of Ohio Personnel Board of Review, and Felsoci.[2] *See* ECF Nos. 335-2, 335-4, & 335-11. In addition, Plaintiffs submit evidence regarding the ORP's payment of $300,000 to Zeiger, Tigges, Little & Lindsmith,

---

[2] Felsoci also testified at the hearing held on September 29 and 30, 2014. His deposition testimony mirrors that of his testimony at the preliminary hearing, and neither that testimony nor his deposition substantiate Plaintiffs' claim.

LLP, ("the Zeiger law firm") in late 2014, early 2015, for its work representing Felsoci at the protest hearing and for other work it completed in the litigation of the instant suit. See Borges Dep. PAGEID ## 8603–05, 8610–12, 8630, ECF No. 335-11; Ps' Ex. 3, PAGEID ## 8496–501, ECF No. 335-3 (Zeiger law firm invoices and checks cut by the ORP).

Plaintiffs also submit, as "new evidence" the following additional e-mails and text message communications:

Between February 14 and February 21, 2014, Casey: (1) e-mailed members of Governor John Kasich's reelection campaign and the then political director of the ORP, David Luketic ("Luketic"), concluding with: "Plus, what is next!!" Ps' Ex. 3 PAGEID # 8438, ECF No. 335-3; (2) e-mailed members of Governor Kasich's campaign and Luketic with information regarding an initial assessment of what a protest of Plaintiffs' part-petitions would entail, *id.* at 8439–40, 8442 (stating "[c]learly we need to keep digging and digging on Oscar [Hachett]" (one of Plaintiffs' petition circulators)); (3) responded to an e-mail from Governor Kasich's political director with the Governor's reelection campaign, Jeffery Polesovsky ("Polesovsky"), in which Polesovsky stated that "we can continue to work down the action item list" and indicated that he was forwarding "petition samples to our attorneys to help their research process," *id.* at 8441; (4) sent an e-mail to Polesovsky and Luketic seeking morning updates, *id.* at 8443; (5) received an e-mail from Luketic in which Luketic forwarded the result of a records request from Public Records/Corporations Counsel, Chris Shea of

Secretary Husted's office, *id.* at 8444–45; (6) sent an e-mail to a leader of a "right for life" group and blind copied thirteen individuals, including members of Governor Kasich's gubernatorial office and his reelection campaign as well as Luketic with poling results about registered voters, *id.* at 8447–48 (commenting, "The Dems will be spinning big on the failure for this poll to account for the number of voters a Libertarian candidate will drain off."); (7) e-mailed Polesovsky and carbon copied Luketic stating, "Did push [TV Host Matt] Stainbrook earlier this morning for getting us a Libertarian potential client[,]" *id.* at 8449; (8) received e-mails from Luketic with an "Early Validity Report and "Lib. Petition Report" detailing the number of signatures collected by paid circulators, *id.* at 8450, 8460–70; (9) received an e-mail from Luketic with the subject line "Our Friends" of a forwarded e-mail from an attorney in Summit County that contained criminal history reports of LPO petition circulators, *id.* at 8451; (10) received an e-mail from Luketic with Felsoci's voting history, *id.* at 8459; (11) received an e-mail from Polesovsky with contact information for Chris Klym, *id.* at 8471; Casey Dep. PAGEID # 8374, ECF No. 335-2 (stating that Chris Klym helped with the "logistics"); and (12) emailed his attorney Chris Kylm's e-mail address, Ps' Ex. 3 PAGEID # 8472, ECF No. 335-3.

On February 26, 2014, Luketic texted Casey asking, "Would it help our case if one of the circulators signed [sic] a Democrat petitions this year." *Id.* at 8473. That same day, Luketic e-mailed Casey an ORP member's phone number

who was going to help "on some logistics." *Id*. at 8474; Casey Dep. PAGEID # 8377, ECF No. 335-2.

Between February 28 and March 1, 2014, Casey sent an e-mail to Jim Heath, host of the Ohio News Network, regarding the protest hearing. Ps' Ex. 3 PAGEID # 8475, ECF No. 335-3. Casey also exchanged e-mails with Daniel Mead of the Zeiger law firm and Polesovsky, whom Casey stated typically e-mailed him upon request "whatever he happened to have around," *id.* at 8476–78; Casey Dep. PAGEID # 8382, ECF No. 335-2.

On the day of the protest hearing, March 4, 2014, Casey sent several e-mails about the hearing and also addressed Borges' comments regarding ORP's involvement with the protest. Ps' Ex. 3 PAGEID ## 8479–86, ECF No. 335-3; *see also* Ps' Ex. 10 PAGEID # 8586, ECF No. 335-10. Casey e-mailed Chris Schrimpf ("Schrimpf"), the ORP communication director, about Borges' comments, to which Schrimpf responded: "The Dems are just pushing the misspeaking part. ORP has not had involvement in the complaint to this point. Let's talk more once the hearing is over." Ps' Ex. 10 PAGEID # 8584, ECF No. 335-10. Shortly after Borges apparently made a statement that insinuated that the ORP filed the protest, Borges then back-tracked and said that the ORP did not file the protest.

On March 7, 2014, Casey exchanged several e-mails about the results of the protest. See Ps' Ex. 3 PAGEID ## 8487–95, ECF No. 335-3. Between March 10, 2014 and May 6, 2014, Casey sent over twenty e-mails to a significant

number of individuals, including Luketic, Polesovsky, Matthew Damschroder ("Damschroder"), currently, the Deputy Assistant Secretary of State and Director of Elections for Secretary Husted, and Borges, with updates regarding the litigation pending before this Court and related appeals. *See, e.g.*, Ps' Ex. 12, PAGEID # 8670, ECF No. 335-12 (blind copying over fifty people a news article from the *Columbus Dispatch* on May 1, 2014). On March 17, 2014, Borges sent an e-mail in response to Casey's "latest" regarding Plaintiffs' third amended complaint and Borges' potential testimony at the Court's hearing. *Id.* at 8640–41. In addition, on both March 16 and 19, 2014, Borges forwarded to Casey an e-mail from his attorney about the on-going litigation. *Id.* at 8647 (this e-mail was also sent to members of Governor Kasich's campaign and Luketic), 8685.

Based on this new evidence, Plaintiffs claim Secretary Husted and Felsoci violated their First and Fourteenth Amendment rights. Plaintiffs, Secretary Husted, and Felsoci move for summary judgment on those claims.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); see also *Van Gorder v. Grand Trunk Western R.R., Inc.*, 509 F.3d 265 (6th Cir. 2007).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Pittman v. Cuyahoga Cnty. Dept. of Children and Family Serv.*, 640 F.3d 716, 723 (6th Cir. 2011). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman*, 640 F.3d at 723 (quoting *Anderson*, 477 U.S. at 251–52).

### III. ANALYSIS

#### A. Previous Court Rulings

The Court has already addressed Plaintiffs' as-applied challenge to Ohio Revised Code § 3501.38(E)(1) twice. In one decision ruling on Plaintiffs' motion for a preliminary injunction as to Count Seven, the Court found that Plaintiffs' contention that the payor disclosure requirement chilled their First Amendment

freedoms lacked merit. See Mar. 19, 2014 Order 22–24, ECF No. 80. The Court addressed Plaintiffs' contention that Secretary Husted selectively enforced Ohio Revised Code § 3501.38(E)(1) when Plaintiffs moved for preliminary relief a second time. In an October 17, 2014 Order, the Court determined that given the deposition testimony of Secretary Husted, Plaintiffs failed to carry their burden of showing that Secretary Husted's decision was influenced by political animus or controlled by Casey, members of Governor Kasich's campaign, or any other source of improper political animus. Oct. 17, 2014 Order 16, ECF No. 260. Plaintiffs do not submit any new evidence or argument that contradicts these preliminary findings. Therefore, Plaintiffs' selective enforcement claim based on Secretary Husted's decision fails against both Secretary Husted and Felsoci and the Court grants Secretary Husted's and Felsoci's motion for summary judgment on this ground.

In addition, in its October 17, 2014 Order, the Court addressed Plaintiffs' selective enforcement claim based on the filing of the protest and determined that the filing of the protest did not constitute a state action under § 1983 because it was filed by a private party. Id. at 21–22. As such, the Court found that Plaintiffs were unlikely to succeed on the merits of their selective enforcement claim because Felsoci's protest, even if it was filed on behalf of the ORP, did not constitute a state action because the protest process is for use by private citizens and is not a public function exclusively reserved to the state. Id.

Plaintiffs now move for summary judgment, arguing that they have uncovered new evidence that the protest was part of a conspiracy.

## B. Selective Enforcement

Plaintiffs bring their selective enforcement claim pursuant to § 1983, under which "a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." *Wilkerson v. Warner*, 545 F. App'x 413, 419 (6th Cir. 2013) (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358–59 (6th Cir. 2001)). To successfully plead a selective enforcement claim, Plaintiffs must satisfy the following three elements:

> First, [a state actor] must single out a person [or persons] belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, he must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997) (citing *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir.1991)).

Plaintiffs' theory is that Casey, Felsoci, Damschroder, members of Governor Kasich's gubernatorial office and reelection campaign, and members of the ORP collectively conspired to violate Plaintiffs' First Amendment rights because Felsoci filed the protest of Plaintiffs' part-petitions. Accordingly, the Court construes Plaintiffs' argument to be that, since Plaintiffs' alleged "new"

evidence demonstrates that there was a conspiracy between a private actor Felsoci, previously described by the Court as a hapless dupe for his utter lack of knowledge, intent, or conspiratorial objective, and state officials for purposes of § 1983.

A private party who conspires with state officials can be liable under § 1983. *See Jackim v. Sam's East, Inc.*, 378 F. App'x 556, 565 (6th Cir. 2010).

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985).

On October 17, 2014, the Court preliminarily determined that Plaintiffs' claim of conspiracy to selectively enforce § 3501.38(E)(1) lacked merit. Since that date, the Court has allowed Plaintiffs every opportunity to obtain whatever evidence may be available to substantiate their claim. After reviewing that evidence and Plaintiffs' argument, the Court finds that Plaintiffs still fail to demonstrate that there was any unlawful action cognizable under § 1983.

As an initial matter, Plaintiffs have previously averred ORP involvement and now argue that the "new" evidence shows that the ORP "ratified" the filing of the protest. This argument is without merit as the Court has already determined

that even if the protest was on behalf of the ORP, it did not constitute a state action under § 1983. *See* Oct. 17, 2014 Order 22, ECF No. 260.

### a. *Casey*

Plaintiffs aver that Felsoci and the ORP conspired with Casey and that Casey is a state actor. Plaintiffs submit e-mails sent between Casey, Borges, and Schrimpf that show Casey worked with individuals active in county branches of the ORP. While these messages show Casey's proclivity to involve himself in Republican politics, the messages do not provide any support for Plaintiffs' claim of civil conspiracy between a private actor and a state actor.

Plaintiffs argue that Casey—a state actor—acted under color of state law when he orchestrated the protest because he is the chairperson of the State of Ohio Personnel Board of Review. However, Casey's government position does not make all of his actions "under color of state law." *Memphis, Tennessee Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 903 (6th Cir. 2004) ("It is the nature of the act performed, not the clothing of the actor or even the status of being on-duty, or off-duty, which determines whether the officer acted under color of law." (citation omitted)). "[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). Plaintiffs do not submit any evidence that indicates that Casey was acting in his official capacity, that Casey used his role as chairperson to facilitate his actions, or that Casey's position relates to any of the acts Plaintiffs cite. *See id.* ("[A]cting

under color of state law requires that a defendant in a § 1983 action have exercised the power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed by the authority of state law.'" *West*, 487 U.S. at 48). In sum, Casey's actions to facilitate the protest were those of a private citizen and do not in any way constitute actions committed under color of state law.

### b. Matt Damschroder—Secretary Husted's Director of Elections

Plaintiffs allege that Casey sought and obtained the assistance of Damschroder and claim that because of the e-mails sent by Casey on March 4, 2014, *see* Ps' Ex. 3 PAGEID ## 8479, 8482–83, ECF No. 335-3, "it is finally clear that Damschroder was fully aware by March 4, 2014 of exactly what was going on. He knew all were involved and that Borges's comment was considered to be a problem." Ps' Resp. 7, ECF No. 347.

In response, Secretary Husted argues that Plaintiffs fail to establish any joint action between Casey and Damschroder because the "'new' evidence" that Plaintiffs rely upon consisted of "a few additional emails . . . that are of the same nature" as the evidence previously submitted to the Court. Sec. Husted's Mot. 14, ECF No. 344. Secretary Husted argues that the e-mails were "already in the public domain and were sent to many recipients" and that "[m]any were sent after the Secretary ruled on the protest." *Id.* (emphasis omitted).

Plaintiffs rely upon two e-mails. The first is an e-mail sent by Casey at 1:02 PM on March 4, 2014, which was the day of the protest hearing. Casey blind

copied Damschroder, Polesovsky, and Luketic on that e-mail, which was a forwarded message from Schrimpf about Borges' comment disclaiming the ORP's involvement. The second is an e-mail Casey forwarded to the same people containing an article from the *Plain Dealer* regarding the protest at 1:06 PM, also on March 4, 2014.

First, being blind copied on e-mails hardly equates to involvement in a conspiracy. *See Fisk v. Letterman*, 401 F. Supp. 2d 362, 377 (E.D.N.Y. 2010) ("Communications between a private and state actor, without more facts supporting a concerted effort or plan between the parties, are insufficient to make a private party a state actor.").

Second, Plaintiffs do not provide any evidence as to how these e-mails indicate that there was a plan or that Damschroder had committed, planned to commit, or asked someone else to commit an act to further that plan. If anything, the contents of the first e-mail would dispel any thoughts of the Plaintiffs' alleged "Borges Tie-in." Ps' Resp. 7, ECF No. 347. The Court is equally unconvinced that the e-mail sent four minutes later containing the *Plain Dealer* article does anything more than inform Damschroder about what he already knew.

Accordingly, the Court determines that these communications fail to show the existence of a civil conspiracy for purposes of § 1983.

### c. Governor Kasich

Plaintiffs argue that there was a "connection" between Governor Kasich and the protest because the Zeiger law firm's representation of Felsoci was arranged

by Governor Kasich's campaign. According to Plaintiff, since "[t]he Kasich Campaign, after all, knew ORP would pay," Ps' Mot. 2, ECF No. 338-1, Governor Kasich was involved in a conspiracy with Casey.

While Plaintiffs cite many communications between Casey and others, their assertion that Governor Kasich was somehow involved in the protest remains unsupported. The "new" communications indicate little more than what the Court has already found: Casey orchestrated the protests, coordinated legal representation with the same law firm that employs Casey's personal attorney, found a LPO member who would have legal standing to protest the part-petitions, and e-mailed a lot of people in the process. *See, e.g.*, Ps' Ex. 3, PAGEID ## 8439–40, 8442 (e-mails detailing the steps needed to protest the petitions); 8477–78 (e-mail in which Casey seeks information to provide Daniel Mead, attorney at the Zeiger law firm); 8471–72, 8474 (emails sent to Casey for purposes of contacting someone to reach out to potential protestors); 8459 (Casey received an e-mail with Felsoci's voting history), ECF No. 335-3. *See also* Casey Dep. PAGEID # 8395, ECF No. 335-2 (Casey stated, "I send out lots and lots of e-mails to lots and lots of people."). None of these communications provide any support for Plaintiffs' proposition that Governor Kasich had knowledge of a plan or made any action in furtherance of that plan. While the messages may have been sent to a few of Governor Kasich's gubernatorial office staff members, the messages have little, if any, significance without evidence of a plan or any actions taken by these individuals.

Plaintiffs argue that Governor Kasich's reelection campaign staff supported the protest and by way of their actions, Governor Kasich did so too. As support, they cite to e-mails that use words such as "we" and "our." See Ps' Mot. 3–4, ECF No. 338-1 (citing Ps' Ex. 3 PAGEID ## 8441, 8447, 8502, ECF No. 335-3). In all but a few of the instances, Casey authored the e-mail that used the words cited by Plaintiff. The only other remarks were by Polesovsky, a member of Governor Kasich's reelection campaign. Polesovsky's e-mails do not demonstrate joint action between *Casey and Governor Kasich* merely because a member of Governor Kasich's campaign staff sent messages to Casey.

Moreover, to the extent that a member of Governor Kasich's campaign staff was involved in the protest in his or her capacity as a staff member, that staff member is a private citizen working for a candidate, not for a state actor. *See Federer v. Gephardt*, 363 F.3d 754, 759 (8th Cir. 2004) (finding that member of the incumbent's staff "acted on behalf of [the incumbent] as a political candidate and a private person."). Therefore, any act committed by a member of the campaign staff—a private citizen—cannot qualify as under color of state law without the involvement of a state actor. To be clear, Plaintiffs fail to show any evidence that Governor Kasich had any knowledge of his campaign staff members' actions. Further, Plaintiffs fail to show how these private citizens' actions constitute state actions.

In sum, the Court finds that Plaintiffs failed to show a civil conspiracy and that Plaintiffs therefore fail to demonstrate how the filing of the protest constitutes

a state action under § 1983. In other words, Plaintiffs fail to identify any facts that are suggestive enough to back its allegations of a civil conspiracy, let alone able to withstand Secretary Husted's and Felsoci's motions for summary judgment. *See Nader v. McAuliffe*, 593 F.Supp.2d 95, 103 (D.D.C. 2009) *aff'd* 2009 WL 4250615 (D.C. Cir. Oct. 30, 2009).

Because there is no conspiracy between Secretary Husted and Felsoci or any other state actor and Felsoci, Plaintiffs' selective enforcement claim against Felsoci and Secretary Husted fails and Secretary Husted and Felsoci are entitled to summary judgment on this ground.

Additionally, the Court reiterates that there is no evidence of selective enforcement here—i.e. there is no direct evidence of discriminatory intent or political animus on behalf of a state actor as part of any conspiracy or on the part of Secretary Husted. Furthermore, Secretary Husted and Felsoci point out two examples of when part-petitioners were successfully protested due to failure to completely or correctly fill out the employer box such that those part petitions were also found invalid, *see* Sept. 29, 2014 PI Hearing Tr., PAGEID # 6605, ECF No. 247, Sec. Husted's Hearing Ex. E (Kristen Rine, elections counsel for Secretary Husted's office, determining part-petitions violated the employer disclosure requirement in 2011 because the part-petitions omitted the employer's name and address); *In re Protest of Evans*, Nos. 06AP–539 through 06AP–548, 2006-Ohio-4690, 2006 WL 2590613, at *3–4 (Ohio Ct. App. 10th Dist. Sept. 11, 2006) (finding that the petition circulators did not correctly identify

their employer between the two entities known to be involved in collecting signatures).

Accordingly, Secretary Husted and Felsoci are entitled to summary judgment on Count Seven of Plaintiffs' third amended complaint.

## IV. CONCLUSION

The Court **GRANTS** Plaintiffs' motion to supplement the record. ECF No. 335. The Court **GRANTS** Secretary Husted's motion for summary judgment, ECF No. 344, and Felsoci's motion for summary judgment, ECF No. 345, and **DENIES** Plaintiffs' motion for summary judgment, ECF No. 338.

The Clerk shall enter final judgment in this case.

Accordingly, given Plaintiffs' appeal has been dismissed and a mandate has been issued, the Court **DENIES AS MOOT** Plaintiffs' motion to modify, ECF No. 339, and motion seeking a stay pending an appeal, ECF No. 352.

The Court notes that it has previously denied all motions for attorneys' fees and costs without prejudice to refiling after entry of final judgment in this case and that any refiled motion is referred to the Magistrate Judge.

**IT IS SO ORDERED.**

/s/ Michael H. Watson
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**