# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
### 100 EAST FIFTH STREET, ROOM 540
### POTTER STEWART U.S. COURTHOUSE
### CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  July 29, 2016

Mr. Jordan S. Berman
Ms. Sarah E. Pierce
Ms. Halli Brownfield Watson
Office of the Attorney General of Ohio
30 E. Broad Street, 17th Floor
Columbus, OH 43215

Mr. Mark R. Brown
303 E. Broad Street
Columbus, OH 43215

Mr. Mark G. Kafantaris
625 City Park Avenue
Columbus, OH 43206

Mr. Steven Walter Tigges
Mr. John W. Zeiger
Zeiger, Tigges & Little
41 S. High Streeet, Suite 3500
Columbus, OH 43215

Mr. Christopher David Wiest
25 Town Center Boulevard, Suite 104
Crestview Hills, KY 41017

Re: Case No. 16-3537, *Libertarian Party, et al v. Jon Husted, et al*
Originating Case No. : 2:13-cv-00953

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk


Cathryn Lovely
Deputy Clerk

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0178p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

LIBERTARIAN PARTY OF OHIO; KEVIN KNEDLER;
AARON HARRIS; CHARLIE EARL,

                   *Plaintiffs-Appellants*,

     *v.*

JON HUSTED, Secretary of State,

                   *Defendant-Appelle*,

STATE OF OHIO; GREGORY A. FELSOCI,

                   *Intervenors-Appellees*.

> No. 16-3537

———————————

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:13-cv-00953—Michael H. Watson, District Judge.

Decided and Filed: July 29, 2016

Before: MOORE, CLAY, and DONALD, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Mark G. Kafantaris, Columbus, Ohio, Mark R. Brown, Columbus, Ohio, for
Appellant. Halli Brownfield Watson, Jordan S. Berman, Sarah E. Pierce, OFFICE OF THE
OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees Husted and State of Ohio.
Steven W. Tigges, John W. Zeiger, ZEIGER, TIGGES & LITTLE LLP, Columbus, Ohio, for
Appellee Felsoci.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. The Libertarian Party of Ohio (the "Libertarian Party," "the Party," or "LPO"), together with members of its party leadership and its 2014 gubernatorial candidate, appeal from the district court's grant of summary judgment in favor of Ohio Secretary of State Jon Husted, the State of Ohio, and Gregory Felsoci. The Libertarian Party raises three issues on this appeal: (1) whether state actors selectively enforced Ohio Revised Code § 3501.38(E)(1) against Libertarian Party candidates in violation of the First and Fourteenth Amendments; (2) whether SB 193 violates the Equal Protection Clause of the Fourteenth Amendment in requiring newly created minor parties to nominate candidates for the general election by petition, rather than by primary election; and (3) whether the State of Ohio was entitled to Eleventh Amendment immunity on the Libertarian Party's state-law claim. For the reasons discussed below, we **AFFIRM**.

## I. BACKGROUND

This case arises out of a long history of challenges to Ohio election laws, and specifically challenges brought by the Libertarian Party to access the ballot in Ohio. To best understand the current dispute, a brief foray into this background is needed.

### A. A Recent History of Minor Party Ballot Access in Ohio

As our Circuit explained in a related opinion, "the LPO has struggled to become and remain a ballot-qualified party in Ohio through frequent litigation." *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 405 (6th Cir. 2014). Throughout this struggle, "[t]he LPO has successfully challenged Ohio laws burdening its access to the ballot," *id.*, including a significant victory in 2006 in *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006).

In *Blackwell*, we considered Ohio's then-existing "two methods by which a party c[ould] qualify for the primary election" and reach the general-election ballot. *Id.* at 582. First, "[a]ny party that, in the preceding state election, receive[d] at least five percent of the vote for its

candidate for governor or president automatically qualife[d] for the next statewide election." *Id.*
at 582–83. Second, parties receiving less than the five-percent threshold needed to "file a
petition no later than 120 days prior to the date of the primary election [and 364 days prior to the
general election] that contain[ed] the number of signatures equal to one percent of the total votes
cast in the previous election." *Id.* at 583. A party that failed to meet these requirements was
barred from "participat[ing] in the primary and [was] thus prevented from appearing on the
general election ballot." *Id.*

The Libertarian Party argued that this law violated its First and Fourteenth Amendment
rights, and we agreed. Considering the signature requirement and the extremely early petition-
filing deadline in combination, we held that the law "impose[d] a severe burden on the First
Amendment rights of the LPO," *id.* at 591, and that the state failed to justify this burden with a
sufficiently weighty state interest. *Id.* at 591–95.

Following our decision in *Blackwell*, "the Ohio General Assembly [took] no action to
establish ballot access standards for minor political parties." *Libertarian Party of Ohio v.
Brunner*, 567 F. Supp. 2d 1006, 1009 (S.D. Ohio 2008). In the absence of legislation, in 2007,
Ohio's Secretary of State issued Directive 2007-09 (the "Directive"). *Id.* at 1010. The
Secretary's Directive maintained Ohio's "requirement that minor parties nominate their
candidates by primary election," but changed the party qualification process by requiring minor
parties to "obtain petition signatures equal to one-half of one percent of the votes cast for
governor in the" last general election and to "file nominating petitions 100 days before the
primary," still "nearly a full year before the . . . general election." *Id.*

The Libertarian Party challenged the Directive in federal court, and the district court
granted a preliminary injunction preventing the Directive from going into effect. First, the
district court concluded that the federal constitution mandates that "only the legislative branch"
of a state, not a state's Secretary of State, "has the authority . . . to prescribe the manner of
electing candidates for federal office." *Id.* at 1011. Moreover, the district court concluded that,
even assuming that the Secretary had the authority to issue the Directive, it was likely
unconstitutional nonetheless because the Directive still imposed impermissible burdens on minor
political parties. *Id.* at 1013. "[I]n the absence of constitutional, ballot access standards" in

Ohio, the district court ordered that the Libertarian Party's candidates "be placed on the 2008 general election ballot for the state of Ohio." *Id.* at 1015–16. The Secretary of State granted the Libertarian Party ballot access through additional directives in 2011. *See Libertarian Party of Ohio v. Husted*, No. 2:11-CV-722, 2011 WL 3957259 (S.D. Ohio Sept. 7, 2011), *vacated as moot*, 497 F. App'x 581 (6th Cir. 2012).

In 2011, Ohio enacted HB 194, which required that minor parties file petitions with the requisite number of signatures 90 days before the primary, "a mere 30 days" earlier than the law found unconstitutional in *Blackwell*. *Id.* at *1. At the same time, the law "did nothing" to change the quantity of signatures required. *Id.* Finding that the law imposed an unconstitutional burden on the ability of minor parties to access the ballot, a federal district court granted a preliminary injunction and prevented Ohio from implementing the statute's changes. *Id.* at *6. HB 194 was later repealed following a referendum. *Libertarian Party of Ohio*, 497 F. App'x at 583. The Ohio Secretary of State subsequently issued an additional directive in 2013 that "continued the practice of recognizing minor political parties and granting them access to the ballot for both the primary and general elections." *Libertarian Party of Ohio v. Husted*, No. 2:13-CV-953, 2014 WL 11515569, at *2 (S.D. Ohio Jan. 7, 2014).

The Libertarian Party initiated the current lawsuit against Secretary Husted on September 25, 2013, in the U.S. District Court for the Southern District of Ohio. R. 1 (Compl. at 1) (Page ID #1). The Libertarian Party's complaint alleged claims under the First Amendment of the U.S. Constitution against Ohio's law that imposed residency requirements on petition circulators. *Id.* at 6–7 (Page ID #6–7). The State of Ohio intervened as a defendant. R. 5 (Mot. to Intervene) (Page ID #23). The district court preliminarily enjoined enforcement of Ohio's circulator law on November 13, 2013. R. 18 (11/13/13 D. Ct. Op. at 1) (Page ID #143).

## B. SB 193 and the Libertarian Party's Amended Complaint

SB 193 was signed into law on November 6, 2013, and made several changes to the methods by which minor parties can qualify for the ballot in Ohio. *Libertarian Party of Ohio*, 2014 WL 11515569, at *2. SB 193 explicitly voided the Secretary's prior directives that qualified the Libertarian Party and other minor parties for the ballot, resulting in the requirement

that these parties would need to qualify for the ballot as new parties.  *Id.*; *see* SB 193, 130th Gen. Assemb., at § 3 (Ohio 2013).  The law also amended Ohio law to create two methods by which a political party can qualify as a "[m]inor political party" in Ohio.  *See* Ohio Rev. Code § 3501.01(F)(2).

First, a political party may qualify by obtaining at least "three percent of the total vote cast" for governor or president "at the most recent regular state election." § 3501.01(F)(2)(a).  A party that obtains minor-party status via this vote-counting method remains qualified as a minor party "for a period of four years."  *Id.*  Second, for new political parties that were not on the ballot in the preceding election or for parties that failed to meet the three-percent threshold in the prior election, SB 193 provides that a political party may qualify as a minor party through petition. § 3501.01(F)(2)(b).  A party forming via petition must:  (1) collect signatures from "qualified electors equal in number to at least one percent of the total vote for governor or president" at the most recent election; (2) file a petition that is signed by at least "five hundred qualified electors from each of at least . . . one-half of the congressional districts in" Ohio; and (3) file the petition more than 125 days before the upcoming general election. § 3517.01(A)(1)(b).  The Secretary of State must determine the sufficiency of the petition at least 95 days before the general election. § 3517.012(A)(2)(d).

SB 193 removed the requirement that all parties nominate their candidates for the general election through a primary.  Instead, a petition-formed party must nominate a candidate for the general election by petition. § 3517.012.  This candidate-nominating petition must be filed "[n]ot later than one hundred ten days before the" general election. § 3517.012(B)(1).  For statewide office, the candidate-nominating petition must be "signed by at least fifty qualified electors who have not voted as a member of a different political party at any primary election within the current year or the immediately preceding two calendar years." § 3517.012(B)(2)(a).  For local office, five qualifying signatures are required. § 3517.012(B)(2)(b).

SB 193 also established processes by which individuals can protest the filing of a party-formation petition or a candidate-nominating petition. § 3517.012(B)(3)(b).  Specifically, written protests against candidate-nominating petitions "may be filed by any qualified elector eligible to vote for the candidate whose nominating petition the elector objects to not later than

the seventy-fourth day before the general election," and the protest may challenge the sufficiency of the petition on several grounds.  § 3513.263.  Candidates who file "insufficient" petitions may "not appear on the ballot in the general election."  § 3517.012(C)(2).

On November 8, 2013, the Libertarian Party amended its complaint in the Southern District of Ohio to add counts challenging SB 193.  R. 16 (Am. Compl. at 16) (Page ID #101). Count Three alleged a due process and First Amendment challenge to SB 193 against Secretary Husted; Count Four alleged an Equal Protection and First Amendment challenge to S.B. 193 against Secretary Husted; and Count Five alleged a challenge under the Ohio Constitution against both Secretary Husted and the intervenor-defendant State of Ohio.  *Id.* at 15–18 (Page ID #101–04).  The State of Ohio answered and asserted Eleventh Amendment immunity to Count Five.  R. 21 (State of Ohio Answer at 11) (Page ID #222).

On January 7, 2014, the district court preliminarily enjoined SB 193 from taking effect for the 2014 election, finding that because the Libertarian Party expected to be ballot-qualified for the 2014 election under the Secretary's 2013 Directive, the retroactive application of SB 193 to that election—voiding the Secretary's Directive and requiring that the Libertarian Party start from scratch to qualify for the ballot—violated due process.  *Libertarian Party of Ohio v. Husted*, No. 2:13-CV-953, 2014 WL 11515569, at *10–11 (S.D. Ohio Jan. 7, 2014).  The district court did not address claims that related to the Ohio Constitution or the federal Equal Protection Clause.

## C.  The 2014 Election and Felsoci's Protest of LPO Candidates

As a result of the district court's injunction, the Libertarian Party remained a recognized political party in Ohio, and it continued its efforts to nominate candidates to appear on the ballot for the 2014 primary election.  The political drama that ensued forms a large basis of the current appeal.  In November 2013, the Libertarian Party hired Oscar Hatchett and Sara Hart to collect signatures for the Party's statewide candidates such as Charlie Earl, the 2014 LPO gubernatorial candidate.  *Libertarian Party of Ohio*, 751 F.3d at 407.  Hatchett and Hart, together with other circulators, collected a sufficient number of signatures; after the signatures were verified by the

local boards of elections, Secretary Husted certified Earl as a Libertarian candidate for the 2014 primary.  *Id.* at 407–09.

On February 21, 2014, Earl's certification was protested by Gregory Felsoci, an apparent member of the Libertarian Party.  *Id.* at 409.  In a prior opinion, we described Felsoci as a likely "tool of the Republican Party."  *Id.*  After being shown documents from "a Republican friend, John Musca," Felsoci came to believe that "LPO was gathering 'votes' without disclosing that those who gathered them were being paid to do so."  *Id.*  Musca asked Felsoci to get involved with pursuing the matter, and Felsoci agreed.  "Soon afterward, the Zeiger, Tigges, and Little law firm contacted Felsoci and offered its assistance."  *Id.*  Felsoci did not pay legal fees to Zeiger, nor was Felsoci aware of who was paying the attorney fees.  *Id.*  Felsoci protested Earl's certification on the basis of Ohio Revised Code § 3501.38(E)(1), arguing that the statute "requires independent contractors, not just employees, to complete the employer information box," which certain circulators failed to do.  *Id.*

After voluminous discovery in the district court, the Libertarian Party learned more about the facts leading up to Felsoci's protest.  This information primarily centered on Terry Casey, an appointed member of the Ohio Board of Personnel Review, self-employed political consultant, and member of the Republican Party.  R. 241-1 (8/28/14 Casey Dep. at 8–12) (Page ID #6215-19).  Beginning on February 14, 2014, one week before the filing of Felsoci's protest, Casey sent several emails to the personal email addresses of Matt Carle, Dave Luketic, and Jeff Polesovsky, individuals associated with John Kasich's gubernatorial campaign and with the Ohio Republican Party.  *See* R. 335-3 (July 6 Docs. at 2–4) (Page ID #8438–40); R. 335-2 (9/16/15 Casey Dep. at 8–10) (Page ID #8345–47).  Casey discussed a conversation that he had had with his lawyer, John Zeiger, concerning the signature-gathering efforts of Libertarian candidates and the legal bases upon which the signatures might be challenged under Ohio law.  R. 335-3 (July 6 Docs. at 3–4) (Page ID #8439–40).  Casey continued to send similar emails throughout the week, noting a "need to keep digging and digging on Oscar [Hatchett].  He could be a key 'star' in this future production/show."  *Id.* at 6 (Page ID #8442); *see also* R. 240-1 (Casey Email Ex. at 7) (Page ID #6164).

Chris Schrimpf, the Ohio Republican Party's Communications Director, submitted a public-records request to the Secretary of State's Office on February 13, 2014, "for all Form 14's filed for all Libertarian candidates for statewide office."  R. 335-3 (July 6 Docs. at 9) (Page ID #8445).  On February 18, 2014, Luketic forwarded the forms that Schrimpf received to Casey.  *Id.* at 8–9 (Page ID #8444–45).  Casey emailed his attorneys on February 18—with Polesovsky, Luketic, and Carle blind copied—and noted that Hatchett and Hart's petitions did not "ha[ve] anything filled out to reflect that they admitted being paid for this petition work."  R. 240-1 (Casey Email Ex. at 8) (Page ID #6165).  On February 19, Luketic sent the group a "validity report" analyzing the validity of Earl's petition signatures.  *Id.* at 13 (Page ID #6170).

On February 19, 2014, Casey emailed Polesovsky and Luketic and indicated his ongoing search for "a Libertarian potential client."  R. 335-3 (July 6 Docs. at 13) (Page ID #8449).  According to Casey, he "asked a number of different people around the state if they knew of any Libertarian folks . . . who might have an interest in filing."  R. 335-2 (9/16/15 Casey Dep. at 29–30) (Page ID #8366–67).  At some point, Felsoci was identified as a potential Libertarian Party member who would have standing to file a protest against a Libertarian candidate.  *See id.* at 34–35 (Page ID #8371–72).  Luketic forwarded Felsoci's voting history to Casey on February 20, 2014.  R. 335-3 (July 6 Docs. at 23) (Page ID #8459).  On February 21, 2014, Polesovsky gave Casey the contact information for an attorney, and Casey sent Felsoci's name and phone number to the attorney to assist Felsoci in signing the documents needed for filing his protest.  R. 335-3 (July 6 Docs. at 35) (Page ID #8471); R. 335-10 (Oct. 6 Docs. at 22) (Page ID #8589); *see also* R. 335-2 (9/16/15 Casey Dep. at 36) (Page ID #8373).

The cast of characters relevant to this appeal also includes Matthew Damschroder, the Director of Elections for the Ohio Secretary of State.  R. 227-1 (8/26/14 Damschroder Dep. at 7) (Page ID #5226).  In December 2013, Luketic sent Damschroder a text message asking Damschroder if there were "any petitions gathering from [] Charlie Earl the LIB candidate?"  R. 227-1 (8/26/14 Damschroder Dep. at 305 (Ex. 16)) (Page ID #5524).  Damschroder responded that he had not heard anything but that he would "keep [his] ear to [the] ground."  *Id.*  Casey testified that, at some point around the date of February 17, he "mentioned" to Damschroder that he "w[as] looking at doing some kind of" protest filing.  R. 241-1 (8/28/14 Casey Dep. at 54–55)

(Page ID #6261–62).  On February 18, 2014, Damschroder emailed members of his staff and indicated that he "got a call tonight that a protest is likely to come by Friday against Earl, probably from an unaffiliated voter . . . and [it] will be based on" payment disclosure information.  R. 227-1 (8/26/14 Damschroder Dep. at 257 (Ex. 3)) (Page ID #5476). Damschroder does not remember who made the phone call that he referenced in his email, although he testified that "[i]t could have been" Casey.  R. 247 (9/29/14 H'rg Tr. Vol. 1 at 123) (Page ID #6609).

The deadline for filing a protest was February 21, 2014, at 4:00 PM.  Damschroder emailed his staff at 3:32 PM on February 21 and stated that "[i]f any protests are filed, please let me know as soon as they come in."  R. 227-1 (8/26/14 Damschroder Dep. at 259 (Ex. 5)) (Page ID #5478).  Damschroder also emailed his staff earlier in the afternoon and instructed them that "if we get a protest filed with us today, even if it is after 4pm, please accept it, date/timestamp it, and give it to Sally [Warren] to disseminate."  *Id.* at 260 (Ex. 6) (Page ID #5479).

Felsoci filed his protest in advance of the 4 PM deadline.  The Secretary's Office then "referred the protest to Bradley Smith, a hearing officer, to conduct a hearing and issue a report and recommendation as to the disposition of the protest."  *Libertarian Party of Ohio*, 751 F.3d at 409–10.  A hearing was held on March 4, 2014, and Smith issued a report on March 7, 2014, concluding that the circulators failed to make necessary disclosures in the employer-information box.  *Id.* at 410.  Smith recommended that these petition papers be ruled invalid.  *Id.*  Secretary Husted adopted Smith's recommendation; as a result of Secretary Husted invalidating these signatures, Earl did not have enough signatures to be eligible to appear as a candidate in the primary election.  *Id.*

Seeking to avoid the serious consequences of this disqualification, the Libertarian Party filed a second amended complaint in the district court on March 7, 2014, R. 56-1 (Second Am. Compl. at 1) (Page ID #989), in addition to a motion for a preliminary injunction and temporary restraining order.  R. 57 (Pl. Mot. for Prelim. Inj. and TRO at 1) (Page ID #1041).  The Libertarian Party's second amended complaint brought several challenges against the employer-disclosure requirements of § 3501.38(E)(1).  Felsoci moved to intervene as a defendant, and the district court granted his motion on March 20, 2014.  R. 85 (03/20/14 D. Ct. Order at 3) (Page ID

#2189).  After holding an evidentiary hearing, the district court denied the Libertarian Party's motion for a preliminary injunction on March 19, 2014.  R. 80 (03/19/14 D. Ct. Op. at 1) (Page ID #2146).  The Libertarian Party appealed the denial of the preliminary injunction to this court, and we affirmed on May 1, 2014, concluding that the Libertarian Party had not "establish[ed] a substantial likelihood of success on the merits of its due process challenge" or its First Amendment overbreadth challenge.  751 F.3d at 421, 424.

## D.  Third Amended Complaint and Proceedings Below

The Libertarian Party filed a third amended complaint on September 11, 2014.  R. 188 (Third Am. Compl.) (Page ID #3796).  Among other claims, the Libertarian Party asserted that Felsoci, Casey, and the Secretary of State's office selectively enforced the employer-disclosure requirements of § 3501.38(E)(1) against the Libertarian Party in violation of the First and Fourteenth Amendments.  *Id.* at 50 (Page ID #3845).  On September 15, 2014, the Libertarian Party filed motions for a preliminary injunction and a temporary restraining order, seeking to place its candidates' names on the ballot for the 2014 general election.  R. 192 (Pl. Fourth Mot. for Prelim. Inj.) (Page ID #3877); R. 194 (Mot. for TRO) (Page ID #3911).  The district court denied the Libertarian Party's request for a temporary restraining order on the basis of laches, R. 225 (9/24/14 D. Ct. Op. at 2) (Page ID #5142), and denied the Libertarian Party's motion for a preliminary injunction because the Party could not establish that Secretary Husted's decision was influenced by political animus or that Felsoci engaged in state action in filing his protest, R. 260 (10/17/14 D. Ct. Op. at 19, 22) (Page ID #7092, 7095).

Following the district court's denial of a preliminary injunction, the parties filed motions and cross-motions for summary judgment.  *See, e.g.*, R. 261-1 (Mem. in Supp. of Mot. for Summ. J.) (Page ID #7112); R. 267 (Def. Resp. and Cross-Motion for Summ. J. at 1) (Page ID #7191).  These motions addressed the Libertarian Party's claims that SB 193 violates the Ohio Constitution and the Equal Protection Clause—claims that the district court did not address in its January 7, 2014 preliminary-injunction ruling—in addition to the claim that § 3501.38(E)(1) was selectively enforced in violation of the First and Fourteenth Amendments.  *See, e.g.*, *id.* at 11, 17

(Page ID #7209, 7215).[1]   The district court denied the Libertarian Party's claim that SB 193 violated the Equal Protection Clause, both on its face, R. 285 (03/16/15 D. Ct. Op. at 32) (Page ID #7516), and as applied, R. 336 (10/14/15 D. Ct. Op. at 14) (Page ID #8700).   The district court also dismissed Count Five (regarding the Ohio Constitution) as barred by the Eleventh Amendment.   *Id.* at 18 (Page ID #8704).

The district court permitted discovery to continue with regards to the Libertarian Party's selective-enforcement claim, *id.* at 21 (Page ID #8707), and the parties filed additional summary-judgment motions that addressed the selective-enforcement claim alone, *see* R. 338 (Pl. Renewed Mot. for Summ. J. at 1) (Page ID #8717); R. 344 (Husted Count Seven Mot. for Summ. J. at 1) (Page ID #8747); R. 346 (Felsoci Count Seven Cross Mot. for Summ. J. at 1) (Page ID #8767). On May 20, 2016, the district court granted summary judgment in favor of the defendants on the selective-enforcement claim.   *Libertarian Party of Ohio v. Husted* , --- F. Supp. 3d ----, 2016 WL 2977286, at *1 (S.D. Ohio May 20, 2016).   The district court entered final judgment on the same day, R. 370 (Judgment at 1) (Page ID #8948), and LPO timely appealed, R. 371 (Notice of Appeal at 1) (Page ID #8957).

## II.  DISCUSSION

### A.  Federal Claims

On appeal, the Libertarian Party raises two challenges under the U.S. Constitution.   First, the Libertarian Party contends that Felsoci, Casey, the Ohio Republican Party, and Damschroder selectively enforced Ohio Revised Code § 3501.38(E)(1) against the Libertarian Party in violation of the First and Fourteenth Amendments.   Second, the Libertarian Party argues that SB 193 violates the Equal Protection Clause because SB 193 denies the Party the opportunity to participate in the primary election.

---

[1]Other third parties not currently before us intervened as plaintiffs and asserted Equal Protection and First Amendment challenges to SB 193; these intervening plaintiffs also filed motions for summary judgment, R. 165 (Intervening Pl. Mot. for Summ. J. at 1) (Page ID #3261), to which the state responded and moved for cross-summary judgment, *see, e.g.*, R. 185 (State Cross-Mot. for Summ. J. on Intervenor-Plaintiff Challenge at 1).   LPO joined in the intervening plaintiffs' motion for summary judgment in filing its motion for summary judgment, and Secretary Husted responded to LPO's motion for summary judgment by referring to his prior cross-motion.   For simplicity, we avoid an exhaustive account of this complicated procedural history.

### 1. Mootness

Prior to addressing the merits, we must first determine our jurisdiction to hear this case. "[A] federal court has a continuing duty to ensure that it adjudicates only genuine disputes between adverse parties, where the relief requested would have a real impact on the legal interests of those parties." *Blackwell*, 462 F.3d at 584. "If 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome,' then the case is moot and the court has no jurisdiction." *Id.* (quoting *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979)). Here, LPO's claims arose in advance of the 2014 election, an election that has already occurred. There is an exception to the mootness doctrine, however, for "disputes capable of repetition, yet evading review." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). "The exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (internal quotation marks omitted).

Secretary Husted and the State of Ohio do not assert that the Equal Protection challenge to SB 193 is moot, and for good reason. Courts have repeatedly emphasized that "[l]egal disputes involving election laws almost always take more time to resolve than the election cycle permits," and thus election-law challenges typically satisfy the first prong of the exception "easily." *Blackwell*, 462 F.3d at 584. Moreover, parties that assert challenges to ballot-access laws frequently satisfy the second prong as well because it is "likely that the [party] will once again seek to place candidates" on the ballot and these parties will once again "face the requirements" imposed by a still-existent election law when they do. *Id.* at 584–85; *see also Lawrence v. Blackwell*, 430 F.3d 368, 371–72 (6th Cir. 2005). LPO's constitutional challenge to SB 193's requirements is not moot.

Secretary Husted and the State of Ohio do contend, however, that the conclusion of the 2014 election has mooted the Libertarian Party's' selective-enforcement claim. Husted Appellee Br. at 13. We disagree. As stated above, the Libertarian Party intends to run candidates in the future. Reply Br. at 19. The Libertarian Party asserts that members of the Ohio Republican Party and Ohio state government have conspired and will continue to conspire to selectively

enforce election laws against it in order to remove its candidates from the ballot.  *See id.* at 19–20.  "The Supreme Court has stated that the purpose of the second prong [of the capable-of-repetition exception] is to determine 'whether the controversy was *capable* of repetition and not . . . whether the claimant had demonstrated that a recurrence of the dispute was more probable than not."  *Lawrence*, 430 F.3d at 371 (quoting *Honig v. Doe*, 484 U.S. 305, 319 n.6 (1988)).  The selective-enforcement controversy alleged by the Libertarian Party is capable of recurring, particularly given the "'somewhat relaxed' repetition standard" that our Circuit recognizes in election cases.  *Blackwell*, 462 F.3d at 585 (quoting *Lawrence*, 430 F.3d at 372).  We thus turn to the merits.

### 2. Selective-Enforcement Claim

The Libertarian Party first argues that the district court erred in granting summary judgment in favor of the defendants on the Libertarian Party's selective-enforcement claim.  We review the district court's grant of summary judgment de novo.  *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 542 (6th Cir. 2014).  Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Libertarian Party argues that Felsoci, Casey, Damschroder, and others conspired to selectively enforce Ohio Revised Code § 3501.38(E)(1) in violation of the Libertarian Party's First and Fourteenth Amendment rights.  The Libertarian Party brought this action under 42 U.S.C. § 1983.  "Section 1983 makes liable only those who, while acting under color of state law, deprive another of a right secured by the Constitution or federal law."  *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005).  A selective-enforcement claim requires the plaintiff to demonstrate the following elements:

> First, [the state actor] must single out a person belonging to an identifiable group, such as . . . a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations.  Second, he must initiate the prosecution with a discriminatory

purpose. Finally, the prosecution must have a discriminatory effect on the *group* which the defendant belongs to.

*Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997) (internal quotation marks omitted). The district court entered summary judgment in favor of the defendants because the Libertarian Party could not establish state action. *Libertarian Party of Ohio*, 2016 WL 2977286, at *7. We agree with the district court.

The Libertarian Party does not contend that Secretary Husted himself selectively enforced or applied Ohio Revised Code § 3501.38(E)(1). *See* Appellant Br. at 31. The Libertarian Party also acknowledges that Felsoci is a private individual and not a state actor. *Id.* at 32. The Libertarian Party argues, however, that it can establish state action because the Ohio Republican Party, members of the Kasich Campaign, and Casey are state actors, and that these individuals also conspired with Damschroder, a state official in Secretary Husted's office, to selectively enforce the law against only Libertarian candidates. *Id.* at 31.

### a.   The Libertarian Party Has Not Demonstrated that the Ohio Republican Party or the Kasich Campaign Engaged in State Action Here

The Libertarian Party contends that the Ohio Republican Party, together with Casey and members of the Kasich Campaign, selectively enforced § 3501.38(E)(1) by using Felsoci as an "innocent agent" to protest only Libertarian candidates. Appellant Br. at 32. The Libertarian Party asserts that the Ohio Republican Party is a state actor because "[c]ourts across the country have ruled that the two major parties' state affiliates . . . are governmental actors when they regulate the electoral process." *Id.* The cases upon which the Libertarian Party relies, however, are meaningfully different from the case at hand.

In *Smith v. Allwright*, 321 U.S. 649, 663–64 (1944), the Supreme Court held that the Democratic Party of Texas's whites-only primary violated the Constitution. The Court held that Texas state law "entrusted" the party "with the determination of the qualifications of participants in the primary," *id.* at 664, and "this statutory system for the selection of party nominees for inclusion on the general election ballot makes the party which is required to follow these legislative directions an agency of the state in so far as it determines the participants in a primary

election," *id.* at 663.  Similarly, in *Terry v. Adams*, 345 U.S. 461 (1953), a plurality of the Court held that the "Jaybird Association," a private "Democratic 'Club[]'" that held a primary, *id.* at 466, was a state actor for purposes of its primary because "[t]he Jaybird primary has become an integral part, indeed the only effective part, of the elective process that determines who shall rule and govern in the county," *id.* at 469–70.

In considering these precedents, our Circuit has explained that the Court in *Terry* "did not assert that the Jaybirds had become a state actor for every purpose," but rather the Court held that the private club was a state actor "insofar as they had been assigned an 'integral part' in the election process, a governmental function," by the state.  *Banchy v. Repub. Party of Hamilton Cty.*, 898 F.2d 1192, 1196 (6th Cir. 1990) (quoting *Terry*, 345 U.S. at 470).  "The primary election cases do not hold that a political party is part of the state, or that any action by a political party other than conducting an election is state action."  *Id.* (internal quotation marks omitted). "The doctrine does not reach to all forms of private political activity, but encompasses only state-regulated elections or elections conducted by organizations which in practice produce 'the uncontested choice of public officials.'"  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (quoting *Terry*, 345 U.S. at 484) (Clark, J., concurring)).

Here, the Ohio Republican Party has not been "assigned an 'integral part' in the election process" that is usually performed by the state.  *Banchy*, 898 F.2d at 1196; *see also Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) ("Under the public function test, a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state," such as "holding elections.").  By filing a protest against a nomination petition under this statute—or having an agent file a protest—the Ohio Republican Party is not engaging in state action.  To the contrary, any private citizen with standing is authorized by Ohio law to file a protest against a candidate's nominating petition.  Ohio Rev. Code  §§ 3517.012(B)(3)(b) & 3513.263; *see also Nader v. McAuliffe*, 593 F. Supp. 2d 95, 102 (D.D.C. 2009) ("[T]he fact that private citizens may file challenges under the ballot access statutes is antithetical to the assertion that doing so is a function traditionally exclusively reserved to the States.").

The Libertarian Party also asserts that members of the Kasich Campaign engaged in state action, but the Libertarian Party's opening brief does not argue why this is so apart from stating

conclusively that the Kasich Campaign acted as an agent of the Ohio Republican Party. *See* Appellant Br. at 32. To the extent that individuals involved with the Kasich Campaign were involved in text and email exchanges with Casey, the Libertarian Party has not demonstrated that these individuals acted on behalf of the Kasich Campaign team in their discussions with Casey, let alone that they acted on behalf of the governor's office. *See Federer v. Gephardt*, 363 F.3d 754, 759 (8th Cir. 2004) (dismissing complaint for failing to allege state action because the complaint alleged only "that the defendants acted on behalf of [a Congressman] as a political candidate and private person," not as a government official). The Libertarian Party has not presented evidence that establishes that members of the Kasich Campaign were state actors here.

### b. The Libertarian Party Has Not Demonstrated That Casey Engaged in State Action

The Libertarian Party contends that Casey "was a state official" as a member of "Ohio's Personnel Board of Review." Appellant Br. at 36. However, "not every action undertaken by a person who happens to be a state actor is attributable to the state." *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001). "For the purposes of a state-action analysis, there can be no pretense of acting under color of state law if the challenged conduct is not related in some meaningful way either to the actor's governmental status or to the performance of his duties." *Id.* The Libertarian Party acknowledges that Casey's petition-protest involvement was not within the scope of Casey's duties as a member of Ohio's Board of Personnel Review; the Libertarian Party contends, however, that Casey's actions nonetheless constitute state action taken under color of state law because Casey's job "carried a large measure of cachet with [the Ohio Republican Party], the Kasich Campaign, Damschroder, and others," and thus Casey "was able to do what ordinary citizens cannot" in coordinating Felsoci's challenge of Earl. Appellant Br. at 37.

The record does not support the Libertarian Party's argument. The communications that the Libertarian Party identifies were sent by Casey from his personal email address and they do not contain any reference, either implicitly or explicitly, to Casey's state-government role. Casey undoubtedly spent a great deal of time in coordinating Felsoci's protest, but he did so through speaking to attorneys, exploring election laws, and reviewing public records obtained via

public-record requests. Damschroder testified that he provided Casey with the same information that he would have provided to any other individual that asked him. *See* R. 247 (9/29/14 H'rg Tr. Vol. 1 at 187) (Page ID #6673). The record accordingly demonstrates that Casey was acting out of his "private interest[]" in protesting Earl, and that Casey "would have been in the same position [to coordinate Felsoci's protest of Earl] even if he had not been a" member of Ohio's Board of Personnel Review. *Waters*, 242 F.3d at 359. Casey did not act under color of state law here for purposes of § 1983.

### c. The Libertarian Party Has Not Demonstrated that Damschroder Was Involved in a Civil Conspiracy

Finally, the Libertarian Party contends that, even though Casey and the Ohio Republican Party may not be state actors here themselves, these actors conspired with election officials within the Secretary of State's office such as Damschroder, and thus they are state actors for purposes of § 1983. "Private persons may be held liable under § 1983 if they willfully participate in joint action with state agents." *Memphis, Tenn. Area Local v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004). In order to establish a civil conspiracy, the plaintiff must show:

> [A]n agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Id.* (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The Libertarian Party has not established here that Damschroder was involved in a conspiracy with Casey and the Ohio Republican Party.

The Libertarian Party cites communications between Damschroder, Casey, and other members of the Ohio Republican Party in which Casey and others asked Damschroder for information on candidate petitions and protest filings. *See, e.g.*, R. 227-1 (8/26/14 Damschroder Dep. at 305–09 (Ex. 16)) (Page ID #5524–28). As discussed above, however, Damschroder testified that in his role at the Secretary of State's office, it was "not uncommon for [him] to get

questions from all kinds of people affiliated with parties, not affiliated with parties, candidates, whomever," and that Damschroder would "give them the information if [he had] it."  R. 247 (9/29/14 H'rg Tr. Vol. 1 at 187) (Page ID #6673).  Damschroder had known Casey for a long time, Damschroder knew that Casey was "a political gadfly," and Damschroder would frequently answer Casey's questions.  *Id.* at 186 (Page ID #6672).  The Libertarian Party has not identified anything in the record that indicates that Damschroder gave information to Casey that he would not have given to anyone else, or that Damschroder told Casey anything that was improper.  Accordingly, these communications do not establish that Damschroder "shared in the general conspiratorial objective" to remove Earl, *see Memphis, Tenn. Area Local*, 361 F.3d at 905, by responding to questions from Casey and other members of the Ohio Republican Party.

The Libertarian Party emphasizes the fact that Damschroder knew ahead of time that a protest would be filed against Earl, and that Damschroder instructed his staff to accept protests that were filed after 4 PM.  Appellant Br. at 19.  The Libertarian Party states that this establishes that Damschroder knew to expect a protest from Felsoci on the day of the protest deadline, and that Damschroder wanted his office to "accept the protest even if filed late."  *Id.* at 40. Damschroder testified, however, that he instructed his staff to accept all late protests for filing purposes "so [that] a determination could be made whether it's timely or not" and that "unless [he has] been instructed to not accept something that comes in, then we would accept it."  R. 227-1 (8/26/14 Damschroder Dep. at 80) (Page ID #5299); *see also id.* at 78 (Page ID #5297). The Libertarian Party has not provided any evidence that establishes that Damschroder instructed his staff to accept late protest filings for the purpose of the conspiracy, or that Damschroder intended to approve of Felsoci's protest even if it were filed late (which it was not).

The Libertarian Party further claims that Damschroder was involved in "hav[ing] the hearing officer (Smith) change his mind" about the outcome of the case.  Appellant Br. at 40. This argument relates to documents that show that Smith initially intended to rule in favor of the Libertarian Party in interpreting Ohio's employer-information law.  *See* R. 252 (10/01/14 H'rg Tr. Vol. 2 at 233) (Page ID #6730).  Smith's final recommendation came out the other way, however, after Smith reevaluated his interpretation of an Ohio state-court decision.  *Id.* at 236 (Page ID #6733).  The Libertarian Party cites a phone call between Smith and Jack Christopher,

general counsel for Secretary Husted, who called Smith from Damschroder's office before Smith altered his decision. *Id.* at 244 (Page ID #6741). Smith testified that he did "not recall any particular conversation" with Christopher, but that he and Christopher "did not have a substantive discussion" of the cases. *Id.* at 244–45 (Page ID #6741–42). Christopher did send Smith an email discussing Christopher's legal interpretation of the Ohio decision at issue, but Smith testified that "by that point in time . . . I had already decided that I was going to have to be rewriting the report." *Id.* at 254–55 (Page ID #6751–52). Smith testified that no one at the Secretary's Office tried to "tell [him] how to decide th[e] case" and that no one at the Secretary's Office attempted to influence his decision. *Id.* at 253 (Page ID #6750). To the contrary, Smith remarked on the "scrupulosity of the folks in the Secretary of State's Office." *Id.* The record does not demonstrate beyond speculation that Damschroder or his co-workers exerted any improper influence on Smith, or that Smith changed his recommendation as a result of the acknowledged conversations that he had with Christopher while Smith was reaching his final determination.

The Libertarian Party cites two additional pieces of evidence to establish that Damschroder was involved in a conspiracy to remove Earl from the ballot. First, the Libertarian Party states that Damschroder "cheer[ed] with Christopher for Zeiger at the [] administrative hearing" and that this demonstrates that Damschroder "shared the general conspiratorial objective." Appellant Br. at 42. This argument refers to text messages exchanged between Damschroder and Christopher during the administrative hearing before Smith. Referring to Zeiger's advocacy during the hearing, Christopher told Damschroder "Zeiger just won't bend, will he?!" and Damschroder responded "I like unbending." R. 227-1 (8/26/14 Damschroder Dep. at 319 Ex. 16) (Page ID #5538). Christopher also stated "I hope nobody asks Zeiger who is paying them to do this!! ;)." *Id.* at 321 (Page ID #5540). Damschroder responded, "It's a pretty penny I'm sure." *Id.* Damschroder testified that he was impressed by Zeiger's advocacy during the hearing and that he was remarking on the likely cost of Zeiger's fees, given that he knew that Zeiger was an experienced attorney. R. 247 (9/29/14 H'rg Tr. Vol. 1 at 161–62) (Page ID #6647–48). This "cheer[ing]" does not establish Damschroder's involvement or actions in a conspiracy to remove Earl from the ballot.

Lastly, the Libertarian Party states that Damschroder's investigation of petition circulator Hatchett demonstrates that Damschroder was involved in the conspiracy. Appellant Br. at 40. According to the Libertarian Party, "Casey asked Damschroder to investigate Hatchett," and Brandi Seskes in the Secretary of State's office performed this investigation. *Id.* at 20. This is not supported by the record. The portion of Casey's testimony which the Libertarian Party cites states only that Casey may have asked Damschroder "the question of whether there was anything statutorily that prohibited a registered sex offender from being a circulator of petitions." R. 241-1 (8/28/14 Casey Dep. at 53) (Page ID #6260). Seskes did Google Hatchett's name in order to find out his criminal background after Felsoci submitted his protest, R. 221-1 (Seskes Dep. at 14, 22) (Page ID #4820, 4828), but Seskes testified that no one in the Secretary of State's office asked her to do so. *Id.* at 14–15 (Page ID #4820–21). Seskes testified that she did so out of "[c]uriosity. Trying to get a handle on who the players were and what was going on." *Id.* at 15 (Page ID #4821).

In sum, the Libertarian Party has not presented evidence here to establish that Damschroder or anyone in the Secretary of State's Office shared in a conspiratorial objective with Casey and the Ohio Republican Party, or that Damschroder committed any act in furtherance of this conspiracy. Because Casey and the Ohio Republican Party are not state actors here, the Libertarian Party has failed to establish state action. The district court did not err in granting summary judgment to defendants on the selective-enforcement claim.

### 3. Equal Protection Clause Claim

The Libertarian Party also asserts that SB 193 violates the Equal Protection Clause. We evaluate this claim under the framework established by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780, 788–89 (1983), and *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). *See Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012). "Under the *Anderson-Burdick* test, the court must first 'consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate.'" *Hargett*, 791 F.3d at 693 (quoting *Anderson*, 460 U.S. at 789). Second, the court "must 'identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Id.* (quoting *Anderson*, 460 U.S. at 789). Lastly, the court "must

'determine the legitimacy and strength of each of those interests' and 'consider the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Id.* (quoting *Anderson*, 460 U.S. at 789).

The severity of the burden imposed on an individual by the state's election law determines the level of scrutiny that we apply and thus the degree to which the state must justify its regulations. *See Burdick*, 504 U.S. at 434. If a state's law imposes "severe" burdens on the plaintiff's constitutional rights, "the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). By contrast, if the state law imposes "'reasonable' and 'nondiscriminatory'" burdens, "the statute will be subject to rational basis [review]." *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 693 (6th Cir. 2015) (quoting *Burdick*, 504 U.S. at 434). "If the burden lies somewhere in between, courts will weigh the burden on the plaintiffs against the state's asserted interest and chosen means of pursuing it." *Id.* (internal quotation marks omitted).

### a. Burden on LPO

Our analysis thus begins by assessing the "character and magnitude of the asserted injury" that the Libertarian Party alleges. *Anderson*, 460 U.S. at 789. In evaluating the burden imposed by an election law, we must consider "the combined effect of the applicable election regulations," not simply each law in isolation. *Blackwell*, 462 F.3d at 586. "In determining the magnitude of the burden imposed by a state's election laws, the Supreme Court has looked to the associational rights at issue, including whether alternative means are available to exercise those rights; the effect of the regulations on the voters, the parties and the candidates; evidence of the real impact the restriction has on the process; and the interests of the state relative to the scope of the election." *Id.* at 587. We keep these factors in mind as we turn to the Libertarian Party's claims.

Ballot-access laws such as SB 193 "place burdens on two different, although overlapping, kinds of rights—the rights of individuals to associate for the advancement of political beliefs and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Id.* at 585 (quoting *Williams v. Rhodes*, 393 U.S. 23, 30 (1968)). The Libertarian

Party contends that these rights are burdened because SB 193 "den[ies] minor parties primaries," "the only mechanism available for officially registering members" under Ohio law.  Appellant Br. at 41.  The Libertarian Party does not contest the number of signatures required by SB 193 to form a minor political party or nominate a candidate, nor does the Libertarian Party argue that SB 193's petition deadlines violate the First Amendment.  Accordingly, our decision is limited to the aspect of SB 193 that LPO addresses—its requirement that minor political parties such as the Libertarian Party proceed outside of Ohio's primary framework—and we do not address the constitutionality of the provisions of SB 193 that are not presented in this appeal.

To best understand the Libertarian Party's asserted burden, we briefly recount the ballot-access framework established by SB 193.  As discussed above, SB 193 creates two methods by which a political party may obtain state recognition as a "[m]inor political party" and thereby access the ballot:  the party may meet a three-percent-vote requirement in the immediately preceding election, or the party may form via petition.  Ohio Rev. Code § 3501.01(F)(2).  A minor party that forms by petition—either a party that did not meet the three-percent-vote threshold in the last election or a newly created party that did not participate in the last election—must nominate their candidates to appear in the general election by filing a nominating petition, rather than by participating in the Ohio primary.  § 3517.012.  This nominating petition must be filed at least 110 days before the general election.  § 3517.012(B)(1).  If the candidate is running for statewide office, the candidate must obtain the signatures of "at least fifty qualified electors who have not voted as a member of a different political party at any primary election within the current year or the immediately preceding two calendar years."  § 3517.012(B)(2)(a).

Major political parties, by contrast, nominate candidates for the general election through a primary election, as do minor parties that achieved the requisite three-percent-vote threshold in the prior election.  *See* § 3513.05.  In order to appear on the primary ballot, a major-party candidate for statewide office must submit a petition containing signatures from "at least one thousand qualified electors who are members of the same political party as the candidate."  *Id.* Minor-party candidates appearing in the primary election need only half of that number.  *Id.*

Because the Libertarian Party has to form by petition, and because it accordingly has to nominate its candidates via petition, SB 193 excludes the Libertarian Party from the primary, at

least until it meets the three-percent-vote requirement in an election. *See* Appellant Br. at 41. The Libertarian Party acknowledges that the Constitution does not guarantee a party a right to nominate candidates by primary, as opposed to other means. Reply Br. at 23. The Supreme Court established this principle in *American Party of Texas v. White*, 415 U.S. 767, 781 (1974), where the Court refused to invalidate a statute that required "small parties [to] proceed by convention when major parties [could] choose their candidates by primary election." The Court explained that "[t]he procedures are different, but the Equal Protection Clause does not necessarily forbid the one in preference to the other." *Id.* at 781–82. The Libertarian Party contends, however, that although it does not have a constitutional right to a primary, excluding it from the primary process violates the Equal Protection Clause because the primary system in Ohio grants a benefit to major parties that is denied to minor parties. According to the Libertarian Party, "Ohio officially registers voters' political affiliations through primaries" and, in the absence of a primary, individuals cannot affiliate with the Libertarian Party and the Party is deprived of the political advantages of party membership that primary-participating parties enjoy. Appellant Br. at 41–42.

The Libertarian Party misstates Ohio law. Ohio operates a version of a "closed" primary system, *see California Democratic Party v. Jones*, 530 U.S. 567, 570 (2000), in that Ohio places some limits on an individual's ability to vote in a party's primary or sign a party's nominating petition if an individual is not a "member" of that political party. *See, e.g.*, Ohio Rev. Code §§ 3513.05 & 3513.19(A)(3). Ohioans do not affiliate with a party upon registering to vote. Rather, for the purpose of designating who can vote in a primary or to sign a nominating petition, Ohio law defines party membership by an individual's primary-voting record. Specifically, for major parties nominating their candidates by primary, Ohio law provides that "[f]or purposes of signing or circulating a petition of candidacy for party nomination or election, an elector is considered to be a member of a political party if the elector voted in that party's primary election within the preceding two calendar years, or if the elector did not vote in any other party's primary election within the preceding two calendar years." § 3513.05. Similarly, an individual's eligibility to vote in a primary election may be challenged on the basis of that individual not being a "member of the political party whose ballot the person desires to vote," where "membership" is defined by the same two-calendar year metric. § 3513.19(A)(3); *see also*

§ 3513.20.[2]  If "the right of a person to vote" in a party primary "is challenged upon the ground" that the person is not a party member, "membership in or political affiliation with a political party shall be determined by the person's statement, made under penalty of election falsification, that the person desires to be affiliated with" the "party whose primary ballot the person desires to vote." § 3513.19(B).

As the State of Ohio and Secretary Husted argue, "[t]hese statutes do not govern party registration or affiliation *in general*," but rather refer only to "party affiliation" for a specific purpose:  establishing who may vote in a partisan primary.  Husted Appellee Br. at 36.  Ohio insists that SB 193 places no restrictions on the Libertarian Party's ability, as a private entity, to define its membership.

The Libertarian Party emphasizes the enormous significance to political parties of having a membership, including a party member's ability to "develop" the party, recruit additional members, contribute money, and more.  Appellant Br. at 42.  The fundamental importance of these activities is beyond dispute.  But the Libertarian Party has not explained how Ohio's definition of "member of a political party" for the limited purpose discussed above, *see* Ohio Rev. Code § 3513.05, restricts the Party's ability to have members that perform these core political activities.

We are aware that, as the Libertarian Party asserts, there are some "legal ramifications" to requesting a party's ballot in a primary election, Appellant Br. at 42, because Ohio operates a primary system that is "closed" to non-party members to some degree.  As discussed above, for example, an individual who affiliates with a party in a primary election may not vote for a different party's candidate for a period of two years.  If challenged on this basis, however, the voter may provide a statement declaring an intention to affiliate with and support the principles of a different party.  Ohio Rev. Code § 3513.19(B).  According to the Libertarian Party, Ohio law does not provide it with a base of people that are "wedded" to it in a similar way.  Reply Br. at 22–23.

---

[2]Notably, in the first primary in which the new political party participates—a party that has met the three-percent-vote threshold in a prior election—"any qualified elector who desires to vote the new party primary ballot . . . shall be allowed to vote the new party primary ballot regardless of prior political party affiliation."  Ohio Rev. Code § 3517.016.

The Libertarian Party has not articulated, however, how this framework burdens its ability to recruit members, access the general-election ballot, or engage in other modes of political affiliation and expression, nor has the Libertarian Party explained how this places minor parties at a disadvantage relative to major parties. It is true that, in order to place a candidate on the ballot, the Libertarian Party must obtain the signatures of at least "fifty qualified electors who have not voted as a member of a different political party at any primary election within the current year or the immediately preceding two calendar years." § 3517.012(B)(2)(a). But the Libertarian Party does not contend that the number of signatures required is unduly burdensome. Moreover, as Secretary Husted and the State of Ohio assert, only approximately 1.3 million Ohioans cast primary ballots in 2014, out of over 7.7 million registered voters. Husted Appellee Br. at 38–39. This leaves at least "83 percent of all registered voters" in Ohio unaffiliated and "able to sign petitions for" other candidates. *Id.* The Libertarian Party has not demonstrated that this aspect of SB 193 imposes a severe burden.

Finally, the Libertarian Party cites *Green Party of Michigan v. Land*, 541 F. Supp. 2d 912 (E.D. Mich. 2008), in support of its argument that the denial of a primary process to minor parties imposes a severe burden. The district court in *Land* considered a Michigan statute that provided certain voter information exclusively to the two major parties participating in the primary election. *Land*, 541 F. Supp. 2d at 914. The Michigan primary was restricted to parties that "received more than 20% of the total presidential vote cast in Michigan in the last presidential election," and thus "only the Democratic and Republican parties were eligible to participate." *Id.* Primary voters indicated their party preference at the primary election, and because this information was not recorded at the time of registration, "the party preference designations from the primary election are the best source of information about the party affiliation of a large group of Michigan voters." *Id.* Michigan law directed that voter information be kept confidential and exempt from disclosure "to any person for any reason." *Id.* Nonetheless, the statute required the Michigan Secretary of State "to provide these records" to political parties participating in the primary: the Democratic and Republican parties. *Id.* The district court recognized that minor parties could benefit from the party-preference information of voters that voted in the primary, such as by using it to "direct [their] campaign efforts . . . to voters who are more likely to be responsive to [their] issue positions and candidates." *Id.* at 919.

By prohibiting minor parties from accessing this information given exclusively to major parties, the Michigan statute severely burdened minor parties' associational rights. *Id.* at 919–20.

*Land* is meaningfully different from the situation here. The minor parties in *Land* wanted access to the party-preference information *of individuals who participated in the primary*; they did not seek to participate in the primary or have the affiliation of their party members registered at the primary. The harm in *Land* was that minor parties had "no other way to obtain the party preference information" that was given to major parties exclusively. *Id.* at 923. The Libertarian Party has not identified any provision of Ohio law that provides information on a differential basis to major and minor parties. The Libertarian Party's argument based on *Land* is not persuasive.

Because the Libertarian Party has not demonstrated that Ohio law deprives it of membership or affiliation in a general sense, and because the Libertarian Party does not challenge any other aspect of SB 193's requirements on appeal, we conclude that the Libertarian Party is not severely burdened by SB 193's requirement that it select candidates for the general-election ballot via petition, rather than by primary. Nonetheless, as discussed above, affiliating with a party at a primary does have some "legal ramifications," and so SB 193's burdens, although not severe, are also not non-existent. Moreover, we also acknowledge that, because Ohio law allows voters to become a "member" of a party under Ohio law by casting a party ballot during a primary, there may be some expressionist value to voting in a partisan primary and thus "affiliating" with a party, even if this does not mean membership or affiliation in a general sense. We will thus turn to consider the state's asserted interests, and balance the strength of this interest against the burdens that we have identified.

### b. Ohio's Asserted Interest

Secretary Husted and the State of Ohio argue that SB 193's requirements relate to its interest in "ensur[ing] that new or minor parties 'have a significant modicum of support' before they appear on the ballot." Husted Appellee Br. at 44 (quoting *Jenness v. Fortson*, 403 U.S. 431, 441–42 (1971)). The Supreme Court has long recognized this state interest as "important." *Jenness*, 403 U.S. at 442. According to Ohio, the state "had to make a choice" in pursuing this

state interest following our decision in *Blackwell*.  R. 185 (Intervenor Def. Cross Mot. for Summ. J. at 6) (Page ID #3613); *see also* Husted Appellee Br. at 44.

In *Blackwell*, we found that Ohio's requirement that a minor party file its registration petition 120 days in advance of the primary election—an election in which minor-party candidates had to participate in order to appear on the general-election ballot—imposed a severe burden on minor parties because the parties needed to gather "more than thirty thousand" signatures "more than one year in advance of the [general] election," "a time when the major party candidates are not known and when the populace is not politically energized." *Blackwell*, 462 F.3d at 586.  In the face of this severe burden, we indicated that Ohio had failed to advance a significant state interest in its primary and early-filing requirement, indicating that "[f]orty-eight states have filing deadlines for minor parties later in the election cycle, and forty-three states allow minor parties to nominate candidates in a manner other than the primary election." *Blackwell*, 462 F.3d at 594.

Ohio claims that SB 193 is an attempt to comply with *Blackwell* while also ensuring that minor parties garner a sufficient amount of support prior to appearing on the general-election ballot.  *See* R. 185 (Intervenor Def. Cross Mot. for Summ. J. at 6) (Page ID #2613); Husted Appellee Br. at 44.  According to Ohio, in the face of *Blackwell*, it chose to eliminate its primary requirement for newly established parties and instead require that "only established political parties . . . hold primaries, while allowing new political parties to determine their nominees through" petition.  R. 185 (Intervenor Def. Cross Mot. for Summ. J. at 6) (Page ID #2613).  By eliminating the primary requirement, Ohio now requires that minor-party candidates file paperwork 110 days before the general election, rather than over a year in advance.  Ohio Rev. Code § 3517.012(B)(1).

As discussed above, the Libertarian Party does not argue on appeal that a filing requirement 110 days prior to the general election is unduly burdensome, and we accordingly do not decide this issue.  We do, however, credit Ohio's interest in having minor parties garner "a significant modicum of support," *Jenness*, 403 U.S. at 442, and Ohio's rationale for having minor parties "nominate candidates in a manner other than the primary election," *Blackwell*, 462 F.3d at 594, in order to align better its ballot-access laws with our decision in *Blackwell*.

### c. Weighing LPO's Burden Against Ohio's Interest

Having determined the burden that SB 193 places on the Libertarian Party in deterring it from nominating candidates by primary, and having addressed the state's interest for the law, we now consider the extent to which the state's asserted interests "make it necessary to burden the plaintiff's rights" and whether the weight of the state's interest is sufficient to justify the magnitude of the burden imposed. *Anderson*, 460 U.S. at 789. As discussed above, the Libertarian Party has not demonstrated that the aspect of SB 193 that it challenges poses a severe burden on its First or Fourteenth Amendment rights. At the same time, the state has articulated a legitimate interest in its law, and this interest is sufficient in light of the Libertarian Party's claimed burdens. In so deciding, we echo our statement from an earlier decision in this same dispute: "[w]e note that the LPO has struggled to become and remain a ballot-qualified party in Ohio, and we acknowledge that this decision entails that their efforts must continue still[, b]ut we also note that we decide one case at a time." *Libertarian Party of Ohio*, 751 F.3d at 424. On the basis of this record and challenge before us, we agree with the district court that summary judgment is appropriate in favor of the State of Ohio and Secretary Husted on the Equal Protection challenge to SB 193.

## B. LPO's State Constitutional Challenge

Lastly, the Libertarian Party contends that the district court erred in dismissing its state-constitutional claim. Article V, § 7 of the Ohio Constitution provides that "[a]ll nominations for elective state, district, county and municipal offices shall be made at direct primary elections or by petition as provided by law . . . ." Ohio Const. art. V, § 7. The Libertarian Party alleged that SB 193 was in conflict with this provision, but the district court dismissed this claim as barred by the Eleventh Amendment of the U.S. Constitution. R. 336 (10/14/15 D. Ct. Op. at 19) (Page ID #8705).

Whether or not the district court was correct, an Ohio state court has already decided the Libertarian Party's state-constitutional issue. "Pursuant to the doctrine of res judicata, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (quoting *Montana v.*

*United States*, 440 U.S. 147, 153 (1979)).  "[T]he law is well-settled that federal courts must give prior state court judgments the same preclusive effect they would have in the courts of that state." *Lesher v. Lavrich*, 784 F.2d 193, 195 (6th Cir. 1986).  Secretary Husted and the State of Ohio argue that the Libertarian Party's claim under Article V, § 7 of the Ohio Constitution is barred because the Libertarian Party "litigated that claim to final judgment in Ohio state court" after the district court dismissed the claim.  Husted Appellee Br. at 50.  Specifically, the Franklin County Court of Common Pleas granted summary judgment to Secretary Husted and Ohio Attorney General Mike DeWine, holding on June 7, 2016, that S.B. 193 does not violate Article V, § 7 of the Ohio Constitution.  *Libertarian Party of Ohio v. Husted*, No. 16CV554 (Franklin Cty. Ct. Common Pleas June 7, 2016); Appellant Addendum 3.

    The Libertarian Party advances two arguments for why we should not decide that its state-constitutional claim is barred by res judicata.  First, the Libertarian Party contends that the state court's judgment is not final.  Reply Br. at 25.  According to the Libertarian Party, it filed a motion for a new trial and for relief from judgment under Rules 59 and 60 of the Ohio Rules of Civil Procedure and, after the state court did not rule on that motion, it filed an appeal in state court on July 6, 2016.  Reply Br. at 24–25.  The Libertarian Party asserts that because the Rule 59 motion has been stayed in state court and because the state-court decision may be reversed, res judicata does not apply to the Franklin County Common Pleas court's decision.  This is not persuasive.  A motion for a new trial does not alter the preclusive nature of an otherwise final judgment.  Restatement (Second) of Judgments § 13 cmt. f ("A judgment otherwise final for purposes of the law of res judicata is not deprived of such finality by the fact that time still permits commencement of proceedings in the trial court to set aside the judgment and grant a new trial or the like; nor does the fact that a party has made such a motion render the judgment nonfinal.").  And under Ohio law, "[t]he pendency of an appeal . . . does not prohibit application of claim preclusion.  The prior state court judgment remains 'final' for preclusion purposes, unless or until overturned by the appellate court." *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 415 (6th Cir. 2016) (internal quotation marks omitted) (citing *Cully v. Lutheran Med. Ctr.*, 523 N.E.2d 531, 532 (Ohio Ct. App. 1987)).  The state-court decision is final here for purposes of res judicata.

Second, the Libertarian Party argues that we should not decide this issue of the preclusive effect of the state-court judgment because Secretary Husted and the State of Ohio raised this issue for the first time on this appeal. Reply Br. at 26. Instead, "res judicata should be left to the District Court on remand (if necessary)." Reply Br. at 26. As the Libertarian Party recognizes, our cases acknowledge that there are circumstances where res judicata may be appropriately entertained for the first time on appeal. *Lesher*, 784 F.2d at 195. Here, the Libertarian Party filed its claim in state court on January 19, 2016, *see Husted*, No. 16CV554, at 1, after the district court dismissed the Party's state-law Article V, § 7 claim on October 14, 2015 on the basis of Eleventh Amendment immunity. R. 336 (10/14/15 D. Ct. Op. at 19) (Page ID #8705). Accordingly, the state-court judgment did not become preclusive until after the district court dismissed the claim, and thus there was no opportunity for a res judicata defense to be presented to the district court. Under these circumstances, it is appropriate to consider res judicata for the first time on appeal. *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 418–19 (6th Cir. 2012) ("[T]he defense of res judicata was not available before the district court because the [state-court class-action] settlement had neither been certified nor made final by the Arkansas Supreme Court. Now that the state decision has become final, it is appropriate for this Court to respect its conclusions." (internal quotations and citations omitted)). We do not believe that "[t]he better course here is to leave res judicata to the District Court on remand." Reply Br. at 27. Our consideration of this preclusion argument "requires us to consider a purely legal issue that is presented 'with sufficient clarity and completeness' in the parties' briefs." *Gooch*, 672 F.3d at 419 (internal quotation marks omitted). Because the Ohio state court reached a final judgment on the Libertarian Party's state-law Article V, § 7 claim, the Libertarian Party is precluded from pursuing this claim further in this court.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 16-3537

LIBERTARIAN PARTY OF OHIO; KEVIN KNEDLER;
AARON HARRIS; CHARLIE EARL,
        Plaintiffs - Appellants,

   v.

JON HUSTED, Secretary of State,
        Defendant - Appellee,

STATE OF OHIO; GREGORY A. FELSOCI,
        Intervenors - Appellees.

> **FILED**
> Jul 29, 2016
> DEBORAH S. HUNT, Clerk

Before: MOORE, CLAY, and DONALD, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk