IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Libertarian Party of Ohio,
    et al.,                      :

        Plaintiffs,          :

        v.                         :        Case No. 2:13-cv-953

Jon Husted, et al.,        :        JUDGE MICHAEL H. WATSON
                                                  Magistrate Judge Kemp
        Defendants.         :

OPINION AND ORDER

I. Introduction

This case, which began as a straightforward challenge to an Ohio election-law statute which prohibited out-of-state residents from circulating nominating petitions, took on a different character when the nominating petitions of certain Libertarian Party candidates were invalidated by the Ohio Secretary of State based on a protest filed by Gregory Felsoci, a member of that party. From the outset, Plaintiffs suspected - rightly, as it turned out - that there was some connection between Mr. Felsoci's protest and persons who were interested in the success of Republican Party candidates (particularly Governor John Kasich) in the 2014 general election.

From almost the time that Mr. Felsoci intervened in this case, Plaintiffs attempted to find out whether he acted alone or if he had help, including assistance paying his attorneys. For reasons more fully detailed in prior orders of this Court, that turned out to be a difficult process. This Court infers, from its involvement in the case and from the way that discovery was conducted, that the person who had agreed to pay Mr. Felsoci's attorneys' fees - Terry Casey, a former Ohio elections official

and a Republican Party consultant - instructed his attorneys (who were also Mr. Felsoci's attorneys) to resist and delay Plaintiff's efforts to find out that Mr. Casey had agreed to underwrite Mr. Felsoci's efforts to disqualify the Libertarian Party candidates. This Court became involved in the process because the attorneys for Plaintiffs and Mr. Felsoci could not reach an extrajudicial agreement on something as routine (at least, normally routine) as whether Mr. Felsoci could be deposed. Other aspects of discovery were difficult as well, including Plaintiffs' attempts to obtain documentary evidence about who was paying Mr. Felsoci's legal bills.

Plaintiffs asked for sanctions in connection with motions directed toward those two issues. The Court tabled that request, in part as an incentive for counsel to work more cooperatively together - which turned out to be mostly wishful thinking on the Court's part. There seems to be little dispute that the relationship between Plaintiffs' counsel and Mr. Felsoci's counsel became toxic, and that toxicity surfaced during depositions (some of the more unpleasant exchanges are recounted in Plaintiffs' memoranda) and often during informal discovery conferences with the Court. Without, at least at this point in the discussion, assigning blame for the unhealthy and at times unprofessional nature of counsel's relationship, it is fair to say that neither side seemed intent on accomplishing the goal set out in Fed.R.Civ.P. 1, which is to secure the "just, speedy, and inexpensive" resolution of the case. Quite the opposite.

The case has now been resolved on its merits. Plaintiffs, however, still wish to be awarded sanctions in the form of attorneys' fees and costs for (1) moving to compel Mr. Felsoci to sit for a deposition, (2) moving to compel him to produce a document or documents showing who was paying his legal fees, and (3) moving to quash two subpoenas served on Plaintiffs' counsel.

For the following reasons, the Court concludes that sanctions are not warranted as to the first two matters, but that a modest award of attorneys' fees is appropriate on the third.  At the same time, the Court emphasizes that it does not condone the type of "scorched earth" resistance put up by Mr. Felsoci's counsel on basic issues in the case and finds it inconsistent with the spirit, if not the letter, of both the Federal Rules of Civil Procedure and the cultural norms of the bar of this Court.

Parties can, and often should, be adversarial (although civil) with respect to the merits of a case.  There is much less justification for their being unduly oppositional and blatantly disrespectful during discovery, especially when the underlying motive for some of that conduct is, as was apparently the case here, not so much a firmly-held belief that the discovery in question is objectionable, but an effort not to disclose information which could ultimately prove embarrassing to someone not even a party to the litigation at issue.  What occurred in this case is a good example of why there are ethical rules governing one person's agreement to pay another person's attorneys' fees, and how such an arrangement can place the latter person at risk of incurring sanctions when it is the first person's potentially-conflicting interests which are being advanced.  Because Plaintiffs' current motion for fees does not call for this Court to address the issue of the ethical propriety of counsel's conduct, but only to evaluate it under Rules 37 and 45 of the Federal Rules of Civil Procedure, the Court leaves any issues of ethics for another day and another tribunal.  It now proceeds to discuss the issue of whether sanctions should be awarded under Rule 37 with respect to any of the three matters at issue.

## II. Sanctions for the Motions to Compel

The Court begins this discussion by identifying the

applicable legal standard. Fed.R.Civ.P. 37(a)(5) says that if a motion to compel is granted,

> the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Whether to grant any sanctions with respect to the two motions to compel depends upon the strength of Mr. Felsoci's argument that his counsel's actions in resisting Plaintiffs' discovery were "substantially justified." Obviously, that legal standard, while encompassing some objective elements, also leaves room for subjective judgments. What is "substantial justification" to one court may not be so to another. And the culture of the court and the bar may play into that concept as well. Conduct that would be sanctionable because it falls outside the norm in one area may be tolerated in another. This Court will strive to make its inquiry as objective as possible, but, at the same time, it recognizes that its decision may be shaped by less quantifiable factors, including this particular judicial officer's experience in both litigating and resolving discovery disputes in the Southern District of Ohio.

The Court of Appeals has set forth a test for determining whether a party's position in a discovery dispute is

substantially justified. In Doe v. Lexington-Fayette Urban County Government, 407 F.3d 755, 765 (6th Cir. 2005), that court said that

> A motion is "substantially justified" if it raises an issue about which "there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations and quotation marks omitted). As noted by the Supreme Court, "the one [connotation] most naturally conveyed by the phrase before us here ["substantially justified"] is not 'justified to a high degree,' but rather 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." Id.

Pierce v. Underwood did not involve discovery sanctions. Rather, the Pierce court was interpreting the Equal Access to Justice Act, 28 U.S.C. §2412, which authorizes an award of attorneys' fees to a prevailing party in litigation with the United States unless the United States' litigation position is "substantially justified." This Court has cited Doe when analyzing the issue of discovery sanctions, see, e.g., Clifford v. Church Mut. Ins. Co., 2014 WL 5383929, *11 (S.D. Ohio Oct.21, 2014)(King, M.J.); Despot v. Nationwide Ins., 2013 WL 4678857, *4 (S.D. Ohio Aug. 20, 2013)(Litkovitz, M.J.), and both parties also cite to Doe as authority, so it will form the primary basis for the Court's legal discussion. However, the Court also finds helpful (and consistent with Doe) this formulation from Athridge v. Aetna Cas. and Sur. Co., 184 F.R.D. 200, 205 (D.D.C. 1998): "If there is an absence of controlling authority, and the issue presented is one not free from doubt and could engender a responsible difference of opinion among conscientious, diligent but reasonable advocates, then the opposing positions taken by them are substantially justified." Using these standards, the Court will analyze separately the two motions to compel for which the

Plaintiffs seek sanctions.

### A. Mr. Felsoci's Deposition

The background of this first dispute is set forth in the Court's Opinion and Order in Libertarian Party v. Husted, 302 F.R.D. 472 (S.D. Ohio 2014). A brief but accurate summary of that Opinion and Order is that, after examining three separate reasons advanced by Mr. Felsoci why he should not be deposed even once in the case notwithstanding the fact that he had voluntarily made himself a party, the Court rejected his arguments and granted the motion to compel. Mr. Felsoci argues that each of the three reasons he gave could have persuaded a reasonable person to see things his way, and he has submitted an affidavit from Quentin Lindsmith, a well-respected Columbus attorney and member of the bar of this Court (and also a former member of the law firm representing Mr. Felsoci) supporting that claim.

Plaintiffs, of course, argue the opposite, and they take issue with the standard Mr. Lindsmith uses in his affidavit, which equates "substantially justified" with "colorable and plausible." The Court has considered Mr. Lindsmith's affidavit, but since it does not relate to matters outside the Court's area of expertise - which, here, are the proper interpretation of Rule 37 and its application to a specific set of facts - the Court gives it little, if any, weight. See United States v. Gallion, 257 F.R.D. 141, 146-47 (E.D. Ky. 2009)(explaining that "expert testimony on issues of law is typically excluded"), citing Baltimore & Carolina Line, Inc. v. Redman, 295 U.S. 654, 657(1935).

The Court first notes that this case is unlike many others where sanctions have been imposed for a party's failure to attend a deposition. Most such cases involve either a party who may have had legitimate objections to appearing but who did not move for a protective order in advance - a procedural miscue that

often leads to unnecessary costs being incurred - or a party who advances reasons not to attend which have been uniformly rejected in the case law, such as refusing to be deposed unless the opposing party is also in full compliance with its discovery obligations.  In those and similar situations, the issue which the moving party was forced to litigate can fairly be described as "free from doubt."  See, e.g., Rangel v. Gonzalez Mascorro, 274 F.R.D. 585 (S.D. Tex. 2011)(awarding sanctions because there was no legal authority supporting cancellation of depositions under particular circumstances of that case); John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 145, 148 (S.D.N.Y. 2014)(noting that "it is well-established that a party cannot unilaterally refuse to fulfill its discovery obligations as retaliation for another party's discovery violations").

Here, in contrast, there was no procedural violation, because the parties agreed to litigate, in advance of the scheduled date, the question of whether Mr. Felsoci could be deposed.  No one incurred an otherwise avoidable expense by showing up and having no one to question.  And although the Court pointed out in its decision that the usual rule is that parties to a case can be deposed at least once, and that the party who is trying to escape that obligation has a heavy burden of persuasion, that does not mean that a party can never be substantially justified in arguing that his or her deposition ought not to go forward.

As noted, Mr. Felsoci made three separate arguments about why he should not be deposed.  Any of them would have been sufficient to defeat the motion to compel had the Court accepted them.  That means that only one of these arguments had to be reasonable.  While the Court had, and continues to have, substantial doubt that the argument about Mr. Felsoci's having no relevant information to provide had a reasonable basis in either

fact or law, he did make a more supportable argument that the parties had reached an agreement about his not having to testify if he answered certain interrogatories. In fact, the Court indicated that his interpretation of the correspondence exchanged on that issue was "possible" although it was not the most plausible reading of the parties' words. See 302 F.R.D. at 478. And although the Court also rejected the claim that his deposition would be merely cumulative to his testimony at the preliminary injunction hearing, the fact that discovery would be unnecessarily cumulative or duplicative is an appropriate ground for granting a protective order. See Fed.R.Civ.P. 26(b)(2)(C)(i). The comments made by Judge Watson at the preliminary injunction hearing also arguably supported Mr. Felsoci's position on this last issue. Consequently, although most reasonable attorneys would have realized that their chances of blocking Mr. Felsoci's deposition altogether were not high, that is not the standard. Did they have arguments which were more than "colorable" and which had some chance of persuading a reasonable person? They did. This Court would be hard-pressed to describe as unreasonable a decision which had accepted at least one of these arguments, although the Court would consider such a decision to have been made in error. Consequently, the Court does not find Mr. Felsoci's conduct as to the deposition issue to be sanctionable.

B. Motion to Compel Production of Documents

The second issue addressed by Plaintiffs' motion deals with their efforts to obtain documents showing who was paying Mr. Felsoci's legal fees. Again, as brief background, and as a short summary of the Court's order on this matter, see Libertarian Party v. Husted, 2014 WL 3928293 (S.D. Ohio Aug. 12, 2014), the key issue turned out to be whether Mr. Felsoci had a legal right to ask his counsel for a document which revealed the identity of

their "other client" - *i.e.* Mr. Casey - so that he could then produce it to Plaintiffs. Plaintiffs had previously asked Mr. Felsoci if he knew who was paying his legal fees, and he denied knowing. Assuming that he was being truthful, that answer raised a serious question about whether his counsel had made the type of full disclosure to him which was required by the applicable rules of professional responsibility. As the Court noted, if an arrangement a lawyer makes with separate clients "involves the first client's paying for work done for the benefit of the second client, at least some details of the arrangement must legally be disclosed in order for the representation to be ethically proper." Id. at *3. Again, the Court did not decide whether Mr. Felsoci's attorneys had actually violated any ethical rules, but it did determine that Mr. Felsoci had the legal right to ask them for documents which showed who the "other client" was, and that this right equated to "control" for purposes of Rule 34, so that he had to produce a document to Plaintiffs which had that name - which he ultimately did.

As with the issue relating to Mr. Felsoci's deposition, the question is whether the arguments made by his counsel supporting Mr. Felsoci's failure to produce this document had some reasonable legal basis behind them. As to the issue of control, the Court is inclined to believe that no reasonable person would dispute that Mr. Felsoci had a legal right to demand information about who his attorneys' "other client" was so that he could decide, on an informed basis, whether to consent to the arrangement involving payment of his fees. Again, however, that was not the only issue raised in the response to the motion. There was also a question about whether the identity of that client was privileged.

On that question, even Plaintiffs' expert acknowledged that the identity of a client may be a privileged matter if, by naming

the client, it would become obvious why the client had sought representation. Although the Court ultimately rejected that argument, it did not do so without engaging in an extended discussion of the contours of the argument and the cases which deal with various aspects of it. Once again, the fact that an argument ultimately proves unpersuasive does not mean that it had no reasonable basis. Especially when the issue involves the disclosure of potentially privileged material, it has not been this Court's practice to sanction counsel for seeking a judicial decision on a significant privilege issue, and the Court would not do so unless the assertion of privilege was totally unfounded. Here, it was sufficiently well-supported to satisfy the "substantially justified" test, meaning that sanctions would be inappropriate.

III. The Subpoenas

The final issue addressed in Plaintiffs' motion for sanctions relates to a motion to quash subpoenas served by Mr. Felsoci on attorneys Mark Brown and Mark Kafantaris. The Court addressed this matter in Libertarian Party v. Husted,, 2014 WL 6910219 (S.D. Ohio Dec. 8, 2014). In that decision, the Court agreed with Plaintiffs that the subpoenas, as issued, set an unreasonable time for compliance and that they were also "either not reasonably calculated to lead to the discovery of relevant evidence or far too burdensome to support whatever incidental relevance such evidence might have." Id. at *2. The Court deferred a specific ruling on the motion to quash, however, concluding that because the ostensible purpose of the subpoena was to gather information about the amount of attorneys' fees Plaintiffs were requesting as sanctions for the other two discovery matters at issue here, it would be better to determine the question of entitlement to fees first before deciding how best to require Plaintiffs to support their fee application and,

-10-

correspondingly, how much information Mr. Felsoci would be permitted to obtain in order to make a reasoned response.

Since the appropriateness of the subpoenas was litigated through a motion to quash, Rule 37(a)(5) does not directly apply to the question of sanctions; the matter is governed, rather, by Rule 45, which, as this Court observed in <u>DRFP, LLC v. Republic of Venezuela</u>, 2016 WL 491828 (S.D. Ohio Feb. 9, 2016), obliges a party issuing a subpoena '"to avoid imposing undue burden or expense on a person subject to [a] subpoena' and to 'protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.'" Rule 45(d)(1) also requires the court to "enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply."

As this Court said in <u>Georgia-Pacific LLC v. American Intern. Specialty Lines Ins. Co.</u>, 278 F.R.D. 187, 190 (S.D. Ohio 2010),

> Unlike Rules 26 and 37, which focus on the conduct and motivation of the party requesting discovery, Rule 45 focuses on the burden imposed on the recipient of the subpoena. <u>See Huntair, Inc. v. Climatecraft, Inc.</u>, 254 F.R.D. 677, 679 (N.D. Okla. 2008). So long as the duty to avoid imposing an undue burden is violated, it is of no consequence that the party or attorney who served the subpoena acted in good faith. <u>Id</u>.; <u>see also Liberty Mut. Ins. Co. v. Diamante</u>, 194 F.R.D. 20, 23 (D. Mass. 2000).

<u>See also XTO Energy, Inc. v. ATD, LLC</u>, 2016 WL 1730171, *32 (D.N.M. Apr. 1, 2016) (imposing attorneys' fees incurred in filing a motion to quash where the subpoena was improper and the failure to withdraw it imposed an undue burden or expense on the moving party).

To flesh this matter out, a rather full procedural history

-11-

relating to the subpoenas and the motion to quash is necessary. As already stated, the subpoenas were purportedly designed to ferret out information relating to Plaintiffs' claim for attorneys' fees associated with other discovery motions. The Court had not, at the point when they subpoenas were issued, determined if Plaintiffs were entitled to any fees at all. Before Plaintiffs moved for fees, they attempted to open a dialogue with Mr. Felsoci's counsel about the upcoming motion. According to exhibits attached to the motion to quash (Doc. 173), that dialogue (which appears to have been conducted exclusively by email) consisted of Plaintiffs' providing a calculation of fees incurred in the relevant motions practice - including hours expended and hourly rates charged - followed by Mr. Felsoci's observation that the whole issue was premature - which was correct - but that he would consider the fee issue if he had certain information (which later became the nine categories of documents listed in the subpoenas). Plaintiffs' counsel offered to provide some of it, including time sheets, and actually produced timesheets on August 18, 2014. Mr. Felsoci responded that the documents were not original billing records. After Plaintiffs represented that the documents they provided to Mr. Felsoci were the same ones they would use to support their application for fees, and after again being rebuffed in their effort to have a discussion about fees, they filed their motion (Doc. 170). The subpoenas issued the next day, and demanded production of the nine categories of documents within seven days thereafter. (Doc. 172).

There is no question that some of the documents requested in the subpoena (but, significantly, not all of them) were relevant to the fee request. On the other hand, this case represents the only occasion on which this Magistrate Judge has seen, in almost thirty years on the bench, a party send subpoenas to opposing

counsel in connection with an otherwise routine motion for costs and fees under Rule 37. That procedure is especially problematic where the Court had not, at that point, made any decision about entitlement, had not directed any further briefing on the amount of the fee request, and had not set a hearing. Were this to become a routine practice, every time a party moved for relief under Rule 26, Rule 37, or some similar rule, and included a request for fees - which is fairly routine even when an award of fees is not particularly likely - that would open up moving counsel to the receipt of subpoenas for their records. Even if the subpoenas were limited to matters clearly relevant and admissible on the issue of the reasonableness of the fees - which these were not - and even if they allowed for a reasonable time to comply - which these did not - such a practice would unduly complicate the case and unnecessarily compound the expense and delay associated with it.

    Did Mr. Felsoci have alternatives? Of course. He could have asked for a conference with the Court to discuss bifurcating the fee matter into entitlement and amount. He could have requested the Court to become involved on an informal basis in deciding what documentation the Court expected to see in support of a fee request. If the Court told a moving party that, in order properly to support a fee request, that party had to submit certain types of records - for example, original time entries or affidavits supporting a particularly hourly rate - it is unlikely that the party would refuse to produce that documentation or demand that it be served with a subpoena. There are many different ways that reasonable attorneys would have handled, and do handle, this type of issue without resorting to immediate service of an overbroad subpoena. In the Court's view, the issuance of those two subpoenas had less to do with making sure that the Court had an adequate basis for making a fee award or

that Mr. Felsoci had an adequate opportunity to contest it, and more to do with attempting to badger or intimidate Plaintiffs' counsel and forcing them to seek relief from the Court. Certainly, it came nowhere close to avoiding placing an undue burden or expense on Plaintiffs' counsel, and the history of the behavior of counsel in this case only underscores that point. That is an occasion for cost-shifting under Rule 45.

As to the amount, to some extent, Plaintiffs' counsel could have avoided much of the expense of filing an eighteen-page motion by simply asking for an informal conference with the Court before filing the motion. While that procedure is not technically required by the Local Civil Rule 37.1, it is also not precluded by anything in those rules, and in this case, it would have enabled the Court to do what it ultimately did, which was to defer further litigation as to the amount of fees until it decided if Plaintiffs were entitled to any. Still, counsel had to spend some time reviewing the subpoenas and deciding on a course of action, and they would have had to have arranged for and participated in a conference. For that work, compensation in the amount of $1,500.00 seems adequate, and the Court will make that award.

### IV. <u>Order</u>

For the reasons set forth above, Plaintiffs' renewed motion for attorneys' fees (Doc. 380) is granted in part and denied in part. Counsel for intervening defendant Gregory Felsoci shall pay fees, awarded under Fed.R.Civ.P. 45, in the amount of $1,500.00 within 21 days of the date of this order.

### V. <u>Motion for Reconsideration</u>

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A),

Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a). The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

    This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

                                        /s/ Terence P. Kemp
                                        United States Magistrate Judge